Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

_Eastern_ District of _Virginia_

_____ Division

FILED

2025 OCT 14 P 1:44

| | |
|---|---|
| _Jeanette French_ ) | Case No. 1:25cv 989 |
| | (to be filled in by the Clerk's Office) |
| **Plaintiff(s)** ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* ) | Jury Trial: *(check one)* ☐ Yes ☑ No |
| *If the names of all the plaintiffs cannot fit in the space above,* ) | |
| *please write "see attached" in the space and attach an additional* ) | |
| *page with the full list of names.)* ) | |
| -v- ) | |
| ) | |
| _NV Rides et. al._ ) | |
| **Defendant(s)** ) | |
| *(Write the full name of each defendant who is being sued. If the* ) | |
| *names of all the defendants cannot fit in the space above, please* ) | |
| *write "see attached" in the space and attach an additional page* ) | |
| *with the full list of names.)* ) | |

## _Amended_
## COMPLAINT FOR A CIVIL CASE

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name
Street Address      _Jeanette French_
City and County     _9001 Giltinan Ct._
State and Zip Code  _Springfield, Va. 22153_
Telephone Number    _571-215-3719_
E-mail Address      _widdle9876@gmail.com_

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

| | |
|---|---|
| Name | NV Rides -located in Pozez Comm Cen [Jewish] |
| Job or Title *(if known)* | Organization (Mantua Va.) |
| Street Address | 8900 Little River Turnpike |
| City and County | Fairfax |
| State and Zip Code | Va. 22031 |
| Telephone Number | 703 - 537 - 3071 |
| E-mail Address *(if known)* | Elena Atergant |

Elena, Atergant @ the J. org.

**Defendant No. 2**

| | |
|---|---|
| Name | Tony Wonkovich |
| Job or Title *(if known)* | Volunteer - ride scheduler |
| Street Address | 7610 Newcastle Dr. |
| City and County | Annandale, |
| State and Zip Code | Va. 22003 |
| Telephone Number | 703 - 941 - 1419 |
| E-mail Address *(if known)* | shepherdseas@vacoxmail.com |

**Defendant No. 3**

| | |
|---|---|
| Name | Jeff Dannick |
| Job or Title *(if known)* | Executive Director - Pozez JCC |
| Street Address | 8900 Little River Turnpike |
| City and County | Fairfax |
| State and Zip Code | Va. 22031 |
| Telephone Number | 703 - 323 - 0880 |
| E-mail Address *(if known)* | Jeff. Dannick @ the J. org |

703 - 537 - 3071

**Defendant No. 4**

| | |
|---|---|
| Name | Elena Atergant |
| Job or Title *(if known)* | NV Ride Manager |
| Street Address | 8900 Little River Turnpike |
| City and County | Fairfax |
| State and Zip Code | Va. 22031 |
| Telephone Number | 703 - 537 - 3071 |
| E-mail Address *(if known)* | Elena, Atergant @ the J. org |

<u>Pro Se 1 (Rev. 12/16) Complaint for a Civil Case</u>

Defendant No. ~~1~~ 5

| | |
|---|---|
| Name | *Emily Braley - Pozez - JCC* |
| Job or Title *(if known)* | Volunteer Services Mang - & J-Family |
| Street Address | 8900 Little River Turnpike |
| City and County | Fairfax |
| State and Zip Code | Va. 22031 |
| Telephone Number | 703 - 537 - 3071 |
| E-mail Address *(if known)* | emily.braley @ theJ.org |

Defendant No. ~~2~~ 6

| | |
|---|---|
| Name | Selmetria Quarles (thelma) (Selma) |
| Job or Title *(if known)* | Shepherd Center - Office Mang. |
| Street Address | 7610 New castle Dr. |
| City and County | Annandale |
| State and Zip Code | Va. 22003 |
| Telephone Number | 703 - 941 - 1419 |
| E-mail Address *(if known)* | shepherdscas @ va coxmail.com |

Defendant No. ~~3~~ 7

| | |
|---|---|
| Name | Barbara Gatorian |
| Job or Title *(if known)* | Shepherd Center - Office Mang. |
| Street Address | 7610 New castle Dr. |
| City and County | Annandale |
| State and Zip Code | Va. 22003 |
| Telephone Number | 703 - 941 - 1419 |
| E-mail Address *(if known)* | Shepherdscas @vacoxmail.com |

Defendant No. ~~4~~ 8

| | |
|---|---|
| Name | The Advisory Council - |
| Job or Title *(if known)* | Guides N.V. Rides |
| Street Address | 8900 Little River Turnpike |
| City and County | Fairfax |
| State and Zip Code | Va. 22031 |
| Telephone Number | 703 - 537 - 3071 |
| E-mail Address *(if known)* | Jeff. Dannick @ the J. org |
| | (Exec. Director) |

Part A of Complaint- Jurisdiction/Federal statues/treaties/provisions

A federal court has jurisdiction over a civil ADA claim that includes torts and other state laws because the ADA claim itself provides federal question jurisdiction under 28 U.S.C. § 1331. The court may then exercise supplemental jurisdiction under 28 U.S.C. § 1367 to hear related state law tort claims if they arise from the same nucleus of facts as the federal ADA claim.

1. Federal Question Jurisdiction (ADA Claim)

Basis: Federal courts have original jurisdiction over cases "arising under" federal law, including the Americans with Disabilities Act (ADA).

Statute: This is codified in 28 U.S.C. § 1331.

What it means: The federal court has the power to hear the ADA claim because it is based on a federal statute.

2. Supplemental Jurisdiction (State Tort Claim)

Basis: When a federal court has jurisdiction over a federal claim (like the ADA claim), it can also hear related state-law claims, such as torts, that are part of the same case or controversy.

Statute: This authority is provided by 28 U.S.C. § 1367.

How it works: The state tort claims are "supplemental" to the federal ADA claim. The federal court has discretion and may choose to hear the state claim, or it can decline to do so under certain circumstances. such as if the state claim predominates or involves complex state law issues.

3. Diversity Jurisdiction (Alternative Basis)

Basis: Federal courts also have original jurisdiction over cases where the parties are from different states and the amount in controversy exceeds $75,000.

How it applies here: If the ADA claim and the state tort claims all meet the requirements for diversity jurisdiction, the federal court can hear the entire case on that basis, even if there wasn't a federal question.

In Summary: The primary basis for the ADA claim is federal question jurisdiction.

If the state tort claim is directly related to the ADA claim, supplemental jurisdiction allows the court to hear both.

(If the parties are from different states and the amount in controversy is high enough, diversity jurisdiction can also be a basis for hearing the entire case.)

1

----

List  specific Federal statutes, federal treaties, and/or provisions of the U S Constitution that are at issue in this case

Specific statutes

Americans with Disabilities Act (ADA): The ADA is the federal statute at the core of the claim. It prohibits discrimination against individuals with disabilities in all areas of public life, including employment, public accommodations, transportation, and government services.

28 U.S.C. § 1331: This is the federal statute that grants district courts the power of general federal question jurisdiction.

28 U.S.C. § 1367: This statute codifies the doctrine of supplemental jurisdiction, allowing a federal court to hear related state-law claims that form part of the same "case or controversy" as the federal claim.


Relevant U.S. Constitution provisions

Article III, Section 2: This is the foundational constitutional provision regarding federal jurisdiction. It states that federal judicial power "shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties". The ADA was passed by Congress under its authority granted by the Constitution, meaning a lawsuit concerning the ADA is a case "arising under" the laws of the United States.

Fourteenth Amendment: This amendment guarantees "equal protection of the laws" and prohibits states from depriving any person of life, liberty, or property "without due process of law." Section 5 of the Fourteenth Amendment grants Congress the power to enforce these protections through "appropriate legislation". The ADA was passed in part to enforce the rights of people with disabilities under the Fourteenth Amendment.


Federal treaties

For the typical civil ADA claim, no federal treaties are at issue. The claim is based on domestic law and a federal statute

2

Amended--Part K- additional on 14 th admendment and Commerce clause

French's claim that speak about the 14 th amendment and commerce. The Commerce Clause and the Fourteenth Amendment both play significant roles in determining federal court jurisdiction. The Commerce Clause allows Congress to regulate interstate commerce, which can serve as the basis for federal subject matter jurisdiction over cases involving such commerce. The Fourteenth Amendment's Due Process Clause is relevant to a federal court's personal jurisdiction over a defendant, as it sets limits on how a state or the federal government can exercise power over individuals. For Jurisdiction of ADA claim in Federal court.

The Basis for Jurisdiction is a federal Case: At Issue in this Case:

The basis for jurisdiction in federal court 14 th Admendment and Commerse are listed.

A-1 says that for his case---Basis The 14 th amendment...

Relevance-to ADA- While the Constitution doesn't cover explicitly disability rights, the Equal Protection Clause has been used to argue against discrimination based on disability. The ADA was enacted , in part , to address discrimination against individuals with disabilities ,aiming to provide them with equal opportunities and protections under the law, similar to existing prohibitions on discrimination based on sex, race, religion, national origin.--Case Law

B-Commerce Clause;

Basis- Article I, Section 8, Caluse 3, of the constitution f-grants Congress...

Relavance to ADA;

Congress cited its authority under the Commerce Clause as a basis for enacting the ADA, recognizing that discrimination against individuals with disabilites impacts interstate commerce. The ADA applies to private entities engaged in interstate commerce, including a wide range of business and facilities

The Commerce Clause and the 14th Amendment are relevant to determining federal court jurisdiction in cases involving ride service programs, though they apply in different ways. The Commerce Clause is relevant for general federal jurisdiction and regulatory power, while the 14th Amendment typically applies when a state government's actions are in question.

1

The 14th Amendment and federal court jurisdiction:

The 14th Amendment applies when the case involves state action, not the actions of a private company. If a lawsuit involves a rideshare company, the 14th Amendment would provide a basis for federal jurisdiction only under specific circumstances:

Commerce:

Americans with Disabilities Act (ADA): The Department of Justice has sued companies like Uber for alleged violations of the ADA, which regulates private transportation companies.

Amended--Part K- Monetary Damages -- ADA violations- unprotected.

Monetary damages can be collected against ADA violations.

While these are some nuances regarding what type of damages are recoverable under federal ADA law, French's case has elements that allow for a full range of monetary relief, especially when considering the specific circumstances and applicable State laws.

1- This is based on a lack of understanding of federal law.

2 - Intentional discrimination allows for compensatory damages

Prove discrimination --French's evidence is strong

Conscious disregard-- the documented instances of non-consensual speakerphone use, gas lighting, invalidation of French's disability, and continued harassment despite French's complaints show a pattern of willful misconduct and conscious disregard for French's rights

Fabricated reasons: The use of a false pretext (The "Manassas" claim) to justify French's dismissal is strong evidence of intentional discrimination.

Deliberate indifference: Courts have held that "deliberate indifference", which involves knowingly failing to act on a known harm to a federally protected right, is sufficient to establish intentional discrimination under Title II.

3- Virginia state law provide uncapped damages

Virginia's state civil laws, particularly the Virginia Human Rights Acy(VHRA), can provide for uncapped compensatory damages for discrimination. While federal employment law has caps on damages, the VHRA does not, making not a potentially more powerful avenue for monetary relief in Virginia state courts.

4- Punitive damages can be awarded for willful misconduct.

Federal Volunteers protection act- The VPA does not protect volunteers from liability for harm caused by their willful or criminal misconduct. Gross negligence, reckless misconduct, conscious, flagrant indifference to right or safety of individual. --Harmed.

5- Damages related to common law torts;

Even if ADA claims were limited, the nonprofit & volunteers can be held liable for damages based on related common torts, which are not subject to the same restrictions.

6- DOJ can seek penalties. DOJ can investigate and seek civil penalties.

The defendant's claim that monetary damages cannot be claimed is a flawed attempt to limit

1

their liability. French's case involving intentional discrimination, fraudulent acts, and willful misconduct, provides clear avenues for seeking compensatory and potentially punitive damages from both the individual / volunteers and the organization under federal law.

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question            ☐ Diversity of citizenship


Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

       The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b.    If the plaintiff is a corporation

       The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

       The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Part III- Time line

Statement of Claim con't

Jeanette French had a binding contract with N V Rides.

NV Rides is funded by a combination of federal grants, local government contributions, and its host organization, the Pozez Jewish Community Center of Northern Virginia (JCCNV). The funding supports the organization's role as a network hub, providing partner groups with free software and other resources to help them manage their volunteer driver programs.

After being with the ride service since Oct, 31, 2023. On Aug 23, 2024, French called into request a ride to get her medications. Barb Gatorian had given French permission to get rides for prescriptions due to her disability status and the nationwide shortage of the medications, that the location of them changed each month and were not close to her home. When speaking to Barb, French outlined her rare genetic disease and other health issues and the reason to find these medications. When French was interviewed for the acceptance into the program, she was also asked about her health issues so that the drivers were not doing things they were not allowed to do. French spoke freely about her disability, and her limitations, and health issues. Without this information, the program could not accept anyone as to cause issues with drivers abilities to help/not help clients.

On Aug 23, French called and Tony Wonkovich answered, French asked him to enter a ride for Sept 2, Tony replied that was a holiday, and French then asked for Sept.3, 2024. However at this point Tony started into a long dialog that made no sense to French, he asked her personal questions about her medications, and French felt she had no other option but to answer, unwillingly, in order to get her ride entered. Tony spoke of how his friends took these medications and that they could pick them up anytime they wanted to, and that French could get them on week ends, and that they also provided rides on the week ends for groceries. Tony told French He was going to call her pharmacist. French was dumb founded and shocked that anyone would say this.

Tony continued gaslighting French and not entering her ride into the system, and there was no verifiable reason for this dialog from Tony. It made no sense to French as she did not ask for any help, or for any information, nothing except her ride entered. French thought he may be having some mental issues, and was concerned. I asked N V Rides about groceries and I was told they did not have enough drivers for that. Most of what Tony told me was not true. It was also not true that if his friends took these same medications that they could pick them up anytime they wanted to, since they are a controlled substance. The fact that Tony had French on the speakerphone talking about these medications, put French in danger due to the recent violence

1

against doctors, pharmacists and Patients from the shortage of them. ( See Exhibit A-Amended-PainMang. Violence

She requested to speak to someone else, as Tony would not enter her ride and kept up with this dialog. At this time Tony gave the phone to Selmetria, who was the person in charge that day. Selmetria Quarles who said " I have been listening to your conversation on the speakerphone." French did not give consent for this, and doesn't know whom else was listening.

After the call ended by French, French tried calling other people in the program to try to figure out what was going on, to resolve her ride and to explain her concern for Tony. If he had anyone who was there for him as she was still concerned about this "Bizarre " dialog. After calling many places and trying to reach especially Barb, French was only able to reach a women, Mary, who was in the furniture department and really had no idea what to tell French. Though she tried to help French reach Barb, or someone who could help, but this effort didn't work. The emails, calls etc. are in the back of the complaint.

French did finally reach Emily Braley, who's title online was N V Rides Manager, however she declined that this was her title. I explained my concerns to her about Tony and what had happened. She told French she would call her back after the week end. Emily never did.

So French called Emily back after the week end. Emily said she had a conversation with Selmetria, but told French she could not help her any further and the call ended.

On Aug 27th, French called the program again to try to request her ride, but Selmertia answered and she had no knowledge of a conversation with Emily, and she informed French she had been dismissed from the program.

The 2 prior months I called for rides, the July and Aug. rides requests, Tony had answered and after an email he sent out, telling me that the Manassas area was no longer covered. French asked is anyone had complained, or if a driver wanted to drive to Manassas, could they?  Tony said no on the complaints, and explained why the driver could not do this. French ended the email with a compliment on the program services.  The 2 prior calls, the first one Tony asked if French had found a ride to Manassas, French said she was working on it. This seemed to make Tony happy that it was causing French an issue. So the next month, being the July  call in for Aug ride, Tony again asked French about her Manassas ride issue. This time, French just said "its fine." This seemed to make Tony upset in his voice, that it was not still causing her an issue. French has no idea why Tony continued to ask French about the Manassas issues since it had been settled and there was no reason to ask her. See ( Exhibit D-Manassas )

French was very upset the ride service was vital to French's health, as she depended on it for Doctor appt, and medication pick ups. That was it, as French was homebound and to sick to go out for other then necessary reasons. N V Rides had never offered to give her rides on week

ends, and on the web site, it says the drivers do not provide rides on the week ends.

After Aug. 27th, French no longer placed any calls or emails to N V Rides.

French received a letter in the mail, that was written on Sept. 9 th, 2025. It was written and sent by Selmetria Quarles and signed by Barb Gatorian. The letter is ( Exhibit A- Letter ). In the letter , which had also been notarized, it was stated that the reason for French's dismissal was location of Manassas. French had not even told Tony the location of the ride since he didn't let her, and that the actual location was a location still covered by the program then and now. This is proven by French's receipts for the Sept. 3, 2025, pick up of her Medications. French's ride had to match the location of the medications. There were also some other things in the letter, which French refutes later, that were not true and the language of the letter was bullying and hostile. Exhibit C- Receipts

Then on Sept. 25 th, French received a texted voice mail, that was also from Selmetria, and it also stated that her dismissal was because of the location of the ride. The language of this text was also very hostile, and bullying. Saying I caused this myself, that it was my fault. See ( Exhibit B- Text )

French filed complaints with some agencies to try to resolve the matter. French did not retain copies of all of her complaints as she had thrown them away not realizing this would go to court. French sent 3 to the DOJ, under 3 different departments and the ones in the Exhibit including the EEOC- which issued French the right to sue. See ( Exhibit E-Complaints )

See ( Exhibit G- EEOC )

Frustrated that French could not speak to anyone at the N V Rides program to try to resolve this issue, she sent her case out to 50 of the N V Rides partners. See ( Exhibit F-Case to Partners ).

On Dec. 23, 2025, Jeff Dannick called French, Jeff is the Executive Director of the Pozez Jewish Comm Center that houses the N V Rides program, and also a board member of N V Rides. French had left a message at Jeff's receptionist during her calls, but he did not return French's call. During a 35 minute conversation with Jeff, whom after 20-25 minutes into the conversation, Jeff told French that she had been on the speakerphone with Elena Alergant listening, another one of the N V Rides associates. French again, had not given her consent to be on a speakerphone and had no idea whom else may have been listening to the call. During the remaining conversation Jeff told French that she should " Just Move On", and Elena insinuated that French did not belong to the population that they served.

Neither Jeff nor Elena had any intention of solving the issue, changing the false reason for French's dismissal . Mainly they wanted French to shut up, move on and forget about it all, in other words, no harm done here. Their total disregard for the harm that this was causing French

3

was extremely upsetting.

French spent many sleepless nights worried that Tony would contact her pharmacist, not knowing  what he may or may not do. Without any contact with anyone from the program French was left abandoned. This also had negative effects on her symptoms as stress always does.

Claims:

1- Wrongful Dismissal

2-Breach of Contract

3-Privacy Violations

4- Mis-use of Federal Funds

5-Denied services to...

6-Negligent Supervision

7-Less Favorable services...

8-Appropriate services

9-Prove Discrimination of ....

10-Notorized False Statement

11-11- Intentional Discrimination of...

11-Conspiracy

12-Retaliatory

Part G H--Causes of Action for each claim;          *Part III - Statement of Claims*

## COUNT I: DISCRIMINATION IN VIOLATION OF THE ADA AND SECTION 504 OF THE REHABILITATION ACT

French incorporates by reference the allegations contained in --Exhibit N- (numbered sections of timeline) ... of the "Allegations of Fact" section of this Complaint.

Defendants' Jeff and elena's malicious and retaliatory actions, including but not limited to the wrongful termination by Selmetria of French's service, were undertaken "on the basis of" French's actual and/or perceived disability. ( 8- 15/16- 2 )

French's wrongful termination by Slemetria and the malicious and harassing actions of the Defendants, Jeff and Elena, would not have occurred but for French's disability. ( 8- 15/16- 2 )

As a direct and proximate result of Defendant's discriminatory actions, French has suffered damages, including but not limited to emotional distress, mental anguish, and inconvenience. ( 10- 17 )

## COUNT II: RETALIATION IN VIOLATION OF THE ADA AND SECTION 504 OF THE REHABILITATION ACT

French incorporates by reference the allegations contained in numbers --Exhibit N- (numbered sections of timeline) ... of the "Allegations of Fact" section of this Complaint.

French engaged in a protected activity when complaining about discrimination and was subsequently subjected to adverse actions by the Defendants, Jeff and Elena. ( 14- 15/16 )

The Defendants' adverse and retaliatory actions would not have occurred but for French's protected activity. ( 14- 15/16 )

As a direct and proximate result of Defendants' retaliatory actions, French has suffered damages, including but not limited to emotional distress, mental anguish, and inconvenience ( 10- 17 )

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

French incorporates by reference the allegations contained numbers-- Exhitbit N--(numbered

1

sections of timeline)... of the "Allegations of Fact" section of this Complaint.

The malicious and outrageous conduct of the Defendants—including Tony's gaslighting, the unauthorized speakerphone calls, Elena's discriminatory remark, and the fraudulent notarized letter—was intentional or reckless. ( 4- 5- 11- 15/16 )

The Defendants' conduct was outrageous and intolerable, exceeding the bounds of what any reasonable person should endure. ( 3- 4- 5-  6- 7- 8- 11- 12- 14- 15- 16 )

The Defendants' outrageous and intolerable conduct caused French to suffer severe emotional distress. ( 10- 17 )

As a direct and proximate result of the Defendants' outrageous conduct, French has suffered damages. (10- 17)

## COUNT IV: FRAUDULENT MISREPRESENTATION

French incorporates by reference the allegations contained Exhinit-N-(numbered sections of timeline) ...of the "Allegations of Fact" section of this Complaint.

Defendants Barb and Selmetria, with the knowledge and participation of other Defendants, made a false representation of a material fact by signing a notarized letter containing false information and presenting it to the board. ( 11 )

The Defendants knew the representation was false at the time it was made. ( 11 )

The Defendants intended to mislead and defraud the board, and by extension, the public, to justify the wrongful termination. ( 1- 11 )

French suffered damages as a result of the Defendants' fraudulent misrepresentation. ( 10- 17 )

## COUNT V: CIVIL CONSPIRACY

French incorporates by reference the allegations contained Exhibit-N-(numbered sections of timeline) ...of the "Allegations of Fact" section of this Complaint.

Two or more Defendants—Tony, Jeff, Elena, Emily, Selmetria, and Barb—agreed to engage in unlawful acts (e.g., fraudulent misrepresentation, intentional infliction of emotional distress) to achieve a malicious purpose: wrongfully terminating French's service and concealing their illegal conduct. ( all except..1- 2- 8- 11- 13 )

The Defendants' malicious and fraudulent actions were overt acts committed in furtherance of

2

the conspiracy. ( all except..1- 2-- 13 )

As a direct and proximate result of the conspiracy, French suffered damages. ( 10- 17 )

## COUNT VI: NEGLIGENT SUPERVISION

French incorporates by reference the allegations contained Exhibit-N-(numbered sections of timeline) ...of the "Allegations of Fact" section of this Complaint.

The program had a duty to exercise reasonable care in supervising its staff, particularly since it serves a vulnerable population. ( 3- 4- 5- 7- 8- 9- 11- 12 )

The N V Rides program breached this duty by failing to prevent its staff's malicious and fraudulent acts, even when management was aware of the misconduct. ( 3- 4- 5- 7- 8- 11- 12- 14- 15-16 )

The program's negligent supervision was the proximate cause of the foreseeable harm French suffered. ( 3- 4- 5- 7- 8- 9- 11- 12 )

As a direct and proximate result of the program's negligent supervision, French suffered damages. (11- 17)

## COUNT VII: PRIVACY VIOLATIONS

French incorporates by reference the allegations contained Exhibit-N-(numbered sections of timeline) ...of the "Allegations of Fact" section of this Complaint.

Defendants unlawfully intercepted French's communications by placing French on speakerphone without consent so a third party, could listen. ( 5- 15 )

Defendants disclosed confidential medical information and engaged in inappropriate medical questioning, violating French's privacy rights under federal law. ( 5- )

As a direct and proximate result of Defendants' privacy violations, French suffered damages, including emotional distress ( 10- 17 )

## COUNT VIII: BREACH OF CONTRACT

French incorporates by reference the allegations contained Exhibit-N-(numbered sections of

3

timeline) ...of the "Allegations of Fact" section of this Complaint.

French and the program had an implied-in-fact contract based on the enrollment and service provision. ( 2 )

The program breached this implied contract by wrongfully dismissing French for a fraudulent reason and engaging in malicious conduct. ( 8- 11- 12 ) ( 3- 4- 5- 7- 8- 9- 11- 12- 15-16 )

As a direct and proximate result of the program's breach of contract, French suffered damages. ( 8- 10- 17 )


## COUNT IX: LESS FAVORABLE TREATMENT (ADA)

French incorporates by reference the allegations contained Exhibit-N-(numbered sections of timeline) ... of the "Allegations of Fact" section of this Complaint.

Defendants treated French less favorably than non-disabled individuals by subjecting French to malicious and harassing behavior, fraudulent dismissal, and stonewalling communication. ( 3- 4- 5- 7- 8- 9- 11- 12- 15- 16 )

The less favorable treatment occurred because of French's disability and would not have occurred but for French's disability. ( 2- 3- 4- 5- 6- 7- 8- -11- 12- 15- 16 )

As a direct and proximate result of Defendants' less favorable treatment, French suffered damages. ( 10- 17 )


## COUNT X: MISUSE OF FEDERAL FUNDING (FALSE CLAIMS ACT)

French incorporates by reference the allegations contained Exhibit-N-(numbered sections of timeline) ...of the "Allegations of Fact" section of this Complaint.

The N V Rides program knowingly presented false claims or used false records to receive federal funding. ( 1- 11- 12 )

The program, including Barb and Selmetria, conspired to defraud the government by presenting a false notarized letter to the board to conceal fraudulent activity. ( 11 )

As a direct and proximate result of the Defendants' fraudulent activities, the government has been harmed, and French's, as a qui tam relator, is entitled to a share of any recovery. ( 10- 17 )

4

Exhibit - N -  Timeline

Part III- Time line

Statement of Claim con't

Jeanette French had a binding contract with N V Rides.

1--NV Rides is funded by a combination of federal grants, local government contributions, and its host organization, the Pozez Jewish Community Center of Northern Virginia (JCCNV). The funding supports the organization's role as a network hub, providing partner groups with free software and other resources to help them manage their volunteer driver programs.

2--French was accepted into the program after meeting the N V Rides program's guidelines requirement on Oct. 31, 2023. After being with the ride service since Oct, 31, 2023. On Aug 23, 2024, French called into request a ride to get her medications. Barb Gatorian had given French permission to get rides for prescriptions due to her disability status and the nationwide shortage of the medications, that the location of them changed each month and were not close to her home. When speaking to Barb, French outlined her rare genetic disease and other health issues and the reason to find these medications. When French was interviewed for the acceptance into the program, she was also asked about her health issues so that the drivers were not doing things they could not do. French spoke freely about her disability, and her limitations, and health issues. Without this information, the program could not accept anyone as to cause issues with drivers abilities to help clients.

3-On Aug 23, French called and Tony Wonkovich answered, French asked him to enter a ride for Sept 2, Tony replied that was a holiday, and French then asked for Sept.3, 2024. However at this point Tony started into a long dialog that made no sense to French, he asked her personal questions about her medications, and French felt she had no other option but to answer, unwillingly, in order to get her ride entered. Tony spoke of how his friends took these medications and that they could pick them up anytime they wanted to, and that I could get them on week end, and that they also provided rides on the week ends for groceries. Tony told French " He was going to call her pharmacist" . French was dumb founded and shocked that anyone would say this

4-Tony continued gaslighting French and not entering her ride into the system, and there was

1

no verifiable reason for this dialog from Tony. It made no sense to French as she did not ask for any help, or for any information, nothing except her ride entered. French thought he may be having some mental issues, and was concerned. I asked N V Rides about groceries and I was told they did not have enough drivers for that. Most of what Tony told me was not true. It was also not true that if his friends took these same medications that they could pick them up anytime they wanted to, since they are a controlled substance. The fact that Tony had French on the speakerphone talking about these medications, put French in danger due to the recent violence against doctors, pharmacists and Patients from the shortage of them.

5-She requested to speak to someone else, as Tony would not enter her ride and kept up with this dialog. At this time Tony gave the phone to Selmetria, who was the person in charge that day. Selmetria Quarles who said. I have been listening to your conversation on the speakerphone. French did not give consent for this, and doesn't now whom else was listening.

6--After the call ended, French tried calling other people in the program to try to figure out what was going on, to resolve her ride and to explain her concern for Tony. If he had anyone who was there for him as she was still concerned about this "Bizarre " dialog. After calling many places and trying to reach especially Barb, French was only able to reach a women, Mary, who was in the furniture department and really had no idea what to tell French. Though she tried to help French reach Barb, or someone who could help, but this effort didn't work. The emails, calls etc. are in the back of the complaint.

7--French did finally reach Emily Braley, who's title online was N V Rides Manager, however she declined that this was her title. I explained my concerns to her about Tony and what had happened. She told French she would call her back after the week end. Emily never did.

So French called Emily back after the week end. Emily said she had a conversation with Selmetria, but told French she could not help her any further and the call ended.

8-On Aug 27th, French called the program again to try to request her ride, but Selmertia answered and she had no knowledge of a conversation with Emily, and she informed French she had been dismissed from the program.

9-The 2 prior months I called for rides, Tony had answered and after an email he sent out,

2

telling me that the Manassas area was no longer covered, French asked is anyone had complained, or if a driver wanted to drive to Manassas, could they. Tony said no on the complaint and explained why the driver could not do this. French ended the email with a compliment on the program services. The 2 prior calls, the first one Tony asked if French had found a ride to Manassas, French said she was working on it. This seemed to make Tony happy that it was causing French an issue.

So the next month, being the July call in for Aug ride, Tony again asked French about her Manassas ride issue. This time, French just said its fine. This seemed to make Tony upset in his voice, that it was not still causing her an issue. French has no idea why Tony continued to ask French about the Manassas issues since it had been settled and there was no reason to ask her. See ( Exhibit D-Manassas )

10--French was very upset the ride service was vital to French's health, as she depended on it for Doctor appt, and medication pick up. That was it as French was homebound and to sick to go out for other then necessary reasons. N V Rides had never offered to give her rides on week ends, and on the web site, it says the drivers do not provide rides on the week ends.

After Aug. 27th, French no longer placed any calls or emails to N V Rides.

11--French received a letter in the mail, that was written on Sept. 9 th, 2025. It was written and sent by Selmetria Quarles and signed by Barb Gatorian. The letter is ( Exhibit A- Letter ). In the letter, which had also been notarized, it was stated that the reason for French's dismissal was location of Manassas. French had not even told Tony the location of the ride since he didn't let her, and that the actual location was a location still covered by the program then and now. This is proven by French's receipts for the Sept. 3, 2025, pick up of her Medications. French's ride had to match the location of the medications. There were also some other things in the letter, which I refute later, that were not true and the language of the letter was bulling and, hostile. Selmetria took this letter and presented it to the board, without French's presence. The board did not investigate or speak to French at all and deemed French's wrongful dismissal as valid. Exhibit C- Receipts

12--Then on Sept. 25 th, French received a texted voice mail, that was also from Selmetria, and it also stated that her dismissal was because of the location of the ride. The language of this text was also very hostile, and bulling. Saying I caused this myself, that it ws my fault. See ( Exhibit B-Text )

3

13--French filed complaints with some agencies to try to resolve the matter. French did not retain copies of all of her complaints as she had thrown them away not realizing this would go to court. French sent 3 to the DOJ, under 3 different departments and the ones in the Exhibit including the EEOC- which issued French the right to sue. See ( Exhibit E-Complaints )

See ( Exhibit G- EEOC )

14--Frustrated that French could not speak to anyone at the N V Rides program to try to resolve this issue, she sent her case out to 50 of the N V Rides partners. See ( Exhibit F-Case to Partners ).

15--On Dec. 23, 2025, Jeff Dannick called French, Jeff is the Executive Director of the Pozez Jewish Comm Center that houses the N V Rides program. I had left a message at Jeff's receptionist during my calls, but he did not return my call. During a 35 minute conversation with Jeff, whom after 20-25 minutes into the conversation, Jeff told French that she had been on the speakerphone with Elena Alergant, another one of the N V Rides associates. French again, had not given her consent to be on a speakerphone and had no idea whom else may have been listening to the call. During the remaining conversation Jeff told French that she should " Just Move On", and Elena insinuated that French did not belong to the population that they served.

16--Neither Jeff nor Elena had any intention of solving the issues, changing the false reason for French's dismissal . Mainly they wanted French to shut up, move on and forget about it all, in other words, no harm done here. Their total disregard for the harm that this was causing French was extremely upsetting.

17--French spent many sleepless nights worried that Tony would contact her pharmacist, not knowing what he may or may not do. Without any contact with anyone from the program French was left abandoned. French had come to depend on these rides, feeling betrayed. This also had negative effects on her symptoms as stress always does. Feeling very worried about getting rides to get medications and see her doctors in a timely manner. The stress affected French's symptoms and everything became much worse for her. Especially in her gut, having diarrhea and increased abdominal pain, eating issues, nausea, and more migraines. Lack of sleep also caused it to be worse. It was difficult to focus/concentrate on anything else and led

4

to a high level anxiety. The effects of losing the ride service were long term and French missed an important appointment and French's doctor was not happy about this, as it was last minute, where French could not even get a taxi that day. Begging friends for rides to get French's medications, that it was far from her home where it would take the friend extra time, and knowing they were working was humiliating.

The feeling of being tied to home, with no way to get to appt's and medications causes French to feel even more isolated and the loss of her independence. The drivers also provided conversation that a disabled person is forced to live without. French very much enjoyed the drivers conversations. When getting medications it also gave French to buy necessary items that she has to otherwise have delivered and are more costly, to get vaccines from the pharmacy. Other forms of transportation are costly and the ability for French to tolerate the bus, metro is impossible with her symptoms. Being homebound means she only goes out for necessary things, like doctor appt's and prescriptions, testing etc. but at least it is out on occasion. French's symptoms are extreme and severe, and difficult to control even with medications. Being with a person who has been background checked and known to be trustworthy is important.

The betrayal of the N V Rides program was an emotional trauma to French. She did not expect this to happen and was extremely upset that they did this with such malice, and total disregard for French's feelings. Even after the woman at French's doctors office told French she had been dismissed by N V Rides, French did not want to believe they would do this.

 At first I did not understand, and the more I understood what they were doing was unbelievable, an emotional trauma. I trusted them. I had built friendships with the drivers. French could have involved the drivers in this, but refused to do this. No driver was told about this. They do not deserve to be dragged into this, hoping that this did not effect them in anyway. These are people who give the most precious thing they have, time to others. Many people would have called them and told them, left bad reviews, which I still have not done. For the disabled, things become more important, since they are hard to find, like friends and conversation. French has not been disabled all her life, so she has an understanding of a non disabled person's world. She understand the burden of giving a friend a ride while working, missing work to do it, getting stuck in traffic, loss of precious time, family obligations etc.

Both of French's parents worked for / in charity organizations and French has a good understanding of them and their mission. French's Mom was one of the first woman Lion's Club members, and one of the the First woman Lion's Club Presidents. French's Dad was a Lion, and also involved in other charity programs. Not just a member, the President of the Silver Hill Lion's club in Maryland that puts on the Demolition Derby every year in southern Md., and raises thousands of dollars and that French had the trust to handle that much money by the club. French's Mom also did Hospice work. French spent time doing fund raisers, working with those

5

that are disabled, in need. French understands their needs and how trust is hard to come by. French and her siblings worked the derby every year for years, and did varies jobs and duties, among other events. French also saw that trust inside the club was paramount to it fulfilling its duty to those in need. That the level of corruption in N V Rides is extreme, is very sad. It has infected it fully. French is sorry this happened to her, but maybe it did for a reason. Saving the program is vital, the need is great for this service. But at the same time, impact must be felt, or the change will not happen.

French did not mean to go off in this direction, but she does understand non profits and their missions, and this is not it. Doing this has not been easy on French. Dealing with severe health issues while trying to handle a Pro se lawsuit is insane. Only with the help of God has French managed it. She does not now the outcome, she only hopes it is positive for the program and for French. It has been difficult, the anxiety, the burden of lack of knowledge, the desire to have a positive outcome, but also the loss of the service. I can say it has been horrible to go though this, and the N V Rides people are lacking in the understanding of what a disabled persons life is like. I can't say enough about the betrayal, it was devastating because of the malice involved towards her, and French just can not understand it ?... It leaves her feeling distraught and heartbroken.

Amended--Section AB--Establishing Causal Links

Establishing Causal link between Multiple Claims

1- <u>Wrongful Dismissal</u>

French's adverse Wrongful dismissal and privacy violation triggers the chain multiple of adverse events :

N V Rides, a federally funded program wrongfully dismissed French,  a disabled person, for an invalid reason. This dismissal serves as a central, adverse action that triggers a series of related legal violations. In close temporal proximity to and  during the dismissal. A privacy violation occurred when the French's private medical information is shared via a speakerphone without her consent. This invasion of privacy and the discriminatory dismissal establish the initial wrong doing

Since the sequence of events in the multiple claims lead the program to  immediately dismiss disabled French, and used a false in-valid fabricated reason of location for the dismissal. This was proven wrong by receipts from the day of the actual medication pick up.  The program actively avoiding communication with French, going before the board without French's presence and due process, stating the false reason in a text message, a letter to French, having the false statements notarized by a notary, equals the adverse actions taken in response to, or in anticipation of a protected activity. Which is the core of the retaliation claim and also breaks ADA laws.

A wrongful dismissal of French, a disabled person from a federally funded ride program for seniors and the disabled violates Title II of the Americans with Disabilities Act (ADA) ** (for public entities)  and  Section 504 of the Rehabilitation Act (for entities receiving federal financial assistance), which prohibits denying a qualified individual, like French, with a disability an equal opportunity to participate in or benefit from programs, services, or activities on the basis of her disability. Such an act would also be a violation of the anti-discrimination provisions in the ADA regulations for transportation services, as detailed in 49 CFR Part 37.

<u>Why the Dismissal Was In-valid</u>

<u>Invalid Reason</u>: Using "location" as the reason for French's dismissal is invalid since the location was not the actual issue. The program's failure to properly enter the location and the ride into the system, suggests the invalid reason was a pretext for discriminatory action against French. Using an invalid reason, like a non-existent issue with a location or ride entry, to deny a ride or dismiss rider French from the program is an unlawful act of discrimination

ADA Title I or II/III: The wrongful dismissal of French from a transportation service position for a discriminatory reason clearly violates the ADA.

ADA Title V: Interference with the rights of a disabled French is an additional ADA violation.

*See Part-J for State and other Laws on all claims.

2 Breach of Contract:

Breach of contract stemming from the wrongful dismissal of French

The wrongful dismissal of French, constitutes a breach of the implicit or explicit terms of the contract between N V Rides and French, including policies promising non-discrimination and proper handling of private information. The N V Rides failure to adhere to its own stated rules regarding privacy gives rise to a breach of contract claim.

Elements of a Legally Binding Contract:

Offer: One party makes a clear proposal with specific terms. --Done

(N V Rides proposed a contract to provide ride services to French, French accepted this promise)

Acceptance: The other party clearly agrees to the offer's terms.-- Done

Consideration: Both parties exchange something of value, such as money, services, or a promise. --Done

Mutual Intent (or Mutual Assent): Both parties intend to create a legally binding relationship. ---Done

Capacity: All parties must be legally competent, meaning they are of legal age and sound mind. --Done

Legality: The purpose of the contract must be lawful. --Done

The contract between French and N V Rides was a binding contract, meeting all of these requirements.  --Done

French's and N V Rides agreed upon the contract, they agreed on all the legally binding terms of the  contract ,it was for a legal purpose and complied with the relevant laws, such as Virginia Code § 56-119, which limits transportation companies' ability to exempt themselves from

2

liability for negligence. A wrongful dismissal of French for no valid reason, is a violation of this law and contract terms, resulting the  "Breach of Contract" between French and N V Rides.

N V Rides breached the contract by not following the terms for termination, such as proper notice and valid reason for dismissal. The unlawful, discriminatory reason for dismissal of French is a violation of the implied contractual promise of good faith and fair dealing.

Causal: and ADA;

   By not entering the ride for French, Breaching the contract between N V rides and French, and the breaking Privacy laws with the speakerphone event involving a disabled person, French,-- The organization N V Rides faces severe consequences since receiving federal funding and not complying with federal anti-discrimination laws, and violating those laws. Failing to provide equal access to French, a disabled person, while using these funds creates a direct link between the ADA violation and the misuse of funds.

Wrongful dismissal of French, a disabled person, from the federally funded ride program, N V Rides, which the dismissal was based on a false reason, especially since it was a breach of contract,  violates Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the ADA's anti-retaliation provision.

*See Part-J  for State and other Laws on all claims.

****************


3-Privacy Laws

 The privacy violation occurs when the French's private medical information was shared via a speakerphone without her explicit consent. This invasion of privacy and the discriminatory dismissal establishes the initial wrongdoing.

Privacy of medical information: While the ADA protects against discrimination in public services, it also has specific confidentiality requirements regarding medical information obtained by a non-covered entity, like N V Rides. Even if the program is not a HIPAA-covered entity, the ADA prohibits the unauthorized disclosure of French's private medical information. The information must be kept confidential.

Though HIPAA does not apply to the specific entity, a separate legal claim for invasion of French's privacy exists. The act of sharing French's private medical information via speakerphone, and without the her consent,  constitutes a common law invasion of privacy, also known as a privacy tort.

An entity that is federally funded and serves people with disabilities, like French, and asked for private medical information over a speakerphone without French's consent, violated the Americans with Disabilities Act (ADA), specifically Title II. While the entity is not a HIPAA-covered entity, its federal funding and mandate to serve people, like French, with disabilities and seniors, still creates legal obligations under the ADA and Section 504 of the Rehabilitation Act.

Effective communication: The ADA requires federally funded programs, like N V Rides, and public entities to communicate effectively with people with disabilities. This includes protecting the privacy of medical information. Asking sensitive, private health questions over a speakerphone without French's consent was a failure to provide effective communication.

Reasonable modifications: Asking French for sensitive information over a speakerphone violates French's privacy and could expose her to embarrassment, discrimination, and danger.

A reasonable modification to this practice would be to conduct the conversation in a private setting or in a way that protects French's privacy. Failing to offer her a private alternative is a violation of the ADA.

Since the N V Rides program is federally funded and serves people with disabilities and seniors, it is subject to the requirements of both the ADA and Section 504. The failure to protect French's private medical information in a way that respects her dignity and prevents public disclosure is a form of prohibited discrimination

3a-Privacy Laws cont.

On 11/10/24 French sent out letters to 50 of N V Rides partners stating her case. French had hopes that this would result in a conversation with someone who would listen to French. On 12/23/2024 at 4:39 pm, per listed on French's phone, French received a call from Jeff Dannick, Executive Director of The Pozez Jewish Comm Center, and N V Rides board member, that housed N V Rides in their facility. The call lasted 35 minutes. The call came from the Pozez Center to French. French had called Jeff at the time of the adverse event, and French left a message with the receptionist, as he was unavailable. Jeff did not bother to return French's call.

Jeff called French on Dec. 23, 2024 as a result of her case sent out. Jeff spoke to French approx 20-25 minutes before telling French that she had been on a speakerphone, again, without French's consent or knowledge and that Elena Alergant had been listening. As far as French knew, the whole office could have been listening. During this conversation Elena related to me the kind of people that N V Rides services, in an attemp to insinuate that I was not part of this population. This is more gaslighting by her and Jeff trying to manipulate French into

4

feeling/believing no harm had been done to French and that she was not a disabled person.

Jeff Dannick and Elena Alergant took part in continued gaslighting of French to try to manipulate her into thinking/feeling that not much damage had been done, down playing their role in this event, down playing French's harm, and in Jeff Dannick's exact words that " French should Just Move On".

   Being put on speakerphone without French's consent was a violation of French's privacy again, in this case, it fits into a pattern of documented misconduct by the federally funded program. It is part of a series of actions—including gaslighting, privacy violations, and retaliatory dismissal—that points toward systemic abuse of power and disregard for the rights of disabled French.


How Speakerphone Use Demonstrates a Pattern of Misconduct

Unauthorized disclosure of information: When the program representative, Jeff, put French on a speakerphone without her consent, he exposed French's private conversation to an unknown third party, and possibly more parties. This is a clear breach of French's right to privacy. Even without medical details being discussed in this specific call, the lack of respect for French privacy is a significant ethical violation.

Escalation of Misconduct: This is the second instance the program N V Rides  violating French's privacy by using the speakerphone without her knowledge, indicating a deliberate, repeated pattern of unethical behavior.

Unauthorized Disclosure of Personal Information: The N V Rides program disclosed French's private medical information over the speakerphone without her consent, which violates her privacy rights.

Intimidation and power dynamics:  Deliberately putting French on speakerphone to speak with another staff member without warning is an aggressive and intimidating tactic. In the context of French's ongoing dispute, it is an attempt to control the conversation and assert the program's authority over French.

Lack of Accountability: The staff member, Jeff, placing French on speakerphone and then admitting to it with another staff member present further demonstrates a lack of respect for French's confidentiality and a disregard for established communication protocols.

Justification of Misconduct: The fact that it occurred during a discussion about French's dismissal—a situation French was trying to resolve, and which was itself based on false pretenses—heightens the severity of this misconduct.

5

Reinforcement of previous gaslighting and misconduct

Continued pattern of deceit: This second, unannounced use of a speakerphone reinforces the initial gaslighting incident of French, where the scheduler deceptively asked private medical questions in a non-private way. It demonstrates a sustained pattern of the program being dishonest about how French's conversations are being handle, and is a significant privacy breach and a demonstration of how the program disregards respectful communication and established rules.

Invalidation of your experience: By putting French on a speakerphone without consent and then disclosing it later in the call, the program staff member is implicitly invalidating French's right to control who hears her personal conversations. This mirrors the previous gaslighting, where French's perception of reality was challenged.

Gaslighting and Deception: The N V Rides program's false statements, including the use of a notarized statement and text message, indicate a deliberate attempt to deceive the French and cover up their own errors, which is unethical and illegal behavior. The initial interaction where the scheduler gaslighted French, asking private medical questions without her consent and then using a false location as a reason for dismissal, shows a clear pattern of manipulation.


Retaliation for French's complaint

Adverse action after reporting: The incident occurred after French had already reported misconduct to the N V Ride program's partners, including Jeff Dannick and Elena Alergant. The N V Rides program's representatives used the speakerphone to share French's concerns with another staff member which is punitive and retaliatory. Federal law prohibits such retaliation against riders or program participants for reporting fraud, waste, or abuse.

Further evidence for legal action: This latest privacy violation adds weight to French's claim of retaliation. If French seeks further legal or administrative action, this incident provides additional evidence that the program. N V Rides is continuing its pattern of misconduct in response to French's complaints.


Evidence for proving discriminatory motive (pretext) :

N V Rides false reason for the adverse action against French, used to cover up a discriminatory motive. The evidence French has described, organized, presented, proven, and reveals contradictions and inconsistencies by the N V Ride program's lack of response to French where

6

the situation required a response to her for clarity and resolution. Silence, based on N V Rdies prior behaviors was contradictory to their usual communication style, was a deliberate choice to block French's rights,  and continue discriminating against French, and carries strong unspoken messages, effectively acting as a powerful, albeit negative, form of communication itself.

Inconsistent explanations:  N V Rides provided the invalid reason of "location" for French's dismissal in a text, letter, and notarized statement. These multiple, yet invalid, communications demonstrate the N V Rides unreliable justification, pointing toward a hidden, discriminatory reason.

Abnormal process and procedural irregularities:  N V Rides conduct, such as having the disabled French on speakerphone without her consent and bringing the case to the board without her presence, represents a significant departure from standard and fair procedure. This shows that N V Rides was trying to manufacture a rationale for dismissal of French rather than following a good-faith process.

Concealment and lack of transparency: The refusal of N V Rides staff / volunteers to communicate with French after the ride request, is evidence of the N V Rides attempt to conceal the truth. N V Rides stonewalling shows they were aware of wrongdoing and were trying to prevent disabled French from getting information that would reveal it. Assuming she would "Just Move On"

Disproportionate or excessive means: The aggressive and extensive methods used to dismiss French—including falsifying a notarized statement—is considered excessive when the actual reason was a simple matter of location. The disproportionate response supports the argument that that N V Rides was motivated by something other than their stated reason.


Link between the discriminatory motive and the dismissal:

The Pharmacy receipts are direct evidence that N V Rides stated reason for dismissal—the location—was false.

Letter and text message. These shows N V Rides officially and informally communicated a false reason to French.

The N V Rides program submitted a false notarized statement to the board and sent it to French, which is very strong evidence of N V Rides malicious intent and effort to fabricate a paper trail against French and void her due process.

Selmetria and Jeff are both witnesses's to the speakerphone events, since they clearly stated to

French she had been on a speakerphone without her consent or knowledge, their testimony further supports French's claims

Evidence of a Broader Pattern of Misconduct

Falsified Dismissal Reason: The program created and disseminated false reasons for your dismissal, including a notarized statement and a text message, which were used to support the decision in your absence.

Unauthorized Medical Questions: Asking private medical questions over a speakerphone with your own medical information without knowledge or consent is a serious breach of confidentiality and can be a violation of privacy laws.

Lack of Intervention: The person in charge failing to intervene when these issues were occurring demonstrates a failure in leadership and accountability within the program.

Misleading Board Members: Providing false information about your dismissal to the board members, especially when you were not present to defend yourself, is a direct effort to mislead and cover up the program's own failings.

The Baord

Failure of fiduciary duties

A board of directors of N V Rides has a legal duty to act in the best interests of the N V Rides organization and its beneficiaries. A knowing approval of a false dismissal indicates a profound failure in this duty, suggesting the board is:

Acting in bad faith: The board is not exercising reasonable business judgment. Instead, it is acting with an improper motive to harm and deceive French.

Concealing information: The false reason for dismissal suggests an intent to cover up the real motive, indicating broader efforts to deceive French, regulators, or the public.

Breaching the duty of care: The board has failed to inform itself properly or to apply a reasonable standard of diligence, allowing misconduct to go unchecked.

Retaliation and discrimination

For a dismissal based on false accusations, the true motive is often rooted in illegal retaliation or discrimination against a protected class. French's evidence reveals that the program's

8

administration or board:

Engaged in discriminatory practices: The dismissal was based on a protected characteristic (e.g., age, disability, race), which is illegal under anti-discrimination laws.

Misuse of federal funds

When federally funded programs are involved, approving false claims indicates severe financial and legal misconduct.

Submission of implied false certification claims: The N V Rides organization continues to receive federal funds while failing to comply with the legal or regulatory standards required for the funding.

Violation of program guidelines: Dismissing French for a false reason suggests non-compliance with the rules of the federal program.

Organizational and cultural rot

A board's willing participation in a false dismissal is not an isolated incident. It is evidence of a deeper organizational problem. Suggesting:

A "culture of deceit": The N V Rides organization tolerates or even encourages dishonesty and cover-ups.

Conflicts of interest: The board may have approved French's dismissal to serve the interests of a board member or other executive, rather than the organization itself.

Lack of accountability: The board is not exercising proper oversight of its management and has created an environment where misconduct is not addressed.

A pattern of similar conduct

The approved letter may not be the first time the board has taken such an action. Broader evidence of misconduct could include:

Disparate treatment: Investigating if other individuals were dismissed under similar false pretenses or for seemingly minor issues, while favored individuals faced no repercussions for more serious offenses.

9

(French met a woman who told her she had been dismissed from the N V Rides program while talking about rides to doctor visits. This was in a doctors office and it came out in normal conversation. French was surprised at the time, and the woman said she hadd done nothing wrong and was also disabled. At the time, French did not now having this persons contact information would be helpful later. Though French can't not prove this, but it points to this not being an isolated incident, and it usually isn't with this level of misconduct .)

Inconsistent practices: The board's actions is not consistent with established internal policies or procedures, demonstrating an ad hoc approach designed to punish specific individuals Like French.


Exposure to civil and criminal liability

N V Rides Board members who knowingly approve a false dismissal open themselves and the organization to significant legal exposure. This can include:

Personal liability: Board members can be held personally liable for fraudulent actions they participated in, even if they didn't gain financially.

Government sanctions and fines: Federal agencies can audit and levy serious penalties against organizations that misuse funds or violate program rules.

Civil litigation:  French can sue for wrongful termination, defamation, and other claims, seeking damages and public disclosure of the organization's misconduct


Violations of Laws--Americans with Disabilities Act (ADA)

Discrimination: The arbitrary and false reason for French's dismissal, coupled with the lack of proper process for French, points to  discrimination based on French's disability, which is prohibited under the ADA.

Denial of Reasonable Accommodation: By N V Rides creating an arbitrary barrier to service for French through false information, the N V Rides program is denying the French's right to reasonable accommodations.

Disregard for vulnerability: Federally funded programs for people with disabilities including French, and seniors, including French, have a heightened duty to be respectful and protective of their clients including French. The use of dishonest and intimidating tactics by N V Rides, such as gaslighting and violating privacy, directly exploits the vulnerability of disabled French.

ADA civil rights complaint: Given that this N V Rides program is federally funded and serves

10

people with disabilities, the totality of its actions—including discrimination through false dismissal, gaslighting, and privacy violations...

French has collected compelling evidence, including the documented receipts, false statements, and notarized statement. The pattern of gaslighting and repeated privacy violations further strengthen French's position. The N V Ride program's failure to provide proper notification and opportunity for French to defend herself against the false dismissal reason, particularly before the board, violates principles of due process.

*See Part-J for State and other Laws on all claims.

**************

4-MisUse of Federal Funds:

Since the free ride program, N V Rides, is federally funded, it is subject to the ADA, particularly Title II, which prohibits discrimination against qualified individuals like French, with disabilities in all programs, activities, and services of public entities

Discrimination: Firing a disabled person, like French, from a federally funded program under an invalid pretextual reason (e.g., location, when location was not the reason) is a violation of the ADA's prohibition against discrimination. The program, N V Rides has a duty to not base decisions, such as dismissal, on an individual's disability.

Violation of federal grant regulations: The misuse of federal funds for discriminatory practices is illegal. The N V Rides use of federal money to operate in a discriminatory way or to fire/dismiss someone such as French in breach of contract violates the terms of its federal funding. This leads to federal investigations and penalties for the organization.

Misuse of federal funds: Misusing federal funds to discriminate against French, a disabled person, is also a violation. Federal funds are provided to ensure equal access, not to fund discriminatory practices. Such an action also violates Section 504 of the Rehabilitation Act, which applies to any program like N V Rides receiving federal financial assistance and prohibits discrimination on the basis of disability.

1. Program's actions causing a false claim

An FCA violation occurs when a false or fraudulent claim is made for payment or approval from
the government.

False certification of compliance: The N V Rides program receives federal funding based on
certifications that it will comply with federal laws, including the ADA and other civil rights
requirements. By engaging in discriminatory, retaliatory, and fraudulent behavior, the program
and its staff violated the terms of their grant agreement.

Materiality of the false statement: The N V Ride program's violation of the ADA and its internal
procedures, including stonewalling French and submitting a false notarized letter to its board, is
material to the government's decision to continue funding the program. If the government
knew the program was engaging in illegal and fraudulent practices, it would likely withhold or
terminate funding.

False records and statements: The false notarized letter, signed by Barb and sent to the board,
is a false record used to conceal fraudulent activity. It was intended to mislead the board and,
by extension, the government funding agency, into believing that the program was being run in
a legitimate and compliant manner.

Conspiracy to defraud: The coordinated actions of Tony, Selmetria, Emily, Jeff, Elena, and Barb
to wrongfully dismiss you and cover it up constitute a conspiracy to defraud. They acted to
conceal the program's discriminatory and fraudulent conduct from oversight bodies

2. Causation of damages to the government

The fraud in this case causes direct and indirect damages to the federal government.

Funding of non-compliant program: The government has been harmed by providing funding to a
program that is not in compliance with federal civil rights laws. The program is failing in its
purpose of providing accessible services to disabled individuals, which is a misuse of federal
funds.

Damages caused by retaliation: The N V Rides program used federal funds to retaliate against
French for engaging in a protected activity. This is a direct causal link between the misuse of
federal funds and the program's discriminatory actions.

Costs of investigation: The government has been harmed by the program's fraudulent activities,
which have required an investigation by the EEOC and may require further investigation by the
Department of Justice. The government has incurred costs in investigating and addressing the
program's fraudulent and illegal conduct.

12

3. Legal actions and remedies

<u>Qui tam action:</u>  As a private citizen with original, non-public information about the fraud, you can initiate a qui tam action on behalf of the government under the FCA. The lawsuit would allege that the program knowingly submitted false claims for payment or approval by misrepresenting its compliance with federal law.

<u>Whistleblower protection:</u>  French is protected from retaliation under the FCA's whistleblower protection provisions for taking actions to expose fraud. The retaliatory phone call from Jeff and Elena and the continued stonewalling by the program are prime examples of retaliatory conduct.

The N V Ride program's fraudulent and discriminatory actions were not isolated incidents but a systemic pattern of malicious and illegal conduct that resulted in the misuse of federal funding. This can significantly strengthen French's case and provide additional avenues for legal recourse.

*See Part-J  for State and other Laws on all claims.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

5- <u>Services denied to a disabled person</u>

Causal links demonstrating that the N V Ride program's malicious, fraudulent, and retaliatory actions led to the denial of services to French, a qualified individual with a disability.

French was denied a ride by the N V Rides program on Aug 23, 2024, and dismissed from the N V Rides program for the invalid reason of location on Aug. 27th, 2024.

<u>Americans with Disabilities Act (ADA), Title II</u>: This section prohibits discrimination against qualified individuals, like French, with disabilities, in all programs, activities, and services of state and local governments. The "free ride program" is operated by a state and local government entity, it is covered by Title II. Denying services to a disabled persons, including French,  based on an invalid reason, especially a perpetual one like location, is a form of discrimination.

<u>Section 504 of the Rehabilitation Act of 1973:</u> This law prohibits discrimination against individuals with disabilities, including French, in any program or activity receiving federal financial assistance. Since the program is federally funded, this law applies and prohibits denying services to the qualified disabled person, French, on the basis of her disability.

13

<u>Failure to provide equal opportunity:</u>  Both the ADA and Section 504 require that people with disabilities, including French, have an equal opportunity to benefit from a program's services. Denying service to French, based on a discriminatory reason like location, when it's not a legitimate requirement, violates this principle.

Denying services to French based on her disability can be a distinct claim under the ADA and Section 504. Under these laws, covered entities cannot deny participation in or deny the benefits of their programs and activities to people with disabilities, including French.

Where French, has several legal claims for wrongful dismissal, discrimination, and privacy violation , federally funding, contractual relationship with the program, etc.. multiple federal and state laws apply.


1. Causal link to wrongful dismissal

The N V Ride program's discriminatory actions directly caused the wrongful dismissal, which resulted in the denial of services.

<u>Malicious gaslighting:</u> Tony's malicious gaslighting and creation of a fraudulent reason for the service cancellation directly led to French's dismissal.

<u>Fabricated reason:</u> The N V Ride program's use of a fabricated reason, a location error, for French's dismissal further demonstrates that the denial of services was not for a legitimate purpose.

<u>Adverse action:</u>  French's dismissal from the program constitutes an adverse action that was taken against French because of her disability, in violation of the ADA and Section 504


2. Causal link to malicious and fraudulent actions

The N V Ride program's malicious and fraudulent actions were a direct and causal factor in Frenc's denial of services.

<u>Intentional deceit:</u> Barb's signing of a notarized letter with false information and its submission to the board were intentional acts designed to deceive the program's oversight body and formalize French's wrongful dismissal. This fraud directly led to the denial of French's services.

<u>Conspiracy to defraud:</u> The concerted actions of multiple staff, including Tony, Jeff, Elena, Emily, Selmetria, and Barb, to harass you and cover up their illegal actions, led to French's  denial of services.

14

3. Causal link to discrimination (intentional and systemic)

The N V Ride program's intentional discriminatory actions, and its systemic failures, caused the denial of services.

Malicious intent: Elena's discriminatory remark insinuating that French was "not part of the population they serve," combined with the other malicious acts of the staff, is direct evidence of a discriminatory motive. This motive directly caused French's denial of services.

Systemic failure: The N V Ride program's systemic failure to properly supervise its staff, as demonstrated by the management's approval of the malicious acts and the subsequent stonewalling of communication, led to the denial of services. This systemic failure created an environment where discriminatory actions were not only tolerated but encouraged.

4. Causal link to retaliation

The N V Ride program's retaliatory actions directly caused the continued denial of French's services and further harm.

Adverse action after protected activity: After French engaged in a protected activity by complaining to the program's partners, the program retaliated with further malicious harassment and continued its denial of services.

Intimidation and harassment: Jeff and Elena's retaliatory phone call, and the continued stonewalling by the N V Rides program, were intended to intimidate and harass French into dropping her complaint. This continued harassment is a causal factor in French's continued denial of services.

5. Causal link to breach of common carrier duty

The N V Ride program's breach of its statutory duty as a common carrier to provide safe and accessible services to disabled individuals caused French's denial of services.

Malicious misconduct: The N V Ride program's staff engaged in malicious misconduct and gross negligence, which is a breach of the program's common carrier duty. This breach of duty directly caused French's denial of services.

In summary, the causal links for the denial of services to a disabled person, French,  are not a single, isolated event but a series of malicious, fraudulent, and retaliatory actions by the

15

program and its staff. By outlining these causal links in your federal complaint, French can demonstrate that the N V Ride program's actions were not a legitimate business decision but a discriminatory and malicious scheme that led to French's denial of services.

*See Part-J  for State and other Laws on all claims.

****************

6-Negligent Supervision

Negligent Supervision: The person in charge, Selmetria's inaction when she observed the speakerphone, gaslighting, not entering French's ride, also resulted in liability for engagement of negligent supervision, which violates the ADA's requirement for proper oversight and service provision. The person in charge, Selmetria, had a duty to act and her failure to do so directly caused the harm to French. The entire situation, including the invalid reason for French's dismissal, the lack of intervention by Selmetria, and the mishandling of private information, is interpreted as negligent supervision, as the N V Rides organization and its personnel failed to act reasonably. The breach of duty adversely effected French and resulted in her wrongful dismissal based on discrimination.

The person in charge, Selmetria, had a direct responsibility to prevent discrimination to French, and ensure compliance with ADA regulations. Selmetria's failure to intervene in a situation involving a disabled French, constitutes a violation of her duties.

The Organization/Program: The federally funded  N V Rides program itself, is responsible for ensuring its services and employees/volunteers comply with the ADA and are properly trained.

Breach of duty to intervene: Under the ADA, managers and supervisors, like Selmetria, are liable for their own discriminatory actions and for failing to address known discrimination, particularly if they are aware of the illegal conduct. By failing to correct the invalid dismissal reason while present, the person in charge, Selmetria, enabled or participated in the discriminatory act against French.

State Tort Law (Privacy): The public disclosure of private medical information, even by a non-HIPAA entity, violated French's right to privacy under state common law. Selmetria, the person in charge, is also culpable, broke ADA laws by failing to correct the discriminatory action against French, and actively participated in the privacy violation, failure of her to intervene in a situation where a disabled French is being discriminated against is a form of discrimination itself.

16

Basis for insufficient training: Negligent supervision can also be based on a failure to provide adequate training. A separate claim could be made against the program for failing to properly train its staff on disability rights, privacy rules, and appropriate conduct, which directly led to the wrongful actions against French.

Damages: French suffered actual harm / injury as a result of the Selmetria's actions and the N V Rides failure to supervise and train their staff.

Separate claim against the program: The N V Rides program itself is held liable for insufficient training of its staff.

While Virginia courts traditionally disfavored standalone negligent supervision claims, the program's malicious and fraudulent conduct towards a vulnerable person and the involvement of management  establish liability.


1. Program's failure to supervise and control employees

The N V Rides program had a duty to supervise and control its employees, particularly since it serves a vulnerable population of disabled and senior individuals. The program's failure to meet this duty led to the malicious and fraudulent acts against French.

Awareness of misconduct: The "person in charge" Selmetria, who listened to the unauthorized speakerphone call from Tony was aware of Tony's malicious and inappropriate behavior. By failing to intervene, this manager condoned the behavior and demonstrated a failure to supervise.

Approval of deceit: A management-level employee, Barb, signed a notarized letter containing false information to present to the board. This action demonstrates that the program, through its management, approved and ratified the malicious and fraudulent conduct of its staff.

Systemic failure: The pattern of malicious and harassing conduct by multiple employees (Tony, Jeff, selmetria, Elena, and Barb), along with the subsequent stonewalling of communication, reveals a systemic failure of supervision and management within the program.


2. Foreseeable harm to French

The N V Ride program's negligent supervision was the proximate cause of the foreseeable harm French suffered.

Vulnerable population: The program's clients are a vulnerable population, and the program

should have foreseen that its staff's malicious and fraudulent conduct would cause harm.

Known risk: The program's management was aware of Tony's misconduct, as demonstrated by the "person in charge" Selmetria, who listened in. By failing to take corrective action, the program created a known risk of further harm to French

### 3. Causation of damages

The N V Ride program's negligent supervision directly caused the harm and damages that French suffered.

Wrongful dismissal: The program's failure to supervise and control its employees led to French's wrongful dismissal from the program.

Emotional distress: The malicious and fraudulent actions of the staffs, which were enabled by the program's negligent supervision, caused French severe emotional distress.

Continued harassment: The program's failure to supervise and control its staff allowed the retaliatory harassment to continue, causing further harm

### 4. Punitive damages

The N V Ride program's gross negligence and willful and wanton disregard for French's rights can lead to punitive damages.

Willful and wanton disregard: The program's approval and ratification of its staff's malicious and fraudulent conduct, including the submission of a false notarized letter, demonstrates a willful and wanton disregard for French's rights and well-being.

Condoning malicious conduct: Barb's signature on the false letter and the subsequent stonewalling of communication are evidence that the program, through its management, condoned the malicious conduct of its staff.

### Causal chain

The causal chain of negligent supervision unfolds as follows:

The program had a duty to supervise and control its staff.

The N V Ride program's breach of this duty was demonstrated by the "person in charge"

Selmetria, who failed to intervene, the management's approval of the deceitful letter, and the systemic failure to control malicious and fraudulent behavior.

The program's breach of duty caused the staff to engage in malicious and fraudulent acts, including wrongful dismissal and harassment.

These acts resulted in foreseeable harm to French, including emotional distress and the loss of service.

By clearly laying out these causal links in French's federal complaint, French can demonstrate that the N V Ride program's negligent supervision, and not just the staff's individual actions, was a causal factor in French's harm and that the program should be held liable for compensatory and punitive damages.

*See Part-J  for State and other Laws on all claims.

**************************

### 7- Provided less favorable services (for disabled person)

Causal--The entire chain of events resulted in the disabled person, French, receiving substandard treatment, which, in the context of a federally funded program, amounts to disability discrimination and providing less favorable services to French.

The combination of a wrongful dismissal of French from a federally funded program, N V Rides, of French, is less favorable services to a disabled individual, French, a breach of contract between French and N V Rides, negligent supervision of Selmetria of Tony, and a privacy violation by Tony and Selmertia, forms this powerful, multifaceted legal claim. The relationship among these elements is not only cause-and-effect chain, but a combination of factors that demonstrate a pattern of discrimination, negligence, and harm of French.

Less Favorable Services: Providing less favorable services based on disability to French is a direct form of discrimination prohibited by the ADA and Section 504.

The ADA's Title II or Title III, the Rehabilitation Act of 1973 (Section 504), and state/local laws were violated by the wrongful dismissal of French, and by unequal service to a disabled person, including French.

The previous actions against French, following the adverse event of wrongful dismissal of French, involves violations of the Americans with Disabilities Act (ADA) specifically: wrongful termination of French -(ADA Title I), the failure to provide services from a federally funded

program to French- (impacting Title II or Section 504 of the Rehabilitation Act), and the lack of reasonable accommodation for French, and lack of intervention by management of N V Rides. The privacy violation from sharing French's medical information on a speakerphone, while not a HIPAA violation for a non-covered entity, violates French's privacy rights under other federal and state laws and further demonstrate providing "less favorable services " to French.

Denial of Services: The wrongful dismissal of French from the Ride program based on location is a denial of services to French, a violation of the requirement that disabled individuals including French, receive the same services and benefits as others.

Federal funding: The fact that the N V Rides program is federally funded brings it under the regulations of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA). These laws prohibit discrimination against individuals including French with disabilities by programs receiving federal funds.

Less favorable services: An invalid reason for dismissing a disabled person including French, for an invalid reason from a ride program, N V Rides, that in contrast to services provided for a non-disabled person demonstrates a pattern of "less favorable services," to French, a classic indicator of discrimination. The dismissal of French and the privacy violation of French occurred because of French's status as disabled, strengthening the case for disability discrimination.

The elements of discrimination against the disabled French, and the "less favorable, unequal services" to French in this scenario include:

Providing unequal services: French's dismissal from the free ride program, N V Rides, based on an invalid reason of location, especially when "location was not the reason", therefore this is a form of disparate treatment by N V Rides of French.

Discrimination based on disability: French's treatment suggests the disabled person, French, has been treated differently because of her disability, even if indirectly. Such discrimination and false assumptions about the French's disability, violates the ADA.

Discrimination by a public entity: The inaction of the "person in charge" Selmetria, to correct the situation involving French, is a violation. Under Title II, public entities, which includes federally funded programs like N V Rides, and have an affirmative duty to provide equal access to disabled French, and are responsible for the actions of their employees/volunteers and their training of obeying all of these laws.

While the organization, N V Rides, does not fall under a "covered entity" under HIPAA, the public disclosure of French's private medical information is a serious violation of her personal privacy rights. This act falls under state-level torts like "public disclosure of private facts" or "invasion of privacy." It is viewed as contributing to an unequal service to French, by publicly embarrassing French, the disabled person in a way that wouldn't happen to a non-disabled

20

person.

Discrimination: The core issue is discrimination against French, with a disability by providing unequal services to French, which is prohibited by the ADA.

Providing less favorable services to French constitutes unequal service and is a valid basis for a separate claim under the ADA. This falls under the broader umbrella of prohibiting discrimination against people with disabilities including French in various aspects of public life.

*See Part-J for State and other Laws on all claims.

*****************

8- Providing appropriate service (to a disabled person)

The ADA and other anti-discrimination laws, such as the Rehabilitation Act's Section 504, are broken by French's scenario due to violations of Title II of the ADA (for a public entity like the N V rides transportation program) and Section 504 (for federally funded entities), leading to discriminatory service provision for disabled French. The scenario breaks the requirement for appropriate and non-discriminatory services by the public entity, N V Rides, and involves wrongful dismissal of French and interference with disability rights of French.

Relevant Laws

Americans with Disabilities Act (ADA) Title II: This title applies to state and local government services and public entities, such as the described federally funded free ride program, N V Rides for seniors and the disabled, including French. It prohibits discrimination against individuals with disabilities, including French, in the provision of services and mandates appropriate service to the disabled, including French.

Rehabilitation Act, Section 504: This law prohibits discrimination against qualified individuals with disabilities, including French, in any program, service, or activity that receives federal financial assistance. The free ride program, N V Rides' receipt of federal funding makes it subject to Section 504.

ADA Title I and Interference/Retaliation Protections: While not directly focused on service provision, French's dismissal is related to Title I (employment discrimination) or a violation of the ADA's anti-retaliation provisions, in that French's dismissal was a reaction to her asserting her disability rights by requesting a ride.

How the ADA and other Anti-Discrimination Laws are Broken

Discriminatory Service: The core violation is the discriminatory provision of services to the

21

disabled person including French. By dismissing French, using an invalid reason (location) and
providing inadequate support to French, the entity N V Rides failed to provide "appropriate
service" to French as required by the ADA and Section 504.

Failure to Intervene: The presence and inaction of Selmetria in charge, who did not intervene to
correct the situation, also constitutes a failure to provide appropriate service to French,
potentially indicating a systemic failure of N V Rides to address discrimination of French and
others disabled persons.

Wrongful Dismissal/Retaliation: Dismissing French based on an invalid reason, especially in
conjunction with her disability and protected rights, is a wrongful dismissal, which is a form of
discrimination of French under the ADA.

Failure to Provide Appropriate Service: The situation where a French's medical information was
shared over a speakerphone without her consent, and the failure of the person in charge,
Selmetria, to intervene, also falls under the failure to provide appropriate services to French
under the ADA. This is especially true as French was patron of the ride program.

The ADA likely broken in this scenario includes: ADA Title II's requirement for state and local
government programs like N V Rides, to provide appropriate services to people with disabilities
including French, and Title I where French was a rider denied appropriate services and
subjected to a wrongful dismissal due to her disability. Providing appropriate services under the
ADA includes avoiding discrimination, ensuring access, and providing necessary
accommodations to the disabled, including French. Discrimination based on disability, such as
invalid location as a reason.

The causal links demonstrating how the N V Ride program's malicious, fraudulent, and
retaliatory actions led to a failure to provide appropriate service under the Americans with
Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

1. Intentional discrimination causing denial of appropriate service

The N V Ride program's discriminatory actions directly caused the denial of appropriate service,
violating its obligations to provide equal opportunities to disabled individuals including French.

Fabricated reason: Tony's fabrication of a location error and the subsequent creation of a false
notarized letter by Selmetria and Barb, demonstrates a malicious intent to deny French service
for reasons other than eligibility.

Malicious intent: Elena's discriminatory remark insinuating that French was "not part of the
population they serve," is direct evidence of a discriminatory motive, which caused the denial of
appropriate service.

22

## 2. Malicious and fraudulent actions causing denial of appropriate service

The N V Ride program's malicious and fraudulent actions were a direct and causal factor in the denial of appropriate service.

<u>Intentional deceit:</u> Barb's signing of a notarized letter with false information and its submission to the board were intentional acts designed to deceive the program's oversight body and formalize French's wrongful dismissal. This fraud directly led to the denial of appropriate service.

<u>Conspiracy to defraud:</u> The concerted actions of multiple employees, including Tony, Jeff, Elena, Selmetria, Emily, and Barb, to harass French and cover up their illegal actions, led to the denial of appropriate service.

## 3. Retaliatory actions causing denial of appropriate service

The N V Ride program's retaliatory actions directly caused the continued denial of appropriate service and further harm.

<u>Adverse action after protected activity</u>: After French engaged in a protected activity by complaining to the program's partners, the program retaliated with further malicious harassment and continued its denial of appropriate service.

<u>Intimidation and harassment</u>: Jeff and Elena's retaliatory phone call, and the continued stonewalling by the program, were intended to intimidate and harass French into dropping her complaint. This continued harassment is a causal factor in French's continued denial of appropriate service.

## 4. Breach of duty causing denial of appropriate service

The N V Ride program's breach of its statutory duty as a common carrier to provide appropriate and accessible services to disabled individuals caused French's denial of appropriate service.

<u>Malicious misconduct:</u> The program's staff engaged in malicious misconduct and gross negligence, which is a breach of the program's common carrier duty. This breach of duty directly caused French's denial of appropriate service.

23

5. Failure to follow due process causing denial of appropriate service

The N V Ride program's failure to provide French with due process and an opportunity to appeal contributed to the denial of appropriate service.

Stonewalling: The program's continued refusal to communicate with French after her complaint denied French access to a fair process and contributed to French's denial of appropriate service.

Ignoring appeals: The program's failure to follow its own complaint procedures, including ignoring French's appeal to the board, led to French's denial of appropriate service.

6. Failure to provide reasonable modifications causing denial of appropriate service

The N V Ride program's failure to provide French with reasonable modifications to its policies and procedures contributed to the denial of appropriate service.

Refusal to accommodate: The program's refusal to accommodate French request for a fair and impartial process, combined with its malicious actions, led to the denial of appropriate service.

In summary, the causal links for the denial of appropriate service are not a single, isolated event but a series of malicious, fraudulent, and retaliatory actions by the program and its staff. By outlining these causal links in French's federal complaint, she can demonstrate that the program's actions were not a legitimate business decision but a discriminatory and malicious scheme that led to French's denial of appropriate service

*See Part-J  for State and other Laws on all claims.

****************

9- Proving Discrimination

See Exibit A & B -Letter with notary stamp / phone text

See Exibit C-  receipts of Sept.3, 2024 location

The Letter & Phone Text both written by Selmetria, but the letter signed by Barbara Gatorian, both stating the false reason of location given for French's wrongful dismissal, and that the location was proven to be, never given by French to Tony, is evidence that the stated reason was a pre-text to conceal an illegal, discriminatory motive. --That this Letter was taken before the board and presented without French's presence and due process, on false pretense, false

24

pre-text, and with false statements, that were notarized by a notary, which is illegal and violated French's rights.

If a person, Selmetria Quarles, knowingly presents a false statement for notarization, or with a signature from the wrong person, she can be charged with crimes such as perjury or false statements, and is a form of document fraud. The act of submitting false documents for notarization is a fraudulent act that undermines the purpose of notarization, which is to verify authenticity and deter fraud. This person. Selmetria, who got the document notarized can be prosecuted for fraud, and the notary may also face liability if they participated in or knew about the fraud. Penalties can include significant fines and prison time as seen in Virginia where a Class 5 felony conviction, and include criminal penalties like misdemeanors or felonies, fines, and the loss of your notary commission. ---It is crucial to report such incidents to the appropriate state authority, such as the Secretary of State's office.

 Selmetria knew that the location of the ride was not a valid reason for French's dismissal, that it was discriminatory, and she still took the letter with the false statement, written by Selmetria, but signed by Barbara Gatorian as the Chair Person in 2024.  That the letter was notorized as a true statement by the notary, but signed by Barbara Gatorian.  Selmetria did know it was a false statement, since she was present when Tony failed to enter French's ride,  and it was presented to the board who also upheld a false dismissal and false statements.

<u>Adverse Action</u>: French proves discrimination against her by N V Rides, by showing she experienced an "adverse action." Dismissal of French from the ride service without  valid reason, N V Rides, is a clear adverse action.

<u>Discrimination based on disability</u>: French has proven that the multiple adverse claims, most standing on its own strength as a seperate claim, one after the other. That together they prove a continuing series of events/actions/behaviors that are proven to be discriminatory against disabled French, whether intentional or not. Though Intent is proven. The pre-text is proven. Beginning with the adverse event of French's wrongful dismissal.


<u>Pattern of Misconduct</u>

<u>N V Rides pattern of misconduct is evidenced </u>by their use of a false reason for dismissal of French, repeated privacy violations by placing her calls on a speakerphone without her consent/knowledge, and discriminatory remarks made by staff to French, which together demonstrate a serious breach of professional and ethical conduct toward French, and has significant implications under anti-discrimination laws and federal regulations for grant-funded services including N V Rides.

<u>Misuse of False Information</u>: N V Rides presented a false reason for dismissal of French-(invalid

25

location) and used excessive false statements to support it, evidenced by the receipts and documentation French provided. The N V Ride program's overall conduct establishs a pattern of animosity and bias toward French that needs to be considered in assessing discriminatory intent.

Procedural irregularities: N V Rides decision to dismiss French was taken to the board by Selmetria, in a letter signed by Barbara Gatorian, without French being present, indicating a denial of due process for French, and a biased proceeding towards French. The N V Rides program deviated from its normal protocols to unfairly target French and also by using unequal treatments. The excessive and irregular actions taken by N V Rides leads to the fact that they are trying to cover up an improper motive. These are actions not typically taken for a routine dismissal

Exclusion from the board meeting: The N V Ride program's decision to present their case to the board without allowing French to participate shows a lack of due process for her and points to N V Rides bad faith. This indicates N V Rides program/staff were not interested in a fair resolution for French, but in justifying their decision without challenge.

All of these claims—N V Rides' fabrication of a false reason for French's wrongful dismissal, the retaliatory actions against French, and the hostile pattern of behavior towards French—Shows a strong case that the motivation behind French's dismissal was discriminatory. N V Rides paints a picture that goes beyond a single, isolated incident and reveals a pattern of hostile and deceptive conduct towards disabled French. This cumulative evidence supports a private lawsuit.

Discrimination based on disability: The federally funded program N V Rides that serves disabled individuals including French, is prohibited from discriminating against them. When Jeff Dannick, Executive Director of the Pozez Jewish Community Center where N V Rides program is housed, partner of the N V Rides program, and board member, suggested French should "just move on" and Elena insinuated that French wasn't truly disabled, is evidence of prejudicial treatment of French that violates federal regulations.

Termination with false reasoning: The N V Rides program dismissed French under the demonstrably false pretense that her location of ride was no longer covered. The possession by French of receipts proving that her specific location was covered on the day of the requested ride, Sept.3, 2024, is strong evidence of a bad-faith termination of French.

Use of falsified evidence:  N V Rides repeatedly used excessive false statements for French's dismissal—in a letter, later a notarized statement, and a phone text message—to justify the dismissal of French based on an invalid reason. Presenting a false reason to the board without French present is a serious breach of process.

26

Retaliation for filing complaints: The final call from Jeff, following French's attempt to resolve the issue with the N V Ride program's partners, is seen as retaliation. The program escalated its misconduct toward French, after French exercised her rights to challenge the initial, unjustified dismissal.

Violation of privacy on speakerphone: N V Rides repeatedly placed French on a speakerphone without her knowledge or consent, including most of a 35-minute call with Jeff, a ride program partner, and board member. This violates basic privacy expectations and demonstrates a disregard for the French's rights.

Asking private medical questions over speakerphone: During the first incident, the scheduler Tony, asked French private medical questions over a speakerphone without her consent/knowledge, a gross violation of French's privacy, especially for French receiving services due to her disability. Selmetria's failure to intervene shows complicity in the privacy breach of French.

Failure of oversight:  Selmetria, the person in charge, failed to intervene during the initial misconduct involving the ride scheduler Tony, during Tony's private questioning of French and misuse of the speakerphone. This shows a failure of supervision and a lack of accountability.

Disregard for due process: N V Rides use of a biased board meeting to support a false reason for French's dismissal, without French's presence, undermines any pretense of a fair and transparent process for French.

Pattern of misconduct: The repeated speakerphone violations by Tony, and hostile phone call with Jeff, demonstrates a pattern of misconduct towards French, suggesting the issues French experienced, were not isolated incidents, but rather reflective of a broader problem with the N V Ride program's behavior toward its clients, including disabled French

This combination of deceptive practices, discriminatory behavior towards French, privacy violations of French, and retaliation against French, indicates a severe and ongoing pattern of misconduct against French by the N V Rides, the federally funded program.

Pattern of Behavior: The fact that no one in N V Rides would talk to French after her ride request, combined with the extreme actions taken, suggests a pattern of behavior beyond simple procedural error.

Privacy Violations:

Unauthorized Speakerphone Use: Placing French on a speakerphone without her knowledge or consent during the ride request call, and a second time during a later call with Jeff, represents a repeated violation of French's privacy rights and trust in N V Rides program.

Inquiry into Medical Information: Asking French private medical questions over a speakerphone without her knowledge or consent, further compounded the privacy breach of French, by N V Rides, as it was done without French's consent and in a way that exposed French's private information.

Invasion of privacy:  Having French on a speakerphone without her knowledge or consent, and potentially in earshot of others is a violation of French's privacy and shows a lack of respect. This action, and the unauthorized sharing of your private information, can be evidence of a hostile or discriminatory environment

Speakerphone use:  By N V Rides Having French on speakerphone without her consent and in front of others is a breach of French's privacy. Under the ADA, medical information must be kept confidential. Using French's disability-related need for the service as a topic in a non-confidential setting is a form of interference or harassment

Violation of rights: N V Ride interfering with disabled French's right to access services is a violation of ADA protections. The "coercion, intimidation, and interference" clause of the ADA protects disabled individuals, including French, from being pressured to for go her rights.

N V Rides violations of French's privacy by having her on speakerphone without her consent or knowledge can be a seperate legal claim. It is also evidence of a pattern of disregard for French's rights and dignity. Such actions against her, created a context in which discriminatory behavior against French is more plausible.

Unconsented speakerphone use and disclosure: The ride scheduler, Tony, asked French private medical questions over a speakerphone without French's knowledge or consent. This is a severe breach of privacy, especially for a person with a disability including French, whose transportation needs related to sensitive health information.

Pattern of misrepresentation: The N V Rides program's partner, board member, Jeff Dannick, repeated the pattern of misconduct by placing French on a speakerphone again without her knowledge during a call. Jeff then revealed to French, that she had been on a speakerphone with another program member, Elena Alergant, and possibly others, for a significant portion of the call. This establishes a pattern of reckless disregard for French's privacy by N V rides and Staff.

Violation of protected activity and privacy:  French had previously complained about the N V Ride program's actions to their partners. The subsequent speakerphone call during which Jeff revealed her confidential participation in the complaint process is considered both a privacy violation and retaliation against French.

Speakerphone without consent: The use of speakerphone without French's knowledge is a violation of her privacy. It also created a "gaslighting" scenario where French was prevented

28

from giving the very information later used to dismiss French. This type of severe misconduct serves as circumstantial evidence of discriminatory animus against French.

Discriminatory Behavior:

Insinuating Disability Status: Elena Alergant's attempt to insinuate that French was not disabled and did not belong in the program is a discriminatory tactic, especially given that N V Rides serves seniors and persons with disabilities, including French, and had done so since 2023 for her.

Dismissive and Discouraging Remarks: The comment to "just Move on" further illustrates a lack of compassion and respect, and is discriminatory and an attempt to dismiss French's valid complaint.

Pattern of Behavior: The fact that no one in the N V Rides program would talk to French after her ride request, combined with the extreme actions taken, suggests a pattern of behavior beyond simple procedural error.

Evidence for proving discriminatory motive (pretext) :

N V Rides false reason for the adverse action against French, used to cover up a discriminatory motive. The evidence French has described, organized, presented, proven, and reveals contradictions and inconsistencies by the N V Ride program's lack of response to French where the situation required a response to her for clarity and resolution, and also no response from Barb. Silence, based on N V Rides prior behaviors was contradictory to their usual communication style, was a deliberate choice to block French's rights, and continue discriminating against French, and carries strong unspoken messages, effectively acting as a powerful, albeit negative, form of communication itself.

Inconsistent explanations: N V Rides provided the invalid reason of "location" for French's dismissal in a text, letter, and notarized statement. These multiple, yet invalid, communications demonstrate the N V Rides unreliable justification, pointing toward a hidden, discriminatory reason.

Abnormal process and procedural irregularities: N V Rides conduct, such as having the disabled French on speakerphone without her consent and bringing the case to the board without her presence, represents a significant departure from standard and fair procedure. This shows that N V Rides was trying to manufacture a rationale for dismissal of French rather than following a good-faith process.

<u>Concealment and lack of transparency</u>: The refusal of N V Rides staff / volunteers to communicate with French after the ride request, is evidence of the N V Rides attempt to conceal the truth. N V Rides stonewalling shows they were aware of wrongdoing and were trying to prevent disabled French from getting information that would reveal it. Assuming she would "Just Move On"

<u>Disproportionate or excessive means</u>: The aggressive and extensive methods used to dismiss French—including falsifying a notarized statement—is considered excessive when the actual reason was a simple matter of location. The disproportionate response supports the argument that that N V Rides was motivated by something other than their stated reason.

<u>Discriminatory dismissal based on disability</u> :

<u>Pattern of manipulation and harassment (Gaslighting)</u> :

<u>False pretext for dismissal</u>: The N V Rides program gave an invalid reason—"location no longer covered"—to dismiss disabled French, a clear breach of trust and discrimination. French has proven that the location she went to on Sept 3, 2024, the same location that her ride request would have been for, and was a covered area by N V Rides. The N V Rides program's written statement claiming French's location was the reason for dismissal, when she was prevented from providing it, establishes that N V Rides justification was false. This is strong evidence of pretext, as the true reason was illegal discrimination against French. The written, texted, and notarized statements claiming a "location" issue provides a clear record of their alleged reason for French's dismissal. Once this reason was proven to be false, by showing the location was never allowed to be given due to the scheduler's "gaslighting"—French established that the N V Rides program's stated reason is a mere pretext (or cover-up) for their true, discriminatory motive.

<u>Violates the ADA:</u> The Americans with Disabilities Act prohibits discrimination on the basis of disability in programs that receive federal funding, which would include the ride service, N V Rides, and their actions of gaslighting a disabled French into believing something false/true is psychological and emotional abuse. Which is illegal, especially if it involves certain forms of discrimination and coercion of French that violates her disability protections. The described scenario involves illegal discrimination under the Americans with Disabilities Act (ADA), and the use of gaslighting French is a key component of the discriminatory act on French. Falsely accusing a disabled French of requesting a location she did not, manipulating the records to support the lie, and using it to deny French service is a violation of her civil rights.

<u>A form of disability-based harassment:</u> Gaslighting is recognized as a form of ableism that undermines the self-confidence and credibility of disabled people, including French, and can

30

weaken their ability to self-advocate. Systematically deceiving a disabled French and questioning her memory constitutes harassment based on her disability.

Manipulating reality: Gaslighting of French involved making her question her own reality. To doubt her own memory or perception of events so she made errors, and it is not just rude, it is used here as evidence of a pattern of hostile behavior by N V Rides staff and organization toward French, with the intended use of hostile behaviors, where phychological manipualtion was being used as a tactic against French

In French's case, Tony, the scheduler's actions prevented French from providing the "location" information, and then the program used the lack of that information to justify her dismissal. This pattern shows intent to create a situation where French would fail.

Illegal denial of service: By N V Rides falsely claiming that French requested an ineligible location and using this pretense to dismiss French from the program, the program illegally denied disabled French a service she was entitled to.

Gaslighting and Inconsistent Explanations: The N V Ride ride scheduler Tony, manipulation in refusing to allow French to give her ride location, demonstrates malicious intent by Tony toward French, and discriminatory attitude by Tony towards disabled French, then by Selmetria using location as a pretext for French's dismissal, creating a clear and provable contradiction. N V Rides inconsistent, shifting, false explanation serves as powerful circumstantial evidence that the true reason for N V Rides actions were discriminary of French, and directly links a pattern of deceptive behavior to the adverse action to French. This suggests a targeted effort to create a problem where one didn't exist.

The location reason itself is provably false, as French was never allowed to provide it. The N V Rides program's reliance on this fabricated reason is powerful evidence of pretext.

Fabrication of an administrative board decision: The N V Rides program used false statements to make French believe the dismissal was valid, including taking the dismissal letter to N V Rides board to support the false reason without her presence. This was done by N V Rides to give a false sense of legitimacy to an unfounded decision.

False documentation: The N V Rides program member, Selmetria, sent a letter to French citing the false location reason for her dismissal and then used the letter as a notarized statement. This amounts to N V Rides creating fraudulent legal documents to cover up discrimination against French and is a key indicator of wrongful intent and bad faith. An excessive attempt to build a case against French strongly suggests the N V Rides knew its stated reason was baseless.

Dismissal communicated via text: The N V Rides program also used a text message to communicate the false reason for dismissal of French. This shows a pattern by N V Rides of using various channels to spread and normalize the invalid reason for terminating French's

service. Since location was not a valid reason for French's dismissal under the program's rules, this exposes N V Rides stated reason as a fabrication.

"Excessive means": The N V Ride program's repeated effort to prove the false reason as being true—by confirming it in a letter, a text, and a notarized statement to French, and even bringing it to the board without French's presence is seen as overly aggressive and deceitful actions towards French, and is evidence of N V Rides retaliatory intent and suggests strongly that the program knew its reason was invalid.  The more effort a program or service provider takes to "poke holes" in a rider's story, the more a judge or jury will doubt their true intentions. The extreme lengths that N V Rides organization went to in order to legitimize the fabricated reason " is interpreted by a court as evidence of pretext , that they are trying to hide a discriminatory purpose

The N V Rides program's use of multiple and potentially fraudulent documents (the false notarized statement) to justify French's dismissal is not a standard procedure for a routine service issue. This excessive and defensive response suggests N V Rides knew their actions were improper and attempted to build a false paper trail to justify it.

The extensive and unusual actions taken by the N V Rides can be considered excessive and malicious, and they serve to further prove discriminatory intent toward French. The effort put into fabricating the justification for French's dismissal—especially by creating false, notarized documents—goes far beyond what a service provider would do for a legitimate cancellation. This pattern of behavior by N V Rides is strong circumstantial evidence that the underlying motive was discriminatory.


Excessive means of investigation:

Disproportionate action: The use of "excessive means" to justify French's dismissal is strong circumstantial evidence of pretext. French's dismissal was severe, but the N V Rides program had to resort to fabrication and extreme measures (a false notarized statement) to support it. This suggests the initial complaint was never the real issue, but rather an excuse to get rid of French, a disabled person.

Unusual actions (notarized statement): The fact that the N V Rides program went to the trouble of having a false statement for French's dismissal notarized is highly unusual and suggests an attempt to create a paper trail to justify an illegal action after the fact. The unusual nature of this action reinforces the claim of discrimination against French.

Hostile environment: The combination of gaslighting, privacy violation, and unfair procedures against French, the language in the letter and text, paints a picture of a service provider, N V Rides, that was intentionally creating a stressful and demeaning experience for French with a

32

disability

<u>Documentation:</u> The letter, text message, and notarized false statement provide documentary evidence that the N V Rides program used a specific reason—location—to dismiss the disabled person.

<u>The notarized false statement & Evidence of bad faith:</u> The notarized false statement that contains the false justification is significant evidence of bad faith and an intent to cover up the real reason for French's dismissal. Perjury or a false notarization demonstrates a high degree of intent to mislead. The "excessive means" used where the N V Rides program went to great lengths to cover up its discriminatory actions against French, is itself evidence of guilt. This can be used to:

<u>Shows pretext:</u> The effort that N V Rdies went to, to justify an indefensible action, proves that the true motive was unlawful discrimination against French, and not a legitimate operational concern. The false reason for French's dismissal is not just a mistake, but a fabrication meant to hide the real reason of discrimination against French.

<u>Pattern of Behavior:</u> The fact that no one in the N V Rides Program would talk to French after her ride request, combined with the extreme actions taken, suggests a pattern of behavior beyond simple procedural error.

<u>Demonstrated malicious intent:</u> The systematic cover-up by N V Rides, including the creation of notarized false statements and secret board meetings, failing to follow established procedures, shows a disregard for fair process for French, proving these actions were not a mistake, but a deliberate attempt to harm French personally, and violate her rights. The ride N V Ride program's stated false reason for French's dismissal was dishonest and is a critical step in establishing N V Rides discriminatory motive. The false notarized statement is a particularly strong piece of evidence that the N V Rdies organization is intentionally concealing their true motive of discrimination of French.


1-The actual ride request for French was to a covered area, a valid service request.

2- French is being penalized / discriminated against, for an unrelated or speculative request, not a service violation.

3-This would constitute an unequal and discriminatory application of the service's policies.

4-The fact that a past request may have been to a non-covered area is not a valid reason to dismiss French. Who made a valid request for Sept. 3, 2024, proven by the receipts from that days trip, and that French was not taken to Manassas, and that days location was a covered

area then and still is now.

N V Rides gives a false reason for an adverse action. Powerful evidence that the true motive is discriminatory. French's complaint & multiple claims, contain multiple instances of false explanations for French's wrongful dismissal.

Insinuations of being "undeserving": Elena Alergant tried to insinuate that the disabled person, French, was not "disabled enough" and did not belong in the group that N V Rides served. This goes beyond dismissal of French, and into directly questioning the validity of French's disability, a form of disability discrimination.

Link between the discriminatory motive and the dismissal:

The Pharmacy receipts are direct evidence that N V Rides stated reason for dismissal—the location—was false.

Letter and text message. These shows N V Rides officially and informally communicated a false reason to French.

The N V Rides program submitted a false notarized statement to the board and sent it to French, which is very strong evidence of N V Rides malicious intent and effort to fabricate a paper trail against French and void her due process.

Selmetria and Jeff are both witnesses's to the speakerphone events, since they clearly stated to French she had been on a speakerphone without her consent or knowledge, their testimony further supports French's claims


Timeline.

Prior 2 calls before this request--July- August -2024-Tony asks about French's ability to get to Manassas, without any reason to. This issue had been resolved.

Aug 23, 2024-called to request said ride- Tony gaslighted French-Tony not entering ride to location, French was put on speakerphone without her knowledge or consent- Selmetria in charge failed to intervene.

As stated by Selmetria, French called / emailed many persons in the company/partners to try to discuss what happened, and to reach Barb.

French called on Aug.27, 2024, to try to request ride again, was told no longer in the program by Selmetria- no reason given

Sept. 25, 2024, Selmetria left a text phone message stating invalid reason for dismissal and

stated dismissal. (Exibit B)

Sept. 9, 2024, Selmetria sent out Notorized letter to French, restating false reason for dismissal and many other accusations, and this leter had been taken before the board and it had been notorized. (Exibit A)

July 17, 2024, email from Tony stating Manassas no longer covered area, email signed by Tony and in a different font by Barbara Gatorian. (Exibit D)

Call Log is at the back of the Complaint.

Other Actions-

In Nov. 2024, French sent letters to 50- N V Rides Partners on her case. On Dec 23, 2024, Jeff Dannick called French as a result of this. Jeff had French on a speakerphone for approx 20-25 min of a 35 minute call on which Elena has been listening while French had not given her consent or had knowledge of being on speakphone, or who else may have been listening. During this call Elena indicated French was not part of the population they served and Jeff said French should "Just Move on" Call ended with no resolution, no valid reason for French's dismissal and more discriminatory and retailiatory treatment of French

In the interceding time French sent complaints to several departments of the DOJ, the IRS, Fairfax County Agency on Aging,  HHS office of Civil Rights, Depatment of Labor, and the EEOC. The EEOC issued French her right to sue. The ones that I saved- (Exibit E--EEOC is in Complaint too)


N.V. Rides itself does not have a central dismissal policy for riders, as it is a coordinating network rather than a direct transportation provider. Policies regarding rider conduct and potential dismissal are set by the individual partner organizations that actually provide the volunteer-driven rides.

However, the network's guidelines for volunteers provide insight into the types of inappropriate rider behavior that could lead to a partner organization terminating service.

Volunteer guidelines regarding riders : per their web site :

The "Volunteer Driver Program Resource Guide" for NV Rides explicitly states that certain types of rider behavior "cannot be tolerated" by volunteers. This includes:

Inappropriate behavior

Vulgar language

Lack of personal hygiene

When a volunteer has a concern about a rider, they are expected to report it to their specific program's staff. The partner organization would then be responsible for handling the situation and determining any further action, including potential dismissal from their services.

French did not at any time violate any of these reasons for dismissal from N V rides, nor did she violate any of the partners guidleine*s*,

Per Tony's email to French, about the Manassas area no longer being covered, he stated clearly that there had been no complaints against French for anything. (See Exhibit D- email)

Multiple incidents within the federally funded  N V Rides program, involves several violations of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, which prohibits discrimination against qualified individuals, including disabled French, in programs like N V Rides, receiving federal financial assistance

*See Part-J  for State and other Laws on all claims.

*******************

10 -Notary notarizing false statements:

The Letter that Selmetria sent to French that has been notarized and also signed by/as Barbara Gatorian, instead of Selmetria, contains false allegation of location being the reason for French's dismissal, and that reason is invalid and false as proven by French.

The Letter also contains several untruths.

 Laws that broken by notarizing a fake statement used for French's dismissal in the context of a federally funded ride program for seniors and disabled individuals:

Federal laws for false and fraudulent statements

18 U.S.C. § 1001: False statements

This federal law makes it a felony to knowingly and willfully make materially false, fictitious, or fraudulent statements or representations in any matter within the jurisdiction of the federal government. A false statement used to justify a wrongful dismissal of French from a federally funded program would fall under this statute.

### 31 U.S.C. §§ 3729-3733: False Claims Act (FCA)

The FCA imposes liability on individuals and companies that knowingly submit false claims for government funds. Since the program continued to receive federal funding after fabricating a statement to remove French, it's seen as using a false record to defrauding the government.

### Federal civil rights laws

### Section 504 of the Rehabilitation Act of 1973

This law prohibits discrimination on the basis of disabilities, including French's, in programs and activities that receive federal financial assistance. Falsely dismissing a disabled French from the N V Rides program would constitute discrimination against French and violate this act.

### Americans with Disabilities Act (ADA)

Title II of the ADA prohibits discrimination against qualified individuals with disabilities, including French in all programs, activities, and services of public entities. A federally funded free ride program like N V Rides, is subject to ADA requirements, and denying or withdrawing services from French, based on a fabricated statement would be a clear violation

### civil violations by the notary-State-level notary laws

Notaries are state-commissioned officers and are subject to state laws governing their conduct. A notary who knowingly executes a false certificate, like the one sent to French,  can face severe penalties, including fines, imprisonment, and the suspension or revocation of their commission. Knowingly notarizing a fraudulent document is a serious form of misconduct that enables fraud.

### Civil liability

The notary can also be sued for civil damages. If the notarization of the false statement was the proximate cause of the French's losses, the notary could be held personally liable. This liability can be covered by the notary's surety bond.

Actions by a notary can potentially lead to a **separate, independent claim**, depending on the specific misconduct.

### Direct causal links

The notarized letter is a key piece of evidence because it formalizes the program's fraudulent actions and directly links them to your harm.

37

1. Causal link to wrongful dismissal and retaliation

The notarized false statement was presented to the board after you were wrongfully dismissed. It was created specifically to justify that dismissal.

Malicious justification: The document was created with malicious intent to conceal the program's discriminatory actions and to formalize a false reason for terminating your service.

Adverse action and pretext: The submission of the false letter to the board is a direct, adverse action that furthered the wrongful termination. The fabricated content of the letter serves as pretext, or a false reason, for the dismissal.

Retaliation evidence: Because the harassment escalated after you complained, the letter serves as evidence that the defendants were retaliating against you for engaging in a protected activity.


2. Causal link to fraudulent misrepresentation

In Virginia, a claim of fraudulent misrepresentation requires proving that a false representation of a material fact was made with the intent to mislead, that you relied on it, and that you suffered damages as a result.

Intent to mislead: Barb's signature on a false notarized letter, containing fraudulent information, is powerful evidence that the program and its staff intentionally sought to mislead the board.

Damages resulting from reliance: While the board was the direct recipient of the letter, your dismissal and the subsequent stonewalling caused you damages. The fraudulent letter was a causal factor in that process.


3. Causal link to civil conspiracy

The notarized false statement is crucial evidence of a civil conspiracy among the employees.

Concerted action: The letter is proof that multiple employees acted together to defraud the board and harm you. Barb, as the signer, acted in concert with the other employees who engaged in the gaslighting, unauthorized phone calls, and stonewalling.

Agreement to deceive: The letter serves as concrete evidence of an agreement among the employees to use unlawful means to accomplish a malicious purpose.

38

Indirect causal links

The notarized false statement also indirectly strengthens the causal links for other torts by demonstrating malicious intent and causing additional harm.


4. Causal link to intentional infliction of emotional distress (IIED)

The discovery that the program created and submitted a notarized, fraudulent letter adds to the cumulative effect of the outrageous and intolerable conduct.

Heightened distress: Learning that a program, and an employee you had a prior interaction with, went to such lengths to justify your wrongful dismissal and harass you would cause severe emotional distress.


5. Causal link to ADA discrimination (intentional)

The creation of a false document to justify a discriminatory act serves as evidence of malicious intent and further proof of the program's discriminatory mindset.

Intentional discrimination: The letter proves that the program's justification for your dismissal was a pretext for discrimination. An organization that goes to such lengths to create a false record is likely doing so to cover up illegal discrimination


6. Causal link to malicious misconduct and gross negligence

The submission of a false notarized document to an oversight board is an act of egregious misconduct and systemic failure.

Systemic failure: Barb's involvement, as a more senior employee, shows that the malicious and negligent conduct was sanctioned by management.

Willful and wanton conduct: This act goes beyond mere negligence and demonstrates a willful and wanton disregard for the rider's rights and well-being.

In summary, the notarized false statement is a central piece of evidence that directly and indirectly establishes the causal links for your claims of retaliation, fraudulent misrepresentation, civil conspiracy, and intentional infliction of emotional distress

*See Part-J  for State and other Laws on all claims.

39

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

11-11- <u>Intentional discrimination or had discriminatory effect</u>

French received an email, signed by Tony and Barb (in a different font), stating that Manassas was no longer a covered service area. This email is attached in back of complaint as <u>Exhibit D</u> .

(SEE Exhibit D-email)

On the next two occasions French called for a ride, Tony inquired about her "Manassas ride situation".

The first time, French stated she was still "working on it", which appeared to please Tony.

The second time, French informed Tony that "all was fine", which seemed to anger him

French perceived Tony's repeated questioning as an attempt to create an issue for her regarding Manassas, as this behavior was uncharacteristic and seemed to contradict the accepted change in service area.

On August 23, 2024, French called for a ride.

Tony did not ask for the location but discussed only the date.

After French suggested "September 3rd", Tony immediately began "gaslighting" her.

Tony had French on speakerphone without her knowledge or consent.

This "gaslighting" included forcing French to discuss personal medical information to process her ride request.

French believes Tony's previous inquiries about Manassas were a pretext to establish location as a reason for her later dismissal. Tony lacked a legitimate reason to continue raising the Manassas service issue, as it had been resolved. The subsequent actions, including the "gaslighting" and requiring personal medical information, followed by an invalid location-based dismissal, constitute a  perpetual and discriminatory personal attack against French. The fact that Selmetria, who was in charge at the time, was present during this exchange and did not intervene, is also viewed as evidence of an intentional and wrongful dismissal.

The program, N V RIdes, stated reason for French's dismissal was a pretext for unlawful discrimination based on her disability. The multiple false statements, wrongful dismissal, disclosure of private medical information and manipulation through gaslighting, failure to provide an opportunity to French to be heard, suggest N V Rides  reasons for dismissal were fabricated and conceals discriminatory motives. It is disparate treatment (intentional

40

discrimination) and had disparate impact on French.

Requesting accommodation- causal Link- French, a disabled person requested a reasonable accommodation, a ride, and was dismissed shortly after, this action created the causal link.

Proof of pretext: The core of the case is that N V Rides used a false reason for French's dismissal. French's receipts proving the ride location was covered, directly contradicted the program's official justification. The evidence cited, including the false reason for French's dismissal and the documented events prove this.

A Federal funded program for people with disabilities, including French, may have a seperate claims for disability discrimination under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA), which prohibit discrimination on the basis of disability by recipients of federal funds.

Discriminatory Intent (Disparate Treatment): This occurs when French was treated differently because her protected characteristic, such her disability. The evidence provided, such as the false reason for French's dismissal and contradictory statements, the Manassas location was resolved, negligence of the person in charge, French's receipts of actual location, gaslighting preventing the entering for the ride for French, proves that the program's actions were motivated by discriminatory intent rather than a legitimate policy.

Discriminatory Effect (Disparate Impact): This is a policy or practice that appears neutral on the surface but has a disproportionately negative effect on a protected group like disabled French. While French has evidence of intentional harm, an investigation might also determine if the N V Rides program's policies, even if neutral, adversely impact disabled individuals including French.

Prove Intent or Effect

Evidence of Fabrication: French's receipts proving the location was incorrect directly contradictory of the stated reason for French's dismissal, and can show the program's intent to mislead.

Witnesses: The scheduler, Tony's gaslighting, and the Selmetria in charge, her lack of intervention created a record of misconduct and negligence, which can support French's claim.

False Documentation: The notarized statement, dismissal letter, and text message with the false reason for French's dismissal, show that the N V Rides deliberately created false information leading to the adverse event for French.

Medical Questions: Asking private medical questions over speakerphone without French's consent, was a serious breach of her privacy that, combined with the other actions, suggests an improper motive of discrimination.

Procedural Violations:  N V Rides actions in dismissing the disabled French without her presence at the board meeting, and failing to provide French an opportunity to respond to the false allegations, further demonstrated a flawed process and intention to discriminate against French.

French has proven her disability discrimination in a federally funded program under both the discriminatory intent and discriminatory effect legal theories. The evidence described,  including multiple documented false statements, invalid reason for her dismissal, improper disclosure of her medical information, gaslighting of her, and a perpetual dismissal, is used to prove both of these theories.

*See Part-J  for State and other Laws on all claims.

**************

11- Conspiracy

1. Concerted action to accomplish an unlawful purpose

The existence of a conspiracy is demonstrated by the coordinated and concerted actions of multiple employees to achieve an unlawful purpose: the discriminatory and wrongful termination of French.

Tony's malicious actions: Tony initiates the wrongful termination Of French by fabricating a reason for cancellation and maliciously gaslighting French.

The person in charge's inaction: The person in charge, Selmetria, by listening to the unauthorized speakerphone call and failing to intervene, condones Tony's actions and becomes a tacit conspirator.

Jeff and Elena's retaliatory call:  Jeff, by again placing French on speakerphone without her consent, telling French she should " Just Move On", and Elena, by making a discriminatory comment while listening, act in concert to harass and intimidate French.

Barb's fraudulent letter: Barb, by signing a notarized letter containing false information to present to the board, acts in concert with the other staff to justify and formalize the fraudulent dismissal of French.

The program's stonewalling: The N V Ride program's continued refusal to communicate with French, jncluding through Emily, is a concerted effort to conceal the malicious and

42

discriminatory acts.

2. The overt acts of the conspiracy

An overt act is an outward act done in pursuance of the conspiracy. In this case, each of the staff's malicious action is an overt act in furtherance of the conspiracy.

Tony's gaslighting and unauthorized phone call: This is the first overt act, establishing the malicious intent and the unlawful means used to terminate French's service.

Jeff and Elena's retaliatory phone call: This is another overt act, demonstrating that the malicious harassment continued after French complained.

Barb's notarized false statement: This is a key overt act, as it formalizes the fraud and directly links Barb to the conspiracy.

The program's stonewalling: This is a continuing overt act, demonstrating the program's continued efforts to conceal the conspiracy and harm French.

3. Damages resulting from the conspiracy

French suffered damages as a result of the staff's concerted actions in pursuance of the conspiracy.

Wrongful dismissal: The conspiracy directly caused French's wrongful dismissal from the program.

Emotional distress: The malicious and retaliatory acts of the conspirators caused French severe emotional distress.

Legal costs: The conspiracy forced French to seek legal recourse and incur attorney's fees.

The causal chain

The causal chain of the conspiracy unfolds as follows:

Tony's initial act of malicious gaslighting.

The conspiracy is formed implicitly when the person in charge, Selmetria fails to stop Tony's malicious behavior and when Barb joins by signing the false notarized letter.

43

The conspiracy is executed through subsequent overt acts by Jeff, Selmetria, Elena, Tony, Emily, Barb, and the Board.

French suffers damages as a result of these concerted and malicious actions.

This provides a strong basis for a civil conspiracy claim in Virginia and can be used to hold all individuals involved, and the program itself, liable for damages

Evidence for proving discrimination

Disabled French's complaint is supported by the collected substantial evidence to demonstrate the program's discriminatory behavior towards French.

SEE Exhibits - A-B-C

 N V Rides use of "excessive false statements" and a false reason for dismissal is powerful evidence:

1-  False statements & Explanations: N V Rides use of "excessive false statements" and procedural irregularities, a knowingly false reason for French's dismissal is powerful evidence that N V Rides true, discriminatory motive is being concealed, and the program, N V Rides stated reason was a pre-text for discrimination against French.

False Documentation;  The notarized statement, dismissal letter, text message with false reason for French's dismissal, shows program deliberately  created false information. The letter, notarized statement, and text message all serve as written proof of the programs inconsistent and false justifications, further establishing pretext.

2-Contradictory evidence:  French's receipts proving the location of the pharmacy trip on Sept. 3rd, was not to an area not covered, and is direct evidence contradicting the N V Rides claim and supports the argument of pretext.

Gaslighted by the scheduler:   The scheduler, Tony's gaslighting, refusing to ask French for the location, public disclosure of French's private medical questions are not standard procedure, and is evidence of discriminatory motive towards French. Departure from normal procedures by N V Rides is a valid intent motive. Tony's attempt to mislead French, is evidence of a hostile or discriminatory attitude toward people with disabilities, including French, who require the service. The actions by the scheduler, Tony, and manager, Selmetria, combined with the false reason for French's dismissal, create a strong inference of discriminatory motive against French.

4- Departure from standard procedures: Dismissing  French, a disabled person, without allowing her to present evidence before the board, is a major deviation from standard due process for her. Failing to provide French an opportunity to respond to the false allegations, further demonstrates a flawed process and intent to discriminate and is a procedural irregularity, and

produced a biased outcome for French.

5-<u>Privacy violations:</u> The actions of Tony, the scheduler's, of asking private medical questions over a speakerphone without French's consent, Even if it's not a direct HIPAA violation, it is unprofessional and demonstrates a disregard for the French, the disabled person's privacy, which can support a claim of harassment, and creates an "atmosphere of discrimination". <u>Under the ADA, especially as it relates to the provision of service</u>

--While HIPAA may not apply, other federal laws can protect personal information.

<u>Virginia Privacy Law Violations of French</u>

<u>Virginia's Health Records Privacy Act (§ 32.1-127.1:03):</u> This law protects health records and requires French's authorization before disclosing her health information to others. Asking for and disclosing this information on speakerphone without her consent directly violates this provision.

<u>General Confidentiality Laws:</u> Even if a direct connection to healthcare doesn't exist, the organization is still subject to general state laws or professional codes of conduct that mandate confidentiality for information gathered about service recipients like French, especially vulnerable populations like seniors and disabled individuals including French.

<u>What the Person Did Wrong Tony-Selmetria</u>

Lack of Consent: Tony, on the speakerphone did not obtain French's knowledge or permission to have her medical information shared. This is a critical breach of privacy.

<u>Improper Disclosure:</u> Sharing medical information of French's in a public or semi-public manner, on speakerphone, is an unauthorized and inappropriate disclosure.

<u>Why it's Still Illegal Even without HIPAA</u>

<u>State-Specific Privacy Laws:</u> Many states, <u>including Virginia</u>, have their own laws that protect the privacy of personal health information, even when a provider or entity like N V Rides is not directly covered by HIPAA.

<u>Ethical Obligations:</u> Professionals and organizations like N V Rides often have ethical duties to protect the information they collect from individuals like disabled French, especially when that information is sensitive and relates to French's health and wellbeing.

<u>Vulnerable Populations:</u> The program N V Rides, serves seniors and disabled individuals including French. This makes French part of a particularly vulnerable population, and there are

45

often specific legal and ethical protections in place to safeguard French's information.

Virginia Code § 32.1-127.1:03 (Health Records Privacy): This law states that no person to whom health records are disclosed shall disclose or reveal them without first obtaining the individual's (French's) specific authorization. Since French's information was obtained through a secret recording/speakerphone, it was disclosed without her authorization.

Virginia Code § 32.1-127.1:05 (Breach of Medical Information Notification): While this section primarily deals with notification in case of a breach, it defines the types of information protected, including details about mental or physical conditions of person's like French. Unauthorized access and disclosure French's information falls under the purview of this law, even if the entity isn't a traditional healthcare entity.

12VAC35-115-80 (Confidentiality of Information for Human Services Providers): This Virginia Administrative Code section requires providers, like N V Rides, who serve individuals, especially those with disabilities including French, to maintain the confidentiality of any identifying information. Providers, like N V Rides, must document an individual's, including French's authorization to disclose this information, which was clearly not present in this scenario.

6-Failure to intervene: The failure of the person in charge, Selmetria Quarles, to intervene during the harassment of French, supports the argument that the program, N V Rides condones discriminatory behavior and failed to protect a disabled person, French, from discrimination. Suggesting a culture of indifference or tolerance for discriminatory behavior, reinforcing French's claim of discriminatory intent at managerial level.

Plus:

Applicable federal laws and rights

Since the service, N V Rides is federally funded and serves disabled individuals including French, several federal laws protect against this type of discrimination:

Americans with Disabilities Act (ADA), Title II: This law prohibits disability discrimination by state and local government entities. This includes public transportation services, regardless of federal funding.

Section 504 of the Rehabilitation Act of 1973: This law prohibits discrimination against people with disabilities, like French, in programs and activities that receive federal financial assistance.

Relevant evidence

Location as a pretense: While the denial of French's ride was claimed to be based on an invalid

location, the pattern of actions of N V Rides suggests the true reason was related to the French's status as a disabled rider who relies on the service. The N V Rides decision-making process—rejecting a legitimate location with false claims—is the challenged policy.

Causal link:  French argues that the N V Ride program's policy of using vague and unsubstantiated reasons to dismiss disabled riders has a discriminatory effect. The evidence, including the series of false statements and the improper handling of personal information of French's,  establishes a causal link between the N V Rides internal practices and the adverse impact on French.

Alternative actions: If the French can show that less discriminatory alternatives were available, such as verifying the location directly, but were not used, it can strengthen the disparate impact claim:

1- The day of the ride request by French- all that the Tony, the scheduler had to say was, they did not have enough drivers to cover my ride, or that there were not enough drivers to serve French any longer, instead,  Tony used gaslighting not to enter the ride. All Tony had to do was enter the ride, and everything else was not necessary for Tony to do.

2- If anyone in the N V rides program had talked to me, and asked me what had happened, they would have heard that the location had never been given, but they were not interested in this truth, only using discriminatory actions to get rid of French form the Program as any cost.

 3-The excessive extent that N V Rides went to without speaking to French at all, was very obviously discriminatory. This simple reason, which would have been simple to solve--instead this information that created an adverse event that created a series of multiple other discriminatory claims, which proves it was discriminatory and not an internal error, mistake, or any other valid reason.

4- That I have N V rides Many chances to change their response to French's issues, by filing complaints with multiple agencies which N V Rides would get disclosed to N V Rides, the IRS, the EEOC, and others, plus sent the case out N V Rides partners to open a dialog or one of the partners to say, "Hey, this isn't right'...And that N V Rides would receive statements of these complaints, and esp. the EEOC right to sue. That  N V Rides still chose to ignore all of them further showing the hiding of discriminatory actions against French, If they had nothing to hide, the normal response is to take care of the complaints, to address them and rectify them to protect the reputation of the program or issues in the program.  N V Rides did nothing.

*See Part-J  for State and other Laws on all claims.

****************

47

12-Retaliation

The N V Ride program's actions were a retaliatory response to French's protected activity of complaining about discrimination.

1. The protected activity

A protected activity is an action an individual takes to oppose discrimination or participate in an investigation.

French's complaint letter: You sent a letter to the program's partners detailing the wrongful dismissal, malicious gaslighting, and unauthorized speakerphone call. This letter constitutes a protected activity under the ADA and Section 504.

2. The program's adverse actions

Adverse actions are actions that would deter a reasonable person from engaging in protected activity. In French's case, the N V Ride program's actions after French's letter were a direct response to French's complaint and are clearly adverse.

Jeff and Elena's retaliatory phone call: Jeff called French after she sent her complaint. He placed French on speakerphone again without your consent and, along with Elena, made malicious and discriminatory remarks. This is a direct, adverse action intended to intimidate and harass French.

Elena's discriminatory statement: Elena's comment, "insinuating that French was not part of the population they serve," was a retaliatory act intended to discredit French's claim.

Barb's notarized false statement: Barb's submission of a notarized letter with false information to the board is another adverse action. It was a formal and malicious attempt to justify French's wrongful dismissal and conceal the program's illegal conduct.

The program's stonewalling: The N V Ride program's refusal to communicate with French, including Emily and Barb's silence, is a form of retaliation. It denied French access to due process and was intended to discourage French from pursuing her claim

3. Causal connection

To prove retaliation, French must show a causal connection between the protected activity and the adverse actions. The most common way to do this is through "temporal proximity," where the adverse action occurs shortly after the protected activity.

Timing: The retaliatory call from Jeff occurred after French sent her letter of complaint,

48

establishing a strong causal link.

<u>Escalation of harassment:</u> The malicious and harassing behavior of the staff, which included multiple people joining the calls without your consent, escalated after French's complaint. This pattern of escalating harassment shows that the program and its staff were acting in retaliation.

<u>Malicious intent:</u> The malicious and fraudulent nature of the program's actions, including the use of a false notarized letter, further reinforces the causal connection. The program went to great lengths to harm and dismiss French after she complained, which is strong evidence of a retaliatory motive.

Causal chain

The causal chain of retaliation unfolds as follows:

French engaged in a protected activity by complaining to the N V Ride program's partners.

The N V Rides program, through its staff, responded with a series of adverse actions, including a malicious phone call, discriminatory comments, and a fraudulent notarized letter.

The temporal proximity and the escalating nature of the harassment establish a causal link between French's complaint and the adverse actions.

The program's retaliation caused French harm, including emotional distress and the continuation of the wrongful dismissal.

By clearly laying out these causal links in your federal complaint, you can demonstrate that the N V Ride program's actions were not a legitimate response to French's complaint but a retaliatory scheme to punish French for exercising her legal rights.

*See Part-J  for State and other Laws on all claims.

****************

Part E F -  "But For" Causation- Amended Complaint

1- <u>Wrongful Dismissal</u>

**1. But for the discriminatory motive**

French's dismissal was not based on a valid reason but on the N V Ride program's discriminatory motive, which is shown by:

<u>Elena's discriminatory remark:</u> Elena's comment, "insinuating that French was not part of the population they serve," is direct evidence of a discriminatory attitude.

<u>Fabricated reason for dismissal:</u> The fact that the reason for French's dismissal was fabricated proves that her disability, not a legitimate eligibility issue, was the true cause.

<u>Malicious and fraudulent actions</u>: The staff's coordinated efforts to lie and deceive, including submitting a notarized letter with false information to the board, demonstrate a discriminatory intent

**2. But for the malicious conduct**

The staff's malicious conduct, which was approved by management, was a causal factor in French's wrongful dismissal.

<u>Gaslighting</u>: Tony's malicious gaslighting and creation of a fraudulent reason for the service cancellation directly led to French's dismissal.

<u>Unauthorized speakerphone calls</u>: Tony and Jeff's unauthorized and repeated use of the speakerphone was a form of harassment targeted at French as a disabled person.

<u>Fraudulent notarized letter</u>: Barb's and Selmetria's submission of a notarized letter with false information to the board was a malicious act designed to formalize French's wrongful dismissal and conceal the program's illegal conduct.

**3. But for the retaliatory intent**

The N V Ride program's retaliatory actions were a direct response to French's protected activity of complaining about discrimination.

<u>Adverse action after complaint:</u> The malicious phone call from Jeff and Elena occurred after

1

French filed your complaint, demonstrating a retaliatory motive.

Escalation of harassment: The harassment escalated after French's complaint, further reinforcing the retaliatory nature of the dismissal

2- Breach of Contract

In Virginia, a breach of contract claim requires proof of:

The existence of a valid contract. In French's case, this is an implied-in-fact contract based on French's enrollment and the program's service provision.

The N V Rides breach of the contract. The program's wrongful dismissal and malicious conduct constitute a material breach of its implied agreement to provide service in good faith.

Damages resulting from the breach. French must show that she suffered damages as a direct result of the breach.

"But for" causation for breach of contract

For French's breach of contract claim, French must prove that her damages would not have happened but for the program's breach of its implied agreement.

Breach of implied contract

"But for" the program's malicious and fraudulent actions, French would not have been wrongfully dismissed and suffered damages. The breach of the implied contract was the program's failure to provide service in good faith. The malicious conduct, such as fabricating a reason for dismissal and submitting a false notarized letter, directly breached this implied agreement.

Breach of common carrier duty

"But for" the program's gross negligence and malicious misconduct, French would not have been harmed. As a common carrier, the program had a heightened duty of care. The employees' outrageous conduct and the program's approval of it breached this duty.

Retaliation--ADA retaliation

"But for" French's protected activity of complaining to the N V Ride program's partners, the

2

retaliatory harassment would not have occurred.

Adverse action after complaint: The malicious phone call from Jeff and Elena occurred after French filed her complaint.

Escalation of harassment: The fact that the harassment escalated after French's complaint demonstrates a retaliatory motive.

3-Privacy Violations

But for causation for ADA privacy violations

Title II of the ADA requires public entities to protect the confidentiality of disability-related information. The program's violation of this duty directly caused you harm.

Violation: The N V Rides program, through its staff committed multiple privacy violations:

Tony's non-consensual speakerphone use during medical questioning.

Jeff's second non-consensual speakerphone use with Elena.

Unauthorized medical inquiries by Tony.

"But for" causation: But for these specific acts of violating your privacy, French would not have experienced:

Emotional distress: The stress, humiliation, and anxiety resulting from the privacy violations directly caused emotional harm.

Intimidation and harassment: The malicious and unauthorized disclosure of French's conversation was part of the program's broader retaliatory effort to harass and intimidate French

But for causation for Virginia state claims

French's claims under Virginia law also require proving a causal connection between the privacy violation and French's damages.

Unlawful interception of an oral communication

3

Virginia law provides a civil remedy for the unlawful interception of a communication.

<u>Violation:</u> Tony and Jeff placing French on speakerphone without consent so a third party could listen is an unlawful interception.

<u>"But for" causation:</u> But for these unlawful interceptions, French would not have:

Experienced the harm caused by the unauthorized disclosure.

Suffered the emotional distress caused by the violation of your privacy.


Intentional infliction of emotional distress (IIED)

The privacy violations contribute to the "outrageous and intolerable" conduct required for an IIED claim.

<u>Violation:</u> The privacy violations are a part of the overall malicious and retaliatory conduct.

<u>"But for" causation:</u> But for the program's privacy violations, the overall pattern of outrageous conduct would be different, and French would have experienced a different level of severe emotional distress. The privacy violations contribute significantly to the cumulative effect of the outrageous conduct.


4- Misuse of Federal Funds

1. The N V Ride program's false certifications caused the government's payments.

The False Claims Act (FCA) applies a "but for" standard to determine if the government's payment was the result of a false claim.

<u>False certification of compliance:</u> The program likely received federal funding based on certifications that it would comply with federal laws, including the ADA and other civil rights requirements. The program's malicious, discriminatory, and fraudulent behavior breached these certifications, making its claims for federal funding false.

<u>"But for" causation:</u> The government's payments would not have occurred but for the program's false certifications. The program fraudulently obtained and retained federal funding by misrepresenting its compliance with federal law and concealing its illegal activities.

4

2. The fraudulent notarized letter caused damage to the government.

The FCA also penalizes individuals and entities who use a false record to get a false claim paid.

False records and conspiracy: The notarized letter created by Selmetria, containing false statements and signed by Barb, is a false record used to conceal the program's fraudulent activities. The program's staff including Barb and Selmetria, conspired to use this false record to justify French's wrongful dismissal and mislead the oversight board.

"But for" causation: The government was harmed but for the fraudulent notarized letter. The letter was a material record used to conceal the program's illegal and fraudulent activities, which directly caused the government to continue funding a non-compliant program

3. The program's retaliatory acts were tied to the misuse of funds.

The FCA protects whistleblowers who report fraud against the federal government. The program's retaliatory actions were a response to French's complaint and are directly related to the fraudulent activities that constitute a misuse of federal funds.

Protected activity:  French's complaint to the program's partners was an attempt to report the program's misconduct, which can be viewed as an action taken in furtherance of a qui tam action under the FCA.

"But for" causation: The program's retaliatory harassment and intimidation would not have occurred but for French's protected activity of reporting the program's fraudulent activities. This retaliation is part of the overall malicious and fraudulent scheme, which is directly linked to the program's misuse of federal funds.

5-Proving Discrimination

1. Discriminatory treatment

"But for" French's  disability, the N V Ride program would not have subjected French to malicious and harassing behavior. The evidence of the malicious and discriminatory conduct includes:

Elena's and Jeff's discriminatory remarks: Thier comments shows a bias against French's

5

disabled status.

<u>Inappropriate medical questions</u>: Tony's questions demonstrate a focus on French's medical condition and perceived disability.

<u>Unauthorized speakerphone calls</u>: The unauthorized and repeated use of the speakerphone was a form of harassment targeted at French as a disabled person

## 2. Retaliatory motive

"But for" French's complaint about discrimination, the program's retaliatory actions would not have occurred. The evidence of retaliation includes:

<u>Adverse action after complaint</u>: The malicious phone call from Jeff and Elena occurred after French filed your complaint.

<u>Escalation of harassment</u>: The harassment escalated after French's complaint, demonstrating a retaliatory motive

## 3. Malicious and fraudulent actions

"But for" the N V Ride program's malicious and fraudulent intent, French would not have been subjected to less favorable treatment. The evidence of the malicious and fraudulent intent includes:

<u>Fabricated reason for dismissal</u>: The fact that the reason for French's dismissal was fabricated proves that her disability, not a legitimate eligibility issue, was the true cause.

<u>Notarized letter with false information:</u> The notarized letter is a fraudulent document used to cover up the program's malicious and discriminatory actions.

## 4. Systemic failure

"But for" the N V Ride program's systemic failure to properly train, supervise, and manage its employees, French would not have been subjected to less favorable treatment. The evidence of systemic failure includes:

<u>Condoning misconduct</u>: Barb's signature on the false letter and the program's overall stonewalling demonstrate that malicious conduct was not only tolerated but endorsed by

management.

Failure to follow due process: The program's failure to follow its own complaint procedures demonstrates a systemic failure to provide appropriate service to disabled individuals.

6- Negligent Supervision- Elements of in Virginia

While Virginia law has historically been hesitant to recognize a general, independent tort of negligent supervision, it does allow claims in specific circumstances. The elements generally require proving:

Duty of Care:  N V Rides had a duty to exercise reasonable care in supervising its staff, particularly since it serves a vulnerable population of disabled and senior individuals.

Breach of Duty:  N V Rides breached this duty by failing to properly supervise its staff.

Foreseeable Harm: N V Rides knew or should have known that the staff's misconduct was likely to cause harm.

Causation: N V Rides breach of duty was the actual and proximate cause of the plaintiff's injuries.

Damages: French suffered damages as a result of the employer's negligence

"But for" causation for negligent supervision

1. Failure to supervise and control employees

"But for" the N V Ride program's failure to supervise and control its staff French would not have been subjected to the malicious and fraudulent acts of Tony, Jeff, Elena, Emily, Selmetria, and Barb. The program's breach of its duty was demonstrated by:

Awareness of misconduct: The "person in charge" Selmetria, who listened to the unauthorized speakerphone call from Tony was aware of Tony's malicious and inappropriate behavior. By failing to intervene, this manager condoned the behavior and demonstrated a failure to supervise.

Approval of deceit: A management-level employee, Barb, signed a notarized letter containing false information to present to the board. This action demonstrates that the program, through

7

its management, approved and ratified the malicious and fraudulent conduct of its staff

<u>Systemic failure:</u> The pattern of malicious and harassing conduct by multiple employees (Tony, Jeff, Elena, Selmetria, Emily, and Barb), along with the subsequent stonewalling of communication, reveals a systemic failure of supervision and management within the program.

## 2. Foreseeable harm to the rider

"But for" the program's negligence, the foreseeable harm French suffered would not have occurred. The program's clients are a vulnerable population, and the program should have foreseen that its staff malicious and fraudulent conduct would cause harm. The program's knowledge of the initial misconduct, as demonstrated by the "person in charge" , Selmetria, who listened in, created a known risk of further harm to French.

## 3. Causation of damages

"But for" the program's negligent supervision, French would not have suffered damages. The program's failure to supervise and control its staff led to French's wrongful dismissal from the program, emotional distress, and continued harassment.

## 4. Punitive damages

But for" the program's willful and wanton disregard for French's rights, French would not be able to seek punitive damages. The program's gross negligence and willful and wanton disregard for French's rights, as demonstrated by the approval and ratification of its employees' malicious and fraudulent conduct, can lead to punitive damages

## 7-<u>Less favorable servcies (to a disabled person)</u>

### 1. Discriminatory treatment

"But for" French's disability, the program would not have subjected you to malicious and harassing behavior. The evidence of the malicious and discriminatory conduct includes:

<u>Elena's and Jeff's discriminatory remark</u>: Their comments shows a bias against French's disabled status.

<u>Inappropriate medical questions:</u> Tony's questions demonstrate a focus on your medical

8

condition and perceived disability.

<u>Unauthorized speakerphone calls:</u> The unauthorized and repeated use of the speakerphone was a form of harassment targeted at French as a disabled person

## 2. Retaliatory motive

"But for" French's complaint about discrimination, the program's retaliatory actions would not have occurred. The evidence of retaliation includes:

<u>Adverse action after complaint:</u> The malicious phone call from Jeff and Elena occurred after French filed your complaint.

<u>Escalation of harassment:</u> The harassment escalated after French's complaint, demonstrating a retaliatory motive

## 3. Malicious and fraudulent actions

"But for" the program's malicious and fraudulent intent, French would not have been subjected to less favorable treatment. The evidence of the malicious and fraudulent intent includes:

<u>Fabricated reason for dismissal</u>: The fact that the reason for French's dismissal was fabricated proves that French's disability, not a legitimate eligibility issue, was the true cause.

<u>Notarized letter with false information</u>: The notarized letter is a fraudulent document used to cover up the program's malicious and discriminatory actions.

## 4. Systemic failure

"But for" the N V Ride program's systemic failure to properly train, supervise, and manage its employees, French would not have been subjected to less favorable treatment. The evidence of systemic failure includes:

<u>Condoning misconduct</u>: Selmetria's creation of, and Barb's signature on the false letter and the program's overall stonewalling demonstrate that malicious conduct was not only tolerated but endorsed by management.

<u>Failure to follow due process</u>: The program's failure to follow its own complaint procedures demonstrates a systemic failure to provide appropriate service to disabled French.

8- providing appropriate service (inappropriate)

1. Discriminatory treatment

"But for" French's disability, the N V Rides program would not have subjected French to malicious and harassing behavior and an inappropriate service. The evidence includes:

Elena's discriminatory remark: Her comment shows a bias against French's disabled status.

Inappropriate medical questions: Tony's questions were an inappropriate and intrusive part of the service.

Unauthorized speakerphone calls: The unauthorized and repeated use of the speakerphone was a form of harassment targeted at French as a disabled person.

2. Retaliatory motive

"But for" French's complaint about discrimination, the program's retaliatory actions would not have occurred. The evidence of retaliation includes:

Adverse action after complaint: The malicious phone call from Jeff and Elena occurred after Fench filed her complaint.

Escalation of harassment: The harassment escalated after French's complaint, demonstrating a retaliatory motive.

3. Malicious and fraudulent actions

"But for" the program's malicious and fraudulent intent, French would not have been provided with an inappropriate service. The evidence of the malicious and fraudulent intent includes:

Fabricated reason for dismissal: The fact that the reason for French's dismissal was fabricated proves that French's disability, not a legitimate eligibility issue, was the true cause.

Notarized letter with false information: The notarized letter is a fraudulent document used to cover up the program's malicious and discriminatory actions.

10

4. Systemic failure

"But for" the program's systemic failure to properly train, supervise, and manage its staff , French would not have been provided with an inappropriate service. The evidence of systemic failure includes:

Condoning misconduct: Barb's signature on the false letter and the program's overall stonewalling demonstrate that malicious conduct was not only tolerated but endorsed by management.

Failure to follow due process: The program's failure to follow its own complaint procedures demonstrates a systemic failure to provide appropriate service to disabled Individuals, including French

9- Proving discrimination

1. Discriminatory treatment

"But for" French's disability, the program would not have subjected French to malicious and harassing behavior and wrongful dismissal. The evidence includes:

Elena's discriminatory remark: Her comment, insinuating French was "not part of the population they serve," shows a bias against French's disabled status.

Inappropriate medical questions: Tony's questions demonstrate a focus on French's medical condition and perceived disability.

Unauthorized speakerphone calls: The unauthorized and repeated use of the speakerphone was a form of harassment targeted at French as a disabled person.

2. Malicious and fraudulent actions

"But for" the program's malicious and fraudulent intent, French would not have been subjected to less favorable treatment and dismissed. The evidence of the malicious and fraudulent intent includes:

Fabricated reason for dismissal: The fact that the reason for French's dismissal was fabricated proves that French's disability, not a legitimate eligibility issue, was the true cause.

Notarized letter with false information: The notarized letter is a fraudulent document used to

cover up the program's malicious and discriminatory actions

### 3. Systemic failure

"But for" the program's systemic failure to properly train, supervise, and manage its staff, French would not have been subjected to discrimination. The evidence of systemic failure includes:

Condoning misconduct: Selmetria's creation of, and Barb's signature on the false letter and the program's overall stonewalling demonstrate that malicious conduct was not only tolerated but endorsed by management.

Failure to follow due process: The program's failure to follow its own complaint procedures demonstrates a systemic failure to provide appropriate service to disabled individuals, including French

### *10-Notarized False Statement

The notarized false statement is not a standalone legal claim for which French would prove "but for" causation directly, as if it were an independent tort. Instead, it is a crucial act of fraudulent misrepresentation that serves as powerful evidence to establish the "but for" causation for several of French's other claims, particularly fraudulent misrepresentation, wrongful dismissal, conspiracy, and retaliation.

Here is how the notarized false statement provides "but for" causation for these specific claims.

But for causation for fraudulent misrepresentation

For your claim of fraudulent misrepresentation, you must prove that the program's fraudulent actions caused you harm.

False Representation: The notarized letter, signed by Barb, is a false representation of a material fact (the reason for your dismissal) made to the board.

"But for" Causation: But for the fraudulent notarized letter, the board would not have been misled, and the program's fraudulent actions would not have been concealed. The board's failure to intervene and address the issue was proximately caused by Barb's fraudulent representation, which in turn caused you harm.

But for causation for wrongful dismissal

The notarized false statement was created to justify your wrongful dismissal.

Adverse Action and Pretext: The submission of the false letter to the board is a direct, adverse action that furthered the wrongful termination. The fabricated content of the letter serves as pretext, or a false reason, for the dismissal.

"But for" Causation: But for the program's use of a fraudulent notarized letter, the wrongful dismissal would not have been formalized and presented to the board as a legitimate action.

But for causation for civil conspiracy

The notarized false statement is crucial evidence of a civil conspiracy among the employees.

Concerted Action: Barb's signature on the false notarized letter, containing fraudulent information, shows that multiple employees acted together to defraud the board and harm you.

"But for" Causation: But for the notarized false statement and the other overt acts of the conspiracy, you would not have been subjected to the fraudulent misrepresentation and wrongful dismissal.

But for causation for retaliation

The notarized false statement was a retaliatory act in response to your protected activity of complaining about discrimination.

Adverse Action: The submission of a notarized letter with false information to the board is another adverse action. It was a formal and malicious attempt to justify your wrongful dismissal and conceal the program's illegal conduct.

"But for" Causation: But for your complaint about discrimination, the program would not have retaliated with a fraudulent notarized letter to the board.

11-11-Intentional discrimination

## 1. Discriminatory treatment

"But for" French's disability, the program would not have subjected French to malicious and harassing behavior and wrongful dismissal. The evidence includes:

<u>Elena's discriminatory remark:</u> Her comment, insinuating you were "not part of the population they serve," shows a bias against French's disabled status.

<u>Inappropriate medical questions:</u> Tony's intrusive questions were an inappropriate part of the service and demonstrated a focus on French's medical condition and perceived disability.

<u>Unauthorized speakerphone calls:</u> The unauthorized and repeated use of the speakerphone was a form of harassment targeted at French as a disabled person.

## 2. Malicious and fraudulent actions

But for" the program's malicious and fraudulent intent, French would not have been subjected to less favorable treatment and dismissed. The evidence of the malicious and fraudulent intent includes:

<u>Fabricated reason for dismissal:</u> The fact that the reason for French's dismissal was fabricated proves that French's disability, not a legitimate eligibility issue, was the true cause.

<u>Notarized letter with false information:</u> The notarized letter is a fraudulent document used to cover up the program's malicious and discriminatory actions.

## 3. Systemic failure

"But for" the program's systemic failure to properly train, supervise, and manage its Staff, French would not have been subjected to discrimination. The evidence of systemic failure includes:

<u>Condoning misconduct:</u> Selmetria's creation of and Barb's signature on the false letter and the program's overall stonewalling demonstrate that malicious conduct was not only tolerated but endorsed by management.

<u>Failure to follow due process:</u> The program's failure to follow its own complaint procedures demonstrates a systemic failure to provide appropriate service to disabled individuals.

11-Conspiracy

1. Concerted action to accomplish an unlawful purpose

The existence of a conspiracy is demonstrated by the coordinated and concerted actions of multiple staff to achieve an unlawful purpose: the discriminatory and wrongful termination of French.

Malicious gaslighting: Tony initiates the wrongful termination by fabricating a reason for cancellation and maliciously gaslighting French.

Manager's tacit approval: A person in charge, Selmetria, by listening to the unauthorized speakerphone call and failing to intervene, condones Tony's actions and becomes a tacit conspirator.

Retaliatory harassment: Jeff and Elena's retaliatory phone call, where they place French on speakerphone without consent and make discriminatory remarks, furthers the conspiracy.

Fraudulent notarization: Selmetria's creation of,  and Barb's act of signing a notarized letter containing false information to present to the board is a key overt act of the conspiracy, formalizing the fraudulent dismissal.

Program's stonewalling: The program's continued refusal to communicate with French, including through Emily, is a concerted effort to conceal the malicious and discriminatory acts.


2. Overt acts of the conspiracy

An overt act is an outward act done in pursuance of the conspiracy.

"But for" these overt acts, French would not have suffered damages. The notarized false statement, the unauthorized speakerphone calls, and the stonewalling all caused French harm.


3. Damages resulting from the conspiracy

French suffered damages as a result of the staff's concerted actions in pursuance of the conspiracy.

Wrongful dismissal: The conspiracy directly caused French wrongful dismissal from the program.

Emotional distress: The malicious and retaliatory acts of the conspirators caused French severe

15

emotional distress.

Legal costs: The conspiracy forced French to seek legal recourse and incur attorney's fees.


The causal chain

The causal chain of the conspiracy unfolds as follows:

Tony's initial act of malicious gaslighting.

The conspiracy is formed implicitly when the person in charge, Selmetria, fails to stop Tony's malicious behavior and when Slemetria creates the letter, and Barb joins by signing the false notarized letter.

The conspiracy is executed through subsequent overt acts by Jeff, Elena, Selmetria, and Barb.

French suffers damages as a result of these concerted and malicious actions.

This provides a strong basis for a civil conspiracy claim in Virginia and can be used to hold all individuals involved, and the program itself, liable for damages


12- Retaliation

1. Protected activity

A protected activity is an action an individual takes to oppose discrimination or participate in an investigation. In French's case, this is:

French's complaint letter: French sent a letter to the program's partners detailing the wrongful dismissal, malicious gaslighting, and unauthorized speakerphone call. This constitutes a protected activity under the ADA and Section 504.


2. Adverse actions and but for causation

The adverse actions are the program's actions that would deter a reasonable person from engaging in protected activity. In French's case, these actions were a direct response to her complaint and would not have occurred but for French's protected activity.

Malicious phone call: After you sent your complaint, Jeff called you, placed you on

16

speakerphone without consent, and, along with Elena, made malicious and discriminatory
remarks.

Elena's discriminatory statement: Elena's comment was a retaliatory act intended to discredit
French's claim.

Barb's notarized false statement: Selmetria's creation of and Barb's submission of a notarized
letter with false information to the board was a formal and malicious attempt to justify French's
wrongful dismissal and conceal the program's illegal conduct.

The program's stonewalling: The program's refusal to communicate with French, including
through Emily and Barb's silence, is a form of retaliation. It denied French access to due process
and was intended to discourage French from pursuing her claim

3. Causal connection

The causal connection is often shown by demonstrating that the adverse action occurred
shortly after the protected activity.

Timing: The retaliatory call from Jeff occurred after French sent her complaint, establishing a
strong causal link.

Escalation of harassment: The malicious and harassing behavior of the employees escalated
after French's complaint. This pattern shows that the program and its staff were acting in
retaliation.

Malicious intent: The malicious and fraudulent nature of the program's actions, including the
use of a false notarized letter, further reinforces the causal connection. The program went to
great lengths to harm and dismiss French after French complained, which is strong evidence of
a retaliatory motive

Causal chain

The causal chain of retaliation unfolds as follows:

French engaged in a protected activity by complaining to the program's partners.

The program, through its staff, responded with a series of adverse actions, including a malicious
phone call, discriminatory comments, and a fraudulent notarized letter.

The temporal proximity and the escalating nature of the harassment establish a causal link

17

between French complaint and the adverse actions.

The program's retaliation caused French harm, including emotional distress and the continuation of the wrongful dismissal.

By clearly laying out these causal links in French's federal complaint, French demonstrates that the program's actions were not a legitimate response to her complaint but a retaliatory scheme to punish her for exercising your legal rights.

Amended-Part F- Plausibility-Factual evidence-the core requirement of pleading a plausible claim.

(A plaintiff who demonstrates plausibility, factual evidence, and causal links between claims will generally satisfy the pleading standard.)

French's claim against the federally funded transit program N V Rides, does have plausibility under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. The alleged actions—discriminatory dismissal based on a false pretext, invasion of medical privacy, and retaliation—form a strong basis for a civil rights complaint.

N V Rides Is liable for their actions against French due to the factual proof she has against their behavior.

The standard of plausibility, established by the Supreme Court cases Twombly and Iqbal, requires more than simply reciting the elements of a claim. French's complaint must contain enough factual detail to show that the claims are a reasonable likelihood, not just a possibility. This is done by linking specific facts—such as times, dates, and what was said or done—to each legal claim.

In Part N, French established a time line with factual proof of the adverse event and the multiple claims that cascaded down from this one. Most can be separate claim that stand on their own strength, or are all part of a series of adverse events, one leading to the next.

_____

1-Wrongful dismissal from a federally funded program

NV Rides funding comes from a variety of sources, including grants from the Federal Transit Administration (FTA), Metropolitan Washington Council of Governments (MWCOG), and Fairfax County, along with other grants from organizations like the Potomac Health Foundation for its partner programs. This funding is used to support volunteer driving networks for seniors and adults with disabilities by covering operational costs such as driver background checks, software licensing, and training.

This claim depends on French's dismissal violating federal law. Unlike a typical wrongful termination/dismissal in at-will employmeny, termination from a federally funded program must be for a legally improper reason. :

Plausibility: French must show that a protected characteristic, such as her disability, and reporting wrongdoing, motivated your removal.

Proof: Specific evidence could include records showing that the stated reason for French's dismissal (e.g., poor performance) is untrue and that decision-makers were aware of her

1

protected status or activity.

The stated reason of location for French's dismissal is a false location, and this is proven and stated in writing several time by Slemetria, by letter and text to French, and supported by everyone in the Program, either by stating it, writing it, or keeping silent. It is also proven based on French's receipts in (Exhibit C), where the location of the ride request that she tried to make for Sept.3, 2024, was, and also that it was a covered area then and now. This proves the fact that this is an invalid reason for the adverse event and of French's dismissal, and that the program went to excessive lengths to prove it's true, proves that the actual reason is a discriminatory one against French Personally. That it was a pre-text and hidden reason, since the false one was invalid, unbelievable, the punishment was too harsh for the dismissal, and it was a covered area.  And the fact that the ride must meet the prescription's location, the prescription cannot meet the rides location.

 See Exhibit A-B-C Email-text stating false reason for dismissal & receipts proving the actual location.

The Staff at N V Rides were aware of French's disability since Barbara Gatorian asked French questions when she was considering allowing rides to the pharmacies. She needed to know why French needed to go so far to get her prescriptions, which involved talking about French's rare genetic disease and the medications needed, and the nationwide shortage of them. Causing French to track down her medications every month and the location changing each month depending on the stock and inventory. Also that when anyone applies to the N V Rides program questions are asked about your mobility and ability to get in and out  of the vehicle, your ability to walk, how far etc.. At which time French's disability was discussed in order to prove French's abilities and if they met the guidelines. French spoke openly about her rare genetic disease, symptoms, and other conditions that prevented her from doing many things and affected her functioning. None of which precluded her from the program. That the drivers were limited on what they are allowed to do to help riders for insurance and other reasons. It was also discussed with some of the drivers.

_____

## 2-Breach of contract

Even if no money was exchanged for the service, a valid contract still exist.

Plausibility: French must show that there was a contract (or an enforceable agreement) that obligated the program to provide her with service and that the program failed to fulfill its promise.

Proof: Examples of evidence include the program's official documents, such as a brochure or service agreement outlining its terms and your eligibility. French's records of previously

2

receiving the service can also help establish the existence of an agreement.

Mutual assent--services offered for a promise,

Services offered and accepted

Capacity-All parties entering the contract must have the legal capacity to do so.

Legality The purpose and subject matter of the contract must be legal and not violate any laws or public policy.

Certainty of terms: met

Free consent

--All of these were met in the contract between French and N V Rides, If they had not been met, French would not have been accepted into the program. French received service from the N V Rides program from Oct. 31, 2023 till the dismissal event,  and there were never any complaints against her as stated by Tony in --Exhibit D- email

See Exhibit K- - N V Rides Guideleines

_____

3-Privacy Violations (speakerphone conversation)

The legality of recording or sharing a speakerphone conversation. In Virginia, where Burke/Springfield is located, all parties must consent to the recording of a conversation/ or listening to on speakerphone. French did not consent or know.

Plausibility: French must allege that the person who overheard the conversation on speakerphone was not a party to the conversation and that this unauthorized eavesdropping was the cause of her dismissal.

--French states that Selmetria plainly said- I have been listening to your conversation on the speakerphone-- and was not part of the conversation until that time.

--French states that Jeff plainly said-- Elena has been listening to our conversation on the speakerphone... and she had not been part of it until that time. Elena Alergant listened as a third party, up until Jeff said she had been listening.

Proof: Evidence could include records of the communication, witness statements, and documentation showing how the contents of the conversation were used to justify French's dismissal.

3

French has a Log of calls on French's cell phone. Date, time. Listed in Part H .

Jeff called on Dec 23, 2024, at the call was 35 minute, and 20-25 minutes of that call French was on speakerphone without knowledge of it.

Contents of the conversation-- Jeff Told French that she "Should Just Move On", and Elena, she insinuated that French was not part of the population that N V Rides serves.

_____

4-Misuse of federal funding

If the N V Ride program's actions—such as denying rides to eligible participants or dismissing a client for wrongful reasons—are not in line with the purpose of the federal grant, it can constitute misuse of funds.

Plausibility: French shows that N V Rides program's policies or actions diverted funds from their intended purpose of serving disabled and senior individuals.

-- NV Rides, which receives federal funding, dismissed a disabled rider, French, for a false reason, which constitutes wrongful dismissal and is proven by factual hardcopy evidence, and the underlying reason violates anti-discrimination or other employment laws. That N V Rides used a false reason for French's dismissal and it was used to hide a discriminatory motive against a disabled French, this is illegal under federal law.

Proof: This often requires a formal whistleblower complaint to an inspector general or relevant oversight office. Evidence would include internal program policies, records of fund usage, and accounts of inappropriate denials of service.

French made multiple complaints, see Exhibit E, and the last resort was French's Formal complaint to the EEOC, among other agencies that issued French her right to Sue.

See Exhibit E- complaints

-French has presented the receipts from Sept. 3, 2024, of the unheard ride location request from her picked up medications. That N V Rides did not allow French to state the location of the ride, that the reason for the dismissal of French from the program was based on a false location of Manassas, and that the location French had to go to on Sept, 3, 2024, was not Manassas. Proven by the receipts in Exhibit C.

_____

5- Services denied to a disabled person-

1-Rider meets the plausibility pleading standard for a denied service claim under the ADA by

4

alleging specific facts that, when viewed together, create a reasonable inference that the
defendant's actions were discriminatory.

Fabricated reason for termination: Tony's initial gaslighting and fabricating a reason for the ride
cancellation, and the program's subsequent use of a fraudulent notarized letter to formalize the
dismissal, is powerful evidence. The fraudulent justification makes it plausible that the dismissal
was not for a legitimate reason but for a discriminatory one.

Discriminatory remarks: Elena's comment, insinuating French was "not part of the population
they serve," is a direct statement revealing a discriminatory attitude. This direct evidence of
bias strengthens the plausibility that the denial of service was based on French's disability.

Inappropriate inquiries and actions: Tony's inappropriate medical questions and the non-
consensual speakerphone usage created a hostile environment. This supports a plausible
inference that the program's actions were motivated by discriminatory animus rather than a
legitimate service concern.

Lack of due process: The program's refusal to respond to French's complaints and address her
appeal undermines any claim that the dismissal was for a legitimate reason. Legitimate denials
are typically supported by a fair process and written reasons, as required by ADA regulations.
The absence of due process makes a discriminatory motive more plausible.

2- Harm was caused by the denial of service

Loss of transportation: The denial of service resulted in the loss of a necessary transportation
service, causing French harm.

Emotional distress: The malicious, harassing, and retaliatory conduct surrounding the denial of
service caused significant emotional distress

_____

6- Negligent supervision

French's claim alleges that the N V Ride organization's managers failed to properly
supervise/train their staff, leading to the harmful actions of French.

Plausibility:  French allege that the supervisor's failure to oversee their staff was a direct cause
of her wrongful dismissal and other injuries. This requires showing that the manager knew or
should have known about the staff misconduct.

Proof: - demonstrate a pattern of neglect.

-If the person in charge, Selmetria, had the proper training, and would have known the law was
being broken by Tony's actions, she would have intervened and had Tony just enter French's

5

ride, instead of gaslighting her. Also that Tony should have requested French's consent, or at
the very least, knowledge that French was on a speakerphone and it would have been French's
choice to continue or not. Instead, Selmetria sat and listened to French, while French was on
the speakerphone with no knowledge that anyone could or was listening. French assumed it she
was in a private conversation between herself and Tony. If French had known she was on a
speakerphone, she would have never talked about her personal medical information and would
have hung up the phone. Esp. considering the danger it put French in due to the nationwide
shortage of said medications. ( See Exhibit A - Amended

_____

7- Provided less favorable services to disabled

These claims fall under the Americans with Disabilities Act (ADA) and Section 504 of the
Rehabilitation Act, both of which apply to federally funded programs like N V Rides.

Plausibility: French must show that she was denied a service or treated less favorably because
of her disability. For example, if French was denied a ride that was available to non-disabled
seniors.

Proof: Document instances where service was denied or of a lesser quality than what is typically
provided, such as longer wait times or refusals for specific types of assistance

-An invalid reason for dismissing French from a ride service program, N V Rides that is in
contrast to services provided for a non-disabled person, demonstrates a pattern of "less
favorable services" to French, a classic indicator of discrimination. The dismissal of French and
the privacy violations of French occurred because of French's status as disabled, strengthening
her case for disability discrimination.

-Failure to provide equal opportunity: -Both the ADA and Section 504 require that people with
disabilities including French, have an equal opportunity to benefit from a programs' services.
Denying service to French, based on a discriminatory reason like location, when it's not a
legitimate requirement, violates this principle

_____

8-Not providing appropriate service to a disabled person

Similar to the denial of service, this claim centers on the failure to provide a reasonable
accommodation under the ADA for French.

Plausibility: French must specify what service was denied her, and how that denial was a result
of her disability.

6

Proof: Documentation of French specific requests and the program's refusal.

The core violation is the discriminatory provision of service to the disabled French, by dismissing French, using an invalid reason(location) , proven invalid, and providing inadequate support to French, the entity N V Rides failed to provide "appropriate service" as required by the ADA and The Rehabilitation Act-section 504, to French.

This scenario breaks the requirement for appropriate and non-discriminatory services by the public entity, N V Rides, and involves wrongful dismissal of French and interference with disability rights of French.

French's Health issues make it impossible for her to get to Doctor appointments, or get other health needs necessary for her maintaining life and wellbeing, without a ride service to help her, since she has no car. Even with a car, French's ability to function at times makes it extremely dangerous to operate an automobile, when her functioning physically and mentally is limited.

_____

9 -Proving discrimination  See (Exhibit A & B)

The various events and actions taken against French are not isolated errors, but as parts of a pattern of discriminatory conduct by N V Rides and staff and Evidence of discrimination

French established a legal claim based on the described events, proving discrimination as a core component, especially given the involvement of a federally funded program, N V Rides and a disabled person, French.

French must connect the actions—the improper ride refusal and the subsequent dismissal—to the protected status of disability. French can also pursue multiple, simultaneous claims, as outlined below, with plausibility being a standard to meet at the early stage of a lawsuit.

French's complaint presents sufficient factual matter to suggest that the claim is more than a mere possibility and rises above a speculative level. The Letter, The Phone text, the receipts of location.

1- French is a disabled person- ( See Exhibit 10a )-Proof

2- French is otherwise qualified- French was and is still eligible for the N V Rides program and its requirements ( See Exhibit K- guidleines

3- French was subject to discrimination; - Throughout this claim French has shown multiple actions against her that are discriminatory. All of these actions against French, beginning with the adverse action of the wrongful dismissal, and each claim, one after another, all Break ADA

7

and State/other laws and are all morally/ethically wrong. The fact that the adverse action never had to take place, all the N V Rides service had to do was say they did not have a driver for that day, or they needed to release some of the riders as they did not have enough drivers to cover them. Instead they created a long series of discriminatory actions against French --personally. Targeting her with each and every action. Intentionally blocking her due process, going against their own policies. Taking excessive actions and extremely harsh discipline against French for an unbelievable reason of location. The punishment does not equal the harshness of a dismissal from the program.

Most of the multiple claims, that cascade down directly from the adverse event of French's dismissal, are strong claims, able stand on their own as separate and strong claims, based on the ADA and the 504 Act, or as strong supporting claims- Torts- State Law etc.

The failure of Tony, the scheduler to enter the ride, and his failure to allow French to tell him the location of the ride, his gaslighting to manipulate , the wrongful dismissal and denial of service , the repeated nonconsensual speakerphone conversations that broke privacy laws, the negligent supervision, the misuse of federal funds, the less favorable services provided to a disabled French, the denial of service to a disabled French, the multiple actions and behaviors of discrimination towards French, the intent, the illegal notarization of false statements, the phone text message and Letter taken before the board without French's presence denying her due process, the hostile and bullying language in the text and the Letter, using the Letter and text message to manipulate French into believing that it was her fault, the receipts that French has proving that on Sept. 3, 2024, her ride was to a covered area, the retaliatory behaviors after the adverse action that took place including the call from Jeff and Elena,

_____

10-Notorizing a false statement, false reason for location

The act of Selmetria creating the the Letter, Barb Signing it, and taking it be fore the board, stating the false reason for French's dismissal was a failure to give French a chance to defend herself and blocked her due process rights. French did not even know that this action had been taken, until Selmetria sent her the letter. The notarization of a false statement by a notary is also illegal and puts the notary at danger of losing her position at the very least. Selmetria actions were reckless and illegal, and shows the extreme lengths that she was willingly to go to, to make sure disabled French was dismissed from the program at any cost.

Again, this action did not fit the punishment of French, would never do anything wrong, since these rides were so important to her welfare. ( See Exhibit D- Tony's email)--That the invalid reason has been proven and this shows that the actual reason was discriminatory against French, whether intentional or not, it is still discrimination. Denying French the service and dismissing her on false pretense, blocking her from any kind of resolution. Blocking her

8

communication, and manipulating her into thinking she was at fault in an aggressive, bullying manner as seen in the text and the letter language. And later, on the call with Jeff and later Elena, both, together, against French, continuing to discriminate against her with the speakerphone and the retaliatory comments. When all French was trying to do was give them a chance to solve this issue which they clearly had no desire to do so.

French gave N V Rides multiple opportunities through multiple complaints, and the EEOC final one, since they refused to speak to her, to change their stance and they refused. The discrimination continued into that last call. Now, French would never be a part of this program ever again. The level of deception, and betrayal, and distrust is too high. The only way that would happen if the leadership is changed and the proper training is provided. French knows that due to their total disregard for her, the laws, that there needs to be a monetary impact for any change to happen. Otherwise nothing in this program will change, since Selmetria clearly stated they can make up their own rules. That everyone in this program feels this way, since no one seemed to feel that any of these actions were wrong, unethical, and immoral and they broke laws. A notarized false statement cannot stand up in court. Not to mention that Selmetia wrote the letter that was signed by Barbara Gatorian. The language is to similar to the text.

The facts and proof that French has provided, that proves the reason for dismissal to be false, and that the other actions are proven as well by the Letter, phone texts, and other Exhibits .

---

11-11- Intentional discrimination

The plausibility standard, established by the Supreme Court in Twombly and Iqbal, requires you to allege specific facts that allow the court to draw a reasonable inference that discrimination occurred.

Acknowledge eligibility: . The enrollment itself establishes you as a qualified individual with a disability. ( See Exhibit- K- guidelines

Attach proof of disability: Attach your Social Security benefits paperwork as evidence of your disability. The SSA's findings, based on a review of medical evidence, make your disability claim highly plausible. ( See Exhibit- 10a

Inference of knowledge: The program's knowledge of your disability can be inferred from the nature of the service, the enrollment process, and the staff's malicious and fraudulent conduct. As stated above, in order to be accepted, N V Rides had to know your health issues and if you met the criteria as that drivers were not permitted to do certain activites like mobility and handling wheel chairs.  French spoke freely about her disability and health issues then and also with Barb when she gave permission to go to the far away pharmacies.

9

2. Demonstrate discriminatory motive

Fabricated reason for termination: Tony's initial gaslighting and fabricating a reason for the ride cancellation, the program's subsequent use of a fraudulent notarized letter to formalize the dismissal, are powerful evidence of a discriminatory motive. The fraudulent justification makes it plausible that the dismissal was not for a legitimate reason but for a discriminatory one.

Discriminatory remarks: Elena's comment, insinuating French was "not part of the population they serve," is a direct statement revealing a discriminatory attitude. This direct evidence of bias strengthens the plausibility that the denial of service was based on French's disability.

Inappropriate inquiries and actions: Tony's inappropriate medical questions and the non-consensual speakerphone usage created a hostile environment. This supports a plausible inference that the program's actions were motivated by discriminatory animus rather than a legitimate service concern.

Malicious intent: The program's malicious and fraudulent actions, including submitting a notarized letter with false information to the board, provide strong evidence of intentional discrimination

3. Connect the discriminatory motive to the adverse action

Wrongful dismissal: The fraudulent justification and discriminatory remarks are directly connected to French's wrongful dismissal from the program.

Pattern of harassment: The pattern of malicious and harassing behavior by multiple employees, including the unauthorized speakerphone calls and stonewalling, suggests that the program's actions were intentionally discriminatory.

4. Show harm caused by the discrimination

Loss of transportation: The discrimination resulted in the loss of a necessary transportation service, causing French harm.

Emotional distress: The malicious, harassing, and retaliatory conduct surrounding the denial of service caused significant emotional distress

---

11- Conspiracy

French establishes plausibility for a civil conspiracy claim, based on Virginia's common law, which focuses on the malicious and fraudulent actions of the staff

1. Show a plausible agreement or concerted action

Unlike a standard business dispute, French's facts show multiple staff acting in concert, which creates a plausible inference of a conspiracy.

Initial Malice and Condoning: Tony's initial gaslighting and unauthorized use of a speakerphone occurred while a person in charge, Selmetria, listened and did nothing to intervene. This tacit approval demonstrates a plausible agreement among the staff to disregard French's rights.

Retaliatory Harassment: Jeff and Elena's retaliatory phone call, with Elena silently listening, was a concerted action aimed at intimidating and harassing French. It was not an isolated incident by a single employee but a coordinated effort.

Fraudulent Endorsement: Selmetria created and Barb, a management-level employee, signed a notarized letter containing false information to present to the board. Barb's signature is a tangible piece of evidence showing that management, in concert with the other staff, intentionally acted to formalize and conceal the fraudulent and malicious conduct.

2. Demonstrate the conspiracy's unlawful purpose

The common law conspiracy claim in Virginia requires that the agreement was for an unlawful purpose or for a lawful purpose by unlawful means. French's allegations support both.

Unlawful Purpose: The purpose was to maliciously injure a disabled individual, French, by wrongfully terminating service and engaging in harassing and intimidating behavior.

Unlawful Means: The conspiracy was carried out through unlawful means, including:

Intentional Infliction of Emotional Distress (IIED): Staff's coordinated and outrageous harassment.

Fraudulent Misrepresentation: The creation and use of the false notarized letter.

Privacy Violations: The unauthorized speakerphone calls

3. Establish resulting damage

The core of a conspiracy claim is the damage caused by the overt acts. French's allegations directly link the conspiracy's acts to her harm.

Wrongful Dismissal: The notarized letter, an overt act of the conspiracy, formalized French's wrongful dismissal.

Emotional Distress: The concerted harassment, gaslighting, and betrayal by Barb caused French significant emotional distress.

11

<u>Retaliatory Harm</u>: The retaliatory phone call and stonewalling caused further harm after French complained.

4. Overcome the "intracorporate immunity" doctrine

While this doctrine generally protects a corporation from conspiring with its own employees, French's complaint alleges that the staff acted outside the scope of their duties for malicious and independent motives. The fraudulent and malicious nature of the staffs' acts, especially Selmetria and Barb's participation in the notarized letter, makes it plausible that they were not acting in the program's legitimate interests.

_____

12- <u>Retaliation</u>:

  A claim is plausible if the factual content "allows the court to draw the reasonable inference that the defendant is liable," not merely possible"

<u>Plausibility</u>: French establishes a "causal connection" between a protected activity French engaged in (like complaining about a denied ride) and an adverse action taken against French (like being dismissed).

<u>Proof:</u> Evidence can include emails, documented phone calls, and the timeline of events showing the adverse action occurred shortly after your protected activity.

Causal- N V Rides stopped communicating immediately after French experienced the adverse issue, even though French called and emailed extensively, and that is stated in the text by Selmetria, who said "she was aware of every call and email from French, and her response was to tell French to Please stop and that they were annoying and that French was bothering everyone. ( See Exhibit B- text--Telling me Tony had nothing to do with this, when Tony was the one who started everything. In the Text, Selmetria trying to bullying French, and trying manipulate French into believing it was all her fault.  Again referring to the guidelines ( Exhibit-K-- which French never broke, as if by reading them enough times French would find one she violated. And that French had caused all of this herself. A devastating email to get by French. A total betrayal of trust, and deeply hurtful.

--The Correspondence from Selmetria which was an aggressive communication and manipulation that contained bullying, hostile language, factual inaccuracies, and a false justification for French's dismissal. This was an attempt to assert dominance and created a tense and unprofessional dynamic, after the adverse action had taken place and the dismissal letter and text both were sent after French's dismissal showing retaliatory behavior to French.

French mailed 50 copies of her case out to N V Rides partners. After that was done, French

12

received a call from Jeff Dannick on Dec. 23, 2024. After well into the conversation (20-25 minutes- Jeff told French that she had been on a speakerphone all that time, and French had no idea that she had been. Jeff told French that Elena Alergant had been listening to their conversation without French's consent or knowledge, again. Since French was on a speakerphone, in an office or public facility, there was no way for her to know who else was also able to hear their conversation. During this conversation, Jeff made the dismissive suggestion to French to "Just Move On", which occurred after French has already sent her case out to N V Rides partners, including Jeff and Elena. Elena also made negative comments insinuations about French's disability, insinuating that French was not part of the group of persons that N V Rides serves. Both Jeff and Elena's comments constitutes a direct retaliatory action against French for opposing the programs' discrimination.

Retaliation- The N V Rides program shutdown all communication after French's ride request denial, showing N V Rides was punishing French for asserting her rights, and presents as a cover up rather than a simple administrative mistake.

13

Part J-  Individuals in  ADA- State Torts/other and Program

Partially true:  Individuals can not  be held liable for ADA, only the program can.

While the Program, N V Rides is held accountable for the ADA violations, the staff are held accountable through state torts.


Based on Virginia tort law, and the actions of the public ride program, N V Rides and its staff, a disabled rider, French can claim the following state torts:

intentional infliction of emotional distress,

defamation,

gross negligence,

invasion of privacy.

A victim's ability to sue a public staff member or program will depend on whether sovereign immunity applies.

Sovereign immunity and liability

 While state and local government staff enjoy sovereign immunity in Virginia for simple negligence.  If the program is run by a non-profit organization its employees (Tony, Jeff, Selmetria, Emily, Barb, and Elena) are not government employees. They do not have sovereign immunity and can be sued in their personal capacity for their malicious misconduct and intentional torts. They can be held personally liable for intentional torts like malicious misconduct and gross negligence. Bringing the state claims in federal court as part of the overall action against the program and its staff can provide a stronger legal platform.

Virginia Tort Claims-(VTCA)--A key exception is that immunity does not protect staff from personal liability for intentional torts like malicious misconduct or gross negligence

Federal lawsuit: The EEOC's Right-to-Sue letter is the key that opens the door to a federal lawsuit. This allows for all claims—both federal ADA violations and state torts—to be heard in a single court


Stae Torts:

Intentional infliction of emotional distress (IIED);

1

This tort involves intentional or reckless conduct that is so outrageous and intolerable that it causes severe emotional distress. To prove this claim, French would need to show:

Intentional or reckless conduct: The staff's alleged malicious misconduct and gaslighting, which led to a wrongful dismissal, is considered intentional.

Outrageous and intolerable conduct: The combination of fabricating reasons for dismissal, gaslighting, and asking inappropriate medical questions is considered outrageous. This is especially true given the vulnerability of a disabled person, like French, relying on a public ride service.

Causal connection: The conduct must have been the direct cause of French's severe emotional distress.

Severe emotional distress: The distress must be so significant that no reasonable person could be expected to endure it. Evidence might include physical manifestations of distress or other non-psychological damage, such as loss of wages. ( See Exhibit-P- diary notes for Jan/Dec -2024

The staff's combined actions rises to the level of outrageous conduct:

Gaslighting French about the location, Putting French on speakerphone without consent,

Asking inappropriate medical questions,the deceitful process of the wrongful dismissal fraudulent misrepresentation....

A claim of fraudulent misrepresentation can arise from false statements made with the intent to induce reliance, resulting in damages to French. The following actions supports this claim:

False statements to the board: The notarized letter containing false information submitted to the board to justify French's dismissal are considered fraudulent representation.

False reason for dismissal: The false reason provided for French's dismissal via text message is also part of a fraudulent scheme.

Scheduler -Tony Wonkovich

Intentional Infliction of Emotional Distress (IIED):  Tony's actions are considered "outrageous and intolerable," meeting the high bar for IIED in Virginia.

Gaslighting French by denying entry of pre-arranged ride location.

2

Putting French on speakerphone without consent during a personal phone call.

Asking inappropriate medical questions of French, further contributing to French's distress.

Unlawful Interception of an Oral Communication: Placing French on speakerphone without consent so another person (Selmetria) could listen in is a violation of Virginia's electronic surveillance statute. This is considered unlawful interception, even though Virginia is a "one-party consent" state for recording.

Defamation (Slander): Providing false information about French's location to the person in charge, Slemetria, and others, is a slanderous statement.


Person in Charge , Selmetria Quarles-(Listener)

Intentional Infliction of Emotional Distress (IIED): Failing to intervene while witnessing Tony's outrageous behavior, especially after hearing French being gaslighted, is considered reckless and contributes to the overall abusive conduct.

Defamation (Libel): The person in charge, Selmetria, is liable for libel for participating in creating and approving the notarized letter with false statements for the board.

Malicious Misconduct and Gross Negligence: By listening to and condoning the abusive phone call without intervening, Selmetria, acted with gross negligence, and willful and wanton negligence, an exception to sovereign immunity.

Unlawful Interception of an Oral Communication:  As an unauthorized third party to the phone call,  Selmetria participation in listening without consent is a form of unlawful interception.


Jeff

Unlawful Interception of an Oral Communication: Jeff's act of again, putting French on speakerphone without consent, this time involving Elena, constitutes a second instance of unlawful interception.

Intentional Infliction of Emotional Distress (IIED): This is supported by multiple acts:

Speakerphone call: Repeatedly subjecting French to the humiliation of being put on speakerphone without consent.

Dismissive comment: Telling French to "Just Move On" is dismissive and adds to the emotional distress caused by the ongoing malicious conduct.

3

Defamation (Slander):  By facilitating Elena's insinuation about French's eligibility, Jeff knowingly participated in spreading a false and harmful statement.

Elena

Defamation (Slander): Insinuating that disabled French "was not part of the population they serve" is a false statement of fact that harms French's reputation by challenging her eligibility for a service meant for disabled individuals, including French.

Intentional Infliction of Emotional Distress (IIED): Elena's comments, combined with her presence during the unauthorized speakerphone call, contribute to the pattern of outrageous conduct designed to inflict emotional distress on French.

The Program (Employer)

Vicarious Liability: N V Rides itself is held liable for the torts committed by its staff under the doctrine of respondeat superior, since the staff were acting within the scope of their duties. This applies to both government programs (with exceptions) and private entities.

ADA Violations (Federal Claim):  N V Rides being federally funded, is subject to the ADA. The EEOC's Right-to-Sue letter empowers French to bring an ADA claim in federal court. This claim can be combined with the state tort claims under supplemental jurisdiction. N V Rides conduct, including its staff's actions, is evidence of systemic discrimination based on disability.

Bad faith and abuse of process

French's claim alleges that the staff and N V Rides did not act in good faith when dismissing French and took malicious actions.

Invalid reason for dismissal: N V Rides used a false reason to terminate service, not because of a legitimate business purpose, but to harm or retaliate against French.

Deceitful letter to the board: The notarized letter containing false statements is strong evidence of bad faith.

Abuse of power: Using their positions of authority to intentionally inflict harm and bypass proper procedures can be construed as an abuse of process.

4

Negligent supervision

French's claim holds N V Rides directly liable for its failure to properly oversee its staff.

Failure to prevent misconduct: N V Rides and its leadership failed to stop Tony and Jeff from engaging in malicious behavior , even when given an opportunity to intervene.

Inadequate training or policy: Since N V Rides policies on handling disabled clients, addressing complaints, and using speakerphones were inadequate, it establishes institutional negligence.

Knowledge of previous misconduct: Since N V Rides was aware of similar incidents involving the staff, when French submitted her case to partners,  and did not take corrective action, this established negligence.

Tortious interference with a business expectancy

While not a primary claim, this is considered since French's livelihood and ability to participate in other activities was dependent on the public ride service.

Damage to expectancy: Since the malicious dismissal interfered with French's ability to attend medical appointments, and other important functions, its the the basis of this claim.

Improper methods: The use of deceit, false statements, and retaliation are "improper methods" that gives rise to this tort

Special duty of care for vulnerable individuals like French

In Virginia, certain relationships, such as a caregiver and a vulnerable person, creates a heightened "special duty" of care.

Transportation service to disabled people: As a program specifically serving disabled and senior riders, the N V Rides organization has a heightened duty of care to its clients.

Breach of duty: The malicious and grossly negligent behavior of the staff constitutes a serious breach of this duty.

5

<u>Punitive damages</u>

The staff's combined malicious and grossly negligent behavior strengthens the case for punitive damages, which are designed to punish egregious conduct and deter future similar actions.

<u>Gross negligence and malicious misconduct:</u> The pattern of gaslighting, unauthorized disclosure, lies, and dismissiveness provides strong evidence that the staff acted with a willful and wanton disregard for French's rights and well-being.


<u>Retaliation (federal ADA claim)</u>

The staff's and N V Ride program's actions are framed as retaliation for French's  complaining about the initial misconduct.

<u>Complaining about ADA violations</u>: French mailing her case to the N V Ride program's partners is a form of protected activity.

<u>Subsequent malicious actions:</u> Jeff's follow-up phone call with the unauthorized listener and Elena's comments are viewed as retaliatory acts designed to punish French for complaining.

<u>The programs silence after French was wrongfully dismissed:</u>

That failure to respond serves as compelling evidence to support and strengthen other tort claims, particularly those involving bad faith, retaliation, and intentional infliction of emotional distress.


<u>Evidence of malicious intent and bad faith</u>

In Virginia, intentional torts like intentional infliction of emotional distress (IIED) and defamation require proof that the wrongdoer acted with malicious intent. The program's refusal to respond after the wrongful dismissal serves as evidence of this malicious intent.

<u>Concealment of wrongdoing:</u> By going silent, the program is attempting to avoid responsibility and conceal its staff's malicious actions.

<u>No legitimate explanation:</u> The refusal to communicate prevents French from receiving any legitimate explanation for the dismissal, reinforcing the conclusion that the reason given was false and the dismissal was malicious.

<u>Continuation of outrageous conduct</u>: When combined with the deceitful notarized letter, the gaslighting, and the unauthorized speakerphone call, the subsequent "silent treatment"

suggests a continued effort to torment French and evade accountability.

Federal ADA claim

The program's refusal to communicate with a disabled French following an alleged discriminatory act is strong evidence of a discriminatory attitude and a failure to accommodate.

Pattern of discriminatory behavior: The dismissal and subsequent silence is presented as a pattern of discriminatory behavior intended to make a disabled French unwelcome.

Retaliation: N V Rides refusal to respond is viewed as further retaliation against French for complaining to N V Ride program's partners.

Evidence of negligent supervision

While not a tort based solely on silence, the failure of program management to respond to French's complaint is evidence of negligence.

Condoning employee behavior: The refusal of management to respond to French implicitly condones the malicious actions of Tony and Jeff speakerphone misconduct.

Ignoring a complaint: N V Rides leadership had an obligation to investigate and address a serious complaint of misconduct, especially for a vulnerable population. Their failure to do so is a breach of their duty to supervise staff members

N V Rides refusal to communicate is not an independent tort but is powerful evidence for existing claims. It portrays N V Rides behavior as an extension of the malicious conduct rather than an isolated incident.

Emily Braley-

Emily spoke to French, French told her what had happened and Emily said she would call French back after the week end. Emily did not. French called her, and Emily than refused to talk more about it. She shut down knowing how distraught French was.

Emily, and N V Ride program's refusal to engage in meaningful communication further strengthens the existing tort claims against the program and its staff in Virginia. While Emily's failure to call back and subsequent refusal to talk may not constitute an independent tort, it serves as crucial evidence of malicious intent, bad faith, and a discriminatory mindset.

7

Emily's actions and bad faith

Emily's behavior can be used as evidence of bad faith on the part of the program.

False promise: Promising to call French back and then failing to do so is a false promise that contributes to French's emotional distress.

Malicious intent: When combined with the deceitful notarized letter and unauthorized speakerphone calls, Emily's subsequent refusal to talk shows malicious intent to stonewall French and avoid accountability.

Abuse of power: Emily, Using her position of authority to cut off communication with a vulnerable French, is an abuse of power and adds to the overall pattern of malicious misconduct.


Federal ADA claim and retaliation

Emily's refusal to communicate with a disabled French following an alleged discriminatory act is strong evidence of a discriminatory attitude and framed as retaliation.

Retaliation:  French had already sent a letter to the program's partners, which is a protected activity under the ADA. Emily's refusal to engage anymore in further communication can be seen as a retaliatory act to punish the French for complaining.

Failure to accommodate:  N V Rides silence reinforces the argument that they were not engaged in a good-faith interactive process to resolve the dispute, which could be a failure to accommodate under the ADA.


Submitting a notarized letter containing false statements to the program's board in Virginia, especially without French's presence or knowledge, introduces several additional torts and criminal offenses beyond the initial acts of defamation and malicious conduct


Fraudulent misrepresentation

Deceit of the board: The act of taking a notarized letter filled with false information to the

8

board is a direct and intentional act of deceit aimed at an oversight body.

Intent to defraud: Selmetria and Barbara Gatorian presenting false information with the intent to harm French and mislead the board in its decision-making process is a critical element of fraudulent misrepresentation. This goes beyond simple defamation, as it involves an active and malicious effort to deceive a third party.

Fraud upon the tribunal

Undermining the process: While the N V Ride program's board may not be a formal court of law, it is a body tasked with overseeing the program and its clients. Presenting false information to this body undermines its ability to make an impartial decision and serves as evidence of a malicious scheme against French.

Breach of integrity: Using a forged and deceitful document to deceive a tribunal is a serious breach of integrity, which can lead to severe consequences for the N V Rides program and the individuals involved.

Conspiracy to defraud

Coordinated effort: The involvement of multiple staff members (Tony, Elena, Barb, Jeff, Emily, and the person in charge, Selmetria ) who listened in a coordinated effort to dismiss French using a falsified notarized letter to mislead the board could be viewed as a conspiracy to defraud.

Agreement to deceive: This requires an agreement between the staff to deceive the board with false information, which the combined acts of gaslighting, speakerphone eavesdropping, and document submission provide the strong evidence for.

Forgery by false pretenses (criminal offense)

Obtaining a signature under false pretenses: If a person's signature was obtained on the letter under false pretenses with the intent to defraud, it is a crime in Virginia. French was dismissed, and the notarized letter was presented to the board. If the signature was obtained deceptively, it would fall under this category. (Selmetria created the letter, but Barb Signature was on it as Chair person for 2024.)

9

Perjury

A notarized letter can be considered "under oath" if the notary administers an oath or
affirmation to the signer regarding the accuracy of the letter's contents, which is a formal
process called a Jurat. A notary's role is to verify the signer's identity and confirm they have
sworn that the information in the document is true to the best of their knowledge, but they do
not authenticate the truthfulness of the information itself.

False sworn statement: While a notarized letter does not always constitute a sworn statement,
in some contexts it can. The letter contained information presented "under oath" and was false,
is a violation of perjury statutes in Virginia.

Criminal offense: Perjury is a felony in Virginia and can have significant criminal and civil
consequences.

(The reason for French's dismissal was false and that was notorized as true, among many other
untruthful statements, -a wrong date, That French complained when she called, she did not,
stating facts is not complaining, Since no one spoke to French, no one informed her of anyones
authority over anyone, That French wasted everyones time and and made negative statments-,
that French recevied rides on the week ends to phamacies, -never, That as a non profit they set
their own rules on the transportation program. That French was told many times ..since no one
spoke to me, how can I be told something many times?)


Malicious prosecution or abuse of process

Bad faith actions: While typically associated with formal court proceedings, the malicious use of
a false notarized letter to terminate French's services and mislead the board is seen as an abuse
of process within the program's administrative framework.

Improper purpose: This tort would focus on the improper purpose behind the staff's actions—to
harm and retaliate against French rather than to address a legitimate issue.

In conclusion, presenting a notarized letter filled with false statements to the N V Ride
program's board without the rider's presence is not just a procedural misstep. It is a calculated
and malicious act of deceit that can expose the program and its staff to additional tort liability
in Virginia, including fraudulent misrepresentation and conspiracy


A publicly funded program's denial of due process to French, especially  with a disability, does
not directly violate a state tort in Virginia. However, this failure to follow proper procedure is a
severe violation of federal law and is used as key evidence to bolster existing state tort claims,

10

including Intentional Infliction of Emotional Distress, Fraud, and Malicious Misconduct.

<u>Denial of due process affects the various legal claims:</u>

Impact on federal ADA claim

The most direct and significant impact is on the federal Americans with Disabilities Act (ADA) claim, as the program is federally funded.

<u>Discrimination based on disability:</u> A federally funded program cannot terminate a disabled French's benefits for discriminatory reasons. The failure to provide due process reinforces the conclusion that the termination was arbitrary and discriminatory.

<u>Procedural requirements:</u> The U.S. Code of Federal Regulations generally requires that recipients of federal funds provide an opportunity for an objection, hearing, and appeal before terminating service, especially when the termination is based on alleged non-compliance. The program's refusal to engage with French demonstrates a clear failure to meet these procedural requirements

<u>Impact on state tort claims</u>

1. Intentional Infliction of Emotional Distress (IIED)

The denial of due process, combined with the other malicious acts, strengthens the IIED claim.

<u>Aggravated emotional distress</u>: The program's stonewalling and refusal to engage in a fair process, following the gaslighting and false dismissal, adds to French's emotional distress.

<u>Continuation of outrageous conduct:</u> The repeated refusal to communicate and provide a fair process reinforces the claim that N V Rides engaged in a continuous pattern of outrageous and intolerable conduct

<u>Fraudulent misrepresentation</u>

The denial of due process provides strong evidence of fraudulent misrepresentation against the program- N V Rides and its staff.

<u>Malicious deceit:</u> N V Rides presented false information to the board to justify the dismissal without due process, it proves they had no intention of engaging in a fair process and intended

to deceive the oversight body.

Purpose of the lie: The fraud was used to deny French her right to due process, demonstrating a malicious intent to cause harm.

Malicious misconduct

Willful misconduct: The staff's actions in manufacturing a false reason for dismissal, presenting a fraudulent letter to the board, and stonewalling French's appeals, constitute willful and wanton conduct that demonstrates a disregard for French rights.

Abuse of official position: By using their positions to deny French's due process rights, the staff members engaged in an abuse of official position

French's EEOC's right-to-sue letter opens the door to filing a federal lawsuit. The program's refusal to provide due process is a serious federal violation that can be included in this suit. This lawsuit can also include the related state tort claims against the program and individual staff members under the federal court's supplemental jurisdiction. The federal ADA claim is a strong vehicle for challenging the program's conduct, and the state torts can provide additional avenues for compensatory and punitive damages

Retaliation is illegal in Virginia and is against federal and state laws, including those related to an Americans with Disabilities Act (ADA) lawsuit. Virginia has its own whistleblower and anti-retaliation laws, and federal law prohibits discrimination or retaliation against anyone who has filed an ADA complaint, testified, or otherwise participated in an ADA proceeding. This protection extends to actions that would discourage others from opposing discrimination or filing a complaint.

French's claim includes multiple potential grounds for retaliation based on both federal and state laws. Because the program receives federal funding, her complaint about discrimination is protected under several statutes

Federal laws

1. Title II of the Americans with Disabilities Act (ADA)

Prohibition: The ADA prohibits retaliation against individuals who complain about discrimination or otherwise exercise their rights under the ADA.

<u>Protected activity:</u>  French's letter to the program's partners complaining about discrimination constitutes a protected activity.

<u>Adverse action:</u>  N V Rides actions after French's complaint, including the malicious phone call from Jeff and Elena, the fraudulent notarized letter, and the continued stonewalling, qualify as materially adverse actions intended to dissuade French from pursuing her rights.

<u>Causation</u>: The close timing between French's complaint and the escalating hostile actions of the program establishes a strong causal link.


2. Section 504 of the Rehabilitation Act

<u>Prohibition</u>: Section 504, which covers federally funded programs, prohibits recipients of federal funds from retaliating against individuals who assert their rights under the act.

<u>Incorporation of Title VI:</u> Section 504 incorporates the anti-retaliation provision of Title VI of the Civil Rights Act, which prohibits recipients from intimidating, threatening, coercing, or discriminating against anyone who complains or assists in an investigation.

<u>Analysis</u>: Because the language in the ADA and Section 504's anti-retaliation provisions is nearly identical, they are generally analyzed together. The same evidence that supports French's ADA retaliation claim also supports her Section 504 claim


3. False Claims Act (FCA)

<u>Whistleblower protection:</u> The FCA provides protection for whistleblowers who expose fraud against the government, even if they have not yet filed a formal lawsuit.

<u>Protected activity</u>: French's complaint detailing the program's malicious and fraudulent conduct (particularly the notarized letter) can be seen as an act in furtherance of a qui tam action under the FCA. The program's use of false information to justify its actions while receiving federal funds points to a misuse of federal money.

<u>Retaliation:</u> Retaliation under the FCA can include harassment, intimidation, and wrongful dismissal. The program's malicious actions clearly fall under this definition.

<u>Remedies:</u> The FCA provides for remedies such as reinstatement, two times the amount of back pay, interest, and special damages for emotional distress

Virginia state laws

1. Virginia Whistleblower Protection Law (§ 40.1-27.3)

Protection for private sector staff: This law protects private-sector staff who report, in good faith, suspected violations of federal or state law or regulations to a supervisor or governmental body.

Protected activity: French's complaint detailing the program's misconduct to its partners could be considered a protected activity under this law, especially if the program is a private entity that receives federal funds.

Retaliation: The law prohibits employers from retaliating against employees for engaging in protected whistleblower activity.

Note: This law has a one-year statute of limitations for filing a civil suit

2. Common law tort of retaliatory discharge (Bowman doctrine)

Exception to at-will employment: Virginia is an at-will employment state, but the Bowman doctrine provides a narrow exception for wrongful discharge in violation of public policy.

Connection to statute: The public policy must be articulated in a Virginia statute. While this tort is most often applied to employment, in some cases, it can apply to other relationships where a clearly stated public policy was violated.

Application: It is unclear if this doctrine would apply to your case, as it is a service provider relationship rather than an employment relationship. However, if the service provider terminated you for exercising a federally protected right, this could potentially be viewed as a violation of public policy.

That's an insightful legal question, as it gets to the heart of what constitutes a "protected activity" under federal anti-retaliation laws. In French's case, sending her complaint to the program's partners was a protected activity for several reasons;

1. It is a form of "opposition" to discrimination

The ADA and Section 504 prohibit retaliation for "opposing any act or practice made unlawful" by these statutes. The U.S. Equal Employment Opportunity Commission (EEOC) and courts have

14

consistently interpreted this "opposition" clause broadly.

Informal complaint: French doesn't need to file a formal complaint with a government agency for it to be a protected activity. French's letter to the program's partners, especially if they have an oversight or funding relationship with the program, is a form of informal opposition to the program's discriminatory behavior. (The Board)

Reasonable belief: To be protected, your opposition must be based on a reasonable, good-faith belief that the conduct you are opposing is or could become unlawful. French detailed complaint of gaslighting, harassment, and wrongful dismissal demonstrates a reasonable belief that the program was engaging in illegal discrimination.

Purpose of the protection: The purpose of the anti-retaliation provision is to ensure that individuals are not discouraged from bringing civil rights violations to light. Retaliating against someone for complaining to a relevant third party would defeat this purpose

2. It is an act in furtherance of a potential lawsuit

In French's case, She is using the partners' action (or inaction) as evidence of the program's conduct in a potential lawsuit. The act of notifying a relevant oversight body, such as the partners, is a necessary step to exhaust informal remedies and potentially provides notice to a larger institution. This action can be seen as in furtherance of a potential legal claim.

3. It can be seen as an act in furtherance of a whistleblower claim

French's complaint, particularly because the program receives federal funding, could also be interpreted as an act in furtherance of a False Claims Act whistleblower action. As discussed previously, the program's fraudulent activity (the notarized letter) in connection with federal funds could give rise to an FCA claim, and French's complaint helped expose that fraud. The FCA explicitly protects whistleblowers from retaliation

In summary: Your letter is a protected activity

French's letter to the program's partners is a federally protected right under the anti-retaliation provisions of the ADA, Section 504, and potentially the False Claims Act. The program's subsequent adverse actions, such as the harassing phone call and the fraudulent notarized letter, create a strong causal link for Fench's retaliation claim.

15

<u>Barb</u>

The program employee, Barb Gatorian, who previously granted French permission to obtain prescriptions, is not immune from liability due to her silence. Her inaction is relevant to several of the rider's claims, especially those concerning negligent supervision, ADA violations, and retaliation

Negligent supervision

Barb's silence and inaction are evidence that the program, N V Rides is liable for negligent supervision.

<u>Knowledge of French's disability and reliance</u>: Barb was a point of contact for French and was aware of her disability and specific needs, as demonstrated by her granting permission for the prescription pickup. This establishes a baseline knowledge of the French's status and vulnerability.

<u>Failure to intervene</u>: As a staff person who previously interacted with and approved French's request, Barb had a relationship with French. Her failure to respond to French's subsequent requests for communication, especially after French had complained, demonstrates a failure of the program to properly manage and supervise its staff. This inaction, following the initial malicious acts by other staff, points to a systemic failure.

<u>Condoning malicious conduct</u>: Barb's silence in the face of French's documented complaints could be seen as condoning the malicious conduct of the other staff. Her inaction implies that the program's leadership was unwilling to address the abusive and discriminatory behavior.

Amended Part J -- The <u>Program</u> in ADA- State Torts/other and Program

ADA and other Va law Violation's of the N V Rides program itself:

1-Wrongful Dismissal

<u>Wrongful termination of service</u>: The dismissal of the rider based on a fabricated reason is a clear act of discrimination. A program cannot terminate a disabled person's benefits for discriminatory reasons. The subsequent refusal to communicate suggests the program had no intention of engaging in a fair process.

Virginia law recognizes an implied-in-fact contract between the program and its riders. When a person with a disability is approved for a special service with a clear set of eligibility criteria, and a program accepts and provides that service over time, a contractual relationship is formed based on the conduct of both parties.

**********

2-Breach of contract-Significance

A breach of contract claim can be brought alongside the federal ADA and state tort claims in federal court. It offers a way to argue that the program itself—not just its employees—had a contractual obligation to French that it failed to uphold.

Elements of an implied contract claim: --See Part L- binding contract

<u>Valid agreement:</u> French application, acceptance into the program, and consistent use of the service (2 years) establishes an implied contract. The program agrees to provide transportation services consistent with its published rules and the law (including the ADA).

<u>Performance by the rider:</u> French performed her part of the agreement by enrolling in the program, providing necessary information,(including health information about her disability and diagnosis) and following program procedures.

<u>Breach by the program:</u> N V Rides breached this implied contract by wrongfully dismissing the rider based on a false reason. The program's conduct, which included malicious acts and a failure to follow due process, is a material breach because it fundamentally undermines the purpose of the agreement—to provide reliable, non-discriminatory transportation.

<u>Damages</u>: French suffered damages as a result of the breach, including emotional distress, loss of transportation, and potential costs associated with alternative transport.

1

Breach of implied covenant of good faith and fair dealing

Under Virginia law, a duty of good faith and fair dealing is implied in every contract, although it is not a standalone cause of action. Instead, it is used to prevent one party from acting arbitrarily or unreasonably to prevent the other from receiving the benefits of their bargain.

N V Rides actions are evidence of a failure to act in good faith:

Arbitrary and unreasonable conduct: The malicious actions of the staff—including the gaslighting, unauthorized disclosure, and use of false information—were both arbitrary and unreasonable.

Preventing the benefit of the bargain: This conduct, which resulted in French's wrongful dismissal, deprived her of the services they were promised under the implied contract.


Breach of common carrier duty

A public ride program may be considered a common carrier, which holds a heightened duty of care toward its passengers under Virginia law.

Statutory liability: Virginia law states that no contract, rule, or regulation can exempt a common carrier from its liability for "neglect or misconduct" that harms a passenger.

Malicious conduct: The staff's gross negligence and malicious misconduct would be a breach of this statutory duty. The law provides for compensation for injury or loss caused by such misconduct

**************

3-Privacy Violation- Not a covered entity

A program's privacy violations under the Americans with Disabilities Act (ADA) are more focused on protecting confidential medical information and ensuring effective communication, rather than the "invasion of privacy" torts recognized under state law. The described actions violate both federal and potentially state privacy protections

ADA privacy violations;

The ADA requires that information obtained from medical inquiries or voluntarily disclosed by an idividual like French, with a disability must be treated confidentially. The program violated this in several ways:

Improper medical inquiries: The scheduler, Tony, asked French medical questions, a practice

2

that must be job-related and consistent with business necessity. Asking personal medical questions to a program beneficiary, French, is almost never justifiable and can be seen as an attempt to coerce information.

Unauthorized disclosure of confidential information: By placing French on speakerphone during the medical questioning, Tony disclosed potentially confidential medical information to the person in charge, Selmetria, and potentially others in the room without French's consent. Such disclosures are generally prohibited under the ADA.

Creation of a hostile environment: The repeated, non-consensual use of a speakerphone created an intimidating and hostile environment, preventing French from having a confidential conversation with the program's staff. This behavior undermines the program's obligation to provide a supportive and respectful service environment for individuals with disabilities including French.


Virginia state privacy protections

While Virginia's invasion of privacy torts are narrowly defined and often don't apply to this type of situation, other state statutes and common law may apply:

Unlawful interception of communications: Virginia's statute against unlawful interception of oral communication applies to the third-party listening of a phone call. The staff placing the French on speakerphone without consent, especially multiple times, is seen as an unlawful interception.


These ADA and state privacy violations are not just ancillary issues; they are core components of the larger ADA discrimination claim and significantly strengthen the state torts.

Reinforces malicious intent: The intentional and repeated disregard for the French's privacy, especially concerning medical information, is strong evidence of the staff's malicious intent.

Adds to damages for IIED: The humiliation and stress caused by the privacy violations can be used to prove the "outrageous and intolerable" conduct needed for an IIED claim.

Supports punitive damages: The willful and wanton disregard for French's privacy rights strengthens the case for punitive damages against the program and its staff.

Connects to ADA discrimination: The privacy violations are directly linked to the program's discriminatory actions, such as wrongfully dismissing French. N V Rides and staff used private and sensitive information in a malicious way to harm and dismiss French with a disability.

3

In short, N V Rides actions regarding privacy violate both the spirit and likely the specific requirements of the ADA. These violations further illustrate the malicious nature of the staff's conduct and add significant weight to French's claims for damages in a lawsuit.

\*\*\*\*\*\*\*\*\*\*\*\*

4-Misuse of Federal Funding:

In addition to the ADA and state tort violations, the program's actions constitute a misuse of federal funding. This is not a state tort in Virginia but rather a federal violation with serious consequences, including administrative sanctions, civil penalties, and potentially criminal charges.

The misuse of federal funding is particularly egregious because the purpose of the funding is to provide transportation services to vulnerable populations, and the program allegedly used the funds to discriminate against the very people it was intended to serve

Federal False Claims Act

The Federal False Claims Act is the primary tool used by the government and whistleblowers to combat fraud involving federal programs. A private citizen can initiate a lawsuit under the act, which is called a qui tam action.

How the False Claims Act would apply:

<u>False claims for payment or approval:</u>  N V Rides knowingly or recklessly presented false information to its funding agency to secure and maintain federal grants. The notarized letter sent to the board, which contained false information and was meant to deceive an oversight body, is viewed as a false claim to justify continued funding.

<u>Misuse of funds:</u> Federal grants are given with specific restrictions on how the money can be used. Using grant money to fund a discriminatory and hostile program, and to cover up wrongful acts, is a clear misuse of federal funds

<u>Withholding or concealing information:</u> N V Rides concerted effort to stonewall French and her appeals, and to misrepresent the facts to the board, is viewed as an attempt to conceal information from its federal funding agency to maintain eligibility

Consequences for the program

4

If found guilty of misusing federal funds, the program could face severe consequences:

<u>Administrative remedies:</u> The federal funding agency could terminate the program's grant and demand repayment of improperly used funds.

<u>Civil penalties:</u> Civil penalties, such as substantial monetary fines, can be imposed on the program for each violation of the False Claims Act.

<u>Debarment</u>: The program could be debarred from receiving any future federal funding.

Criminal charges: In cases of severe and intentional fraud, criminal charges can be filed against individuals responsible for the misuse of funds

(French's intent is not to destroy the program, but to change it,-- to obey the laws. French asks for leniency on this one, to not destroy the program, but to change leadership, ensure compliance with a complaince official employed, and training by a recognized entity of Goverment complaince training.)

However:

Recourse for the rider, French

While a False Claims Act lawsuit is brought on behalf of the government, the qui tam provision allows the private citizen, French who initiates the suit to receive a share of any funds recovered.

<u>Whistleblower protection</u>: Individuals who report misuse of federal funds are also protected from retaliation under the False Claims Act. The program's malicious actions after the rider complained to its partners is seen as retaliation.

<u>Evidence for ADA claim:</u> The program's misuse of federal funds is a powerful tool to bolster the ADA claim. It demonstrates that the program not only violated the ADA but did so by misusing public money designated for a specific public purpose.

The program's misuse of federal funds is a serious matter that significantly strengthens the rider's case and provides additional avenues for legal action, separate from the ADA and state tort claims.

**********

5-Servcies denied to a disabled person

5

Violation of ADA Title II-

A key violation is the direct denial of services to a qualified individual including French, with a disability, which falls under Title II of the ADA. As a federally funded program, the N V Rides service is a "public entity" and must comply with these regulations.

The ADA guarantees equal opportunities for individuals with disabilities to participate in state and local government services, such as transportation. By dismissing the disabled French for a fabricated reason, the program violated its core obligation under this federal law.

Denied servcie...

Specifically, the program's denial of services includes:

Exclusion from a public service: The rider was excluded from receiving a public service based on their disability. This is prohibited by the ADA, which states that no qualified individual with a disability shall be "excluded from participation in or be denied the benefits of services" by a public entity.

Arbitrary termination of service: The dismissal based on a false reason of location, especially when combined with the malicious and hostile conduct of the staff, constitutes an arbitrary termination of a service. For a vulnerable individual, French, the service is a necessity, and its termination causes harm beyond mere inconvenience.

Inappropriate eligibility criteria: Elena's insinuation that the rider "was not part of the population they serve" is a clear example of applying inappropriate and discriminatory eligibility criteria. The ADA prohibits public entities from utilizing standards or criteria that screen out or tend to screen out individuals with disabilities

Violation of Section 504 of the Rehabilitation Act

Since the program is federally funded, it is also subject to Section 504 of the Rehabilitation Act of 1973. This law is closely related to Title II of the ADA and also prohibits discrimination based on disability in programs that receive federal financial assistance.

The program's denial of services violates Section 504 because:

"Denied the benefits of" a program: French was directly "denied the benefits" of the federally funded transportation program because of her disability.

Discrimination in a federally assisted program: The malicious dismissal and subsequent

6

stonewalling constitute a pattern of discrimination in a federally assisted program.

Federal enforcement and remedies

These violations open up several federal legal avenues for French, in addition to the state tort claims:

EEOC Right-to-Sue: The EEOC's right-to-sue letter gives French the green light to file a federal lawsuit alleging these ADA and Section 504 violations.

Department of Justice complaint: While French has the right to sue, the Department of Justice can also bring its own lawsuit for a "pattern or practice of discrimination".

Private right of action: Both the ADA and Section 504 provide a private right of action, allowing French to sue for damages, injunctive relief (forcing the program to change its policies), and attorney's fees.

In summary, the program's denial of services to a disabled French violates key provisions of the ADA and Section 504. The wrongful termination of service is at the core of French's complaint and is powerful evidence of the program's illegal and discriminatory practices

*********

6-Negligent Supervision

Even before the new law--N V Rides would be held liable for its staff's actions under a theory of vicarious liability or for gross negligence in its oversight, as this situation involves malicious misconduct against a vulnerable individual, French

Negligent supervision under prior Virginia law

While Virginia courts were traditionally reluctant to recognize a standalone tort for negligent supervision, they have consistently held employers liable when their negligence was the direct cause of a foreseeable injury.

Under the law in 2024, the rider would need to prove:

Foreseeable Harm:  N V Rides knew or should have known that its staff's behavior posed a risk of harm to French. The fact that French is a disabled individual relying on a specialized transportation service would have created a heightened duty of care.

Failure to Exercise Reasonable Care: N V Rides management failed to exercise reasonable care in supervising its employees. The failure to intervene in the speakerphone call, the approval of a

false notarized letter, and the subsequent stonewalling of communication all demonstrate a failure to exercise reasonable care in controlling employees' malicious conduct.

Causation: The program's negligence in supervising its employees was the proximate cause of French's injuries, including emotional distress.

Gross negligence by the program

N V Rdies as a whole, can be held liable for its own gross negligence, separate from the vicarious liability for its staff's actions.

Willful and wanton disregard for rights: Gross negligence in Virginia is a willful and wanton disregard for the rights of another. N V Rides systemic failures, including its approval of a deceitful letter to the board and its subsequent stonewalling of communication, rise to the level of gross negligence.

Malicious scheme: N V Rides management was complicit in a malicious scheme to harm French. This behavior goes far beyond simple negligence and is a powerful argument for holding the entire program accountable.

Vicarious liability for intentional torts

French can still hold the program vicariously liable for the intentional torts (e.g., defamation, intentional infliction of emotional distress) committed by its staff, since the acts were committed within the scope of their work duties.

Scope of employment: Virginia courts have historically struggled with whether an intentional tort is within the "scope of employment." However, when the staff's intentional tort is intertwined with the performance of their job duties and intended to serve the programs interests, a court may find the program vicariously liable.

Serving employer's interest: The staff's actions, such as presenting a false letter to the board, were ostensibly performed to serve the program's interest in justifying French's dismissal and avoiding a lawsuit, even if the methods were illegal and malicious. This provides a strong argument for vicarious liability.

Summary

Even though the new "vulnerable victim" law does not apply to this 2024 incident, French can still hold the program accountable for negligent supervision, gross negligence, and vicarious liability. The malicious conduct of the program's staff, combined with the systemic failures and

8

stonewalling by management, provides powerful evidence for these claims under the law that was in effect in 2024.

**************

7-Providing Less favorable servcies to a disabled person

8-approproate servcies

This situation involves the program, N V Rides, providing services that are less favorable or are fundamentally different from those offered to non-disabled individuals. This is a form of disability discrimination and a violation of both Title II of the ADA and Section 504 of the Rehabilitation Act

ADA Title II violations

Title II of the ADA prohibits public entities from discriminating against qualified individuals like French with disabilities in their services, programs, and activities. The N V Ride program's actions of providing a less favorable service—or, in this case, denying service altogether—is a clear violation.

Specifically, the following behaviors constitute providing less favorable services:

Arbitrary termination of service: The dismissal of the rider for a false reason is an arbitrary act that deprives a qualified individual, French, of a service designed for her. The program did not follow proper procedure, nor did it have a valid reason for termination.

Exclusion from a public service: The ADA prohibits excluding individuals with disabilities from participating in or denying them the benefits of services, programs, and activities. French's dismissal for a fabricated reason constitutes an outright denial of a public service.

Imposing different terms and conditions: The staff's conduct, including the unauthorized speakerphone calls and inappropriate medical questions, subjected French to different and less favorable terms and conditions of service compared to non-disabled individuals. This behavior was malicious and intended to harass French out of the program.

Disparate treatment: N V Rides treated French less favorably than it would have treated a non-disabled person, particularly concerning the process of handling complaints. The use of a false notarized letter, the refusal to engage with French's appeals, and the stonewalling tactics demonstrate disparate treatment based on French's disability

**************

Section 504 of the Rehabilitation Act violations

9

As the N V Rides program receives federal funding, it is also subject to Section 504 of the Rehabilitation Act, which similarly prohibits discrimination based on disability.

Denial of benefits: Section 504 states that no qualified individual with a disability, like French, shall be "denied the benefits of" a federally funded program. The wrongful dismissal directly denied French the benefits of the transportation program.

Program accessibility: The harassment and malicious conduct effectively made the program inaccessible to French. The program created a hostile and discriminatory environment, preventing French from continuing to use the service

Summary

Providing less favorable service to a disabled person including French, is not a separate tort in Virginia, but a type of discriminatory behavior that is a core violation of federal anti-discrimination law (ADA and Section 504).

This behavior significantly strengthens French's overall case, especially in a federal lawsuit enabled by the EEOC's right-to-sue letter. The pattern of providing a less favorable service—or denying it entirely through malicious means—serves as powerful evidence for the following claims:

Federal ADA/Section 504 claim:  N V Rides provided a less favorable service, which is a direct violation of federal law.

Intentional infliction of emotional distress (IIED): The malicious nature of the less favorable treatment and dismissal of French is a key element of the IIED claim.

Bad faith and malicious conduct: The malicious intent behind the denial of service to French, further proves the program's bad faith

******************

9-Proving discrimination...

N V Rides actions were intentionally discriminatory or had discriminatory effect ;

 A federal ADA discrimination claim can be based on two theories: intentional discrimination (also called disparate treatment) or discriminatory effect (also called disparate impact). French's case has strong evidence for both. Since the program receives federal funds, it is subject to both Title II of the ADA and Section 504 of the Rehabilitation Act.

Intentional discrimination (disparate treatment)

Intentional discrimination is a direct form of discrimination where a program deliberately treats

10

a person with a disability, French,  differently because of their disability. N V Rides actions
strongly suggest discriminatory intent based on the cumulative evidence:

Gaslighting about ride location: The scheduler's malicious denial of the pre-arranged location
demonstrates intentional misconduct.

Malicious use of speakerphone: The staff knowingly violated the French's privacy by putting
calls on speakerphone without consent during sensitive discussions. The repetition of this act by
Jeff further proves the intent to intimidate and harass French.

Inappropriate medical questions: Asking personal medical questions is a violation of ADA
privacy protocols. The timing and context suggest it was not for legitimate purposes but as a
form of harassment.

False reason for dismissal: The program used a fabricated reason for French's dismissal. This
deceit is a form of intentional discrimination designed to justify an adverse action against a
disabled person, French.

False notarized letter to the board: Submitting a notarized letter with false information to the
board is evidence of a coordinated, malicious, and deceptive plot to harm French.

Elena's discriminatory statement: The insinuation that the rider is not in the population served
shows discriminatory animus. Such a statement is powerful direct evidence of intentional
discrimination.

Pattern of retaliation and stonewalling: N V Rides actions following French's complaint,
including refusing further communication, demonstrate a clear pattern of retaliation

Discriminatory effect (disparate impact)

Discriminatory effect occurs when a policy or action, even if neutral on its face,
disproportionately harms a protected group, regardless of intent. While intentional
discrimination is clearly present, the rider's case is also framed in terms of discriminatory effect
to expose systemic issues within the N V Rides program.

N V Rides practices had a discriminatory effect on the French because:

Use of invalid or arbitrary criteria: The program, N V Rides use of a false "location" reason for
termination, and Elena's baseless claim of ineligibility, are examples of using arbitrary criteria
that have a discriminatory effect on riders with disabilities including French

Systemic failure to follow due process: N V Rides lack of accessible and fair procedures for
handling complaints and appeals has a disproportionate negative effect on disabled riders. This

11

creates an environment where malicious acts can go unchecked and appeals are stonewalled.

Failure to provide effective communication: The program, N V Rides communication practices, including the use of unauthorized speakerphone and refusal to engage in meaningful dialogue, created a discriminatory barrier to effective communication for a vulnerable individual, French.

Chilling effect on other riders: The program, N V Rides malicious handling of this situation could deter other disabled riders from raising complaints for fear of similar retaliation. This creates a systemic barrier to accessing services for other disabled individuals in the program

Federal claims and remedies

French's EEOC "Right to Sue" letter allows her to combine these theories of intentional discrimination and discriminatory effect into a single federal lawsuit. A private right of action exists under Title II of the ADA and Section 504 of the Rehabilitation Act to sue for damages. The evidence of intentional discrimination, malicious misconduct, and discriminatory effect provides a powerful basis for:

Compensatory damages: For the emotional distress and harm caused by the discrimination.

Injunctive relief: To force the program to implement proper anti-discrimination policies, training, and grievance procedures.

Punitive damages: For the malicious and egregious conduct of the program and its staff.

Attorney's fees: To cover the cost of the litigation

***************

10-Notorized false statement

Legal liability for notarizing false statements

In this case, the notarization of a document containing false statements is not a tort in itself against the rider, but it can be a crime. The real harm is caused by the fraudulent statements, not the notarization. However, the notary's conduct can be used as evidence of the malicious and fraudulent scheme against the rider

(Potential liability for the notary

Civil liability for official misconduct: Virginia law states that a notary public is liable for all damages proximately caused by their official misconduct. If the notary knowingly notarized a document containing false information, it would be a form of official misconduct and they could

12

be held civilly liable for the damages suffered by the rider.

Criminal liability: A notary who knowingly and willfully commits official misconduct is guilty of a Class 3 misdemeanor in Virginia. Furthermore, if a notary's misconduct enables a forgery, false writing, or other crime to occur, the notary could be held criminally liable as an accessory to the crime. The notarization of a document with false information, with the intent to harm and defraud, could lead to criminal charges.

Removal of commission: A notary's commission can be removed for official misconduct. If the notary was found to have been complicit in the scheme to defraud the rider, the Virginia Secretary of the Commonwealth could revoke their commission)

Impact on the rider's tort claims

The notarization of the false letter strengthens the existing tort claims against the program and its staff in several ways:

Proof of fraudulent misrepresentation: The notarized letter is a key piece of evidence proving the staff's fraudulent misrepresentation. It shows that they went to great lengths to legitimize their false statements.

Conspiracy: The involvement of a notary in the scheme to deceive the board could be used as evidence of a conspiracy to defraud the board and harm the rider.

Malicious intent and gross negligence: The use of a falsified, notarized letter to dismiss a vulnerable individual, French,  is strong evidence of malicious intent and gross negligence.

Impact on the program

The notarization of a false document adds to the program's overall liability for the following reasons:

Aiding and abetting: The program, N V Rides and its staff aided and abetted the notary in committing an illegal act by asking them to notarize a fraudulent document.

Systemic failure: The program, N V Rides use of a false notarized letter, along with its other malicious acts, suggests a systemic failure to protect its clients and a complete disregard for legal and ethical standards.

Misuse of power: The program, N V Rides used the solemn act of notarization as a tool to

13

intimidate and defraud a vulnerable person,French, which is a serious abuse of power.

The notarization of the false document does not provide a separate tort claim for French, but it significantly strengthens the existing claims by providing powerful evidence of the malicious, fraudulent, and illegal conduct of the program and its staff.

************************

11-11- <u>Intentional Discrimination</u>

1. Federal ADA Title II and Section 504

<u>Discrimination is prohibited:</u> Title II of the ADA prohibits state and local government entities from discriminating against qualified individuals with disabilities. Section 504 of the Rehabilitation Act extends this prohibition to all programs or activities that receive federal financial assistance. Since French's ride program is a public and federally funded service, both statutes apply.

<u>Intentional discrimination:</u> The malicious and fraudulent acts of the program's staff—the gaslighting, the fraudulent notarized letter, and the discriminatory remarks—constitute intentional discrimination. The ADA provides a private right of action for individuals, including French to sue in federal court for such violations.

2. Virginia Human Rights Act (VHRA)

<u>Public accommodation:</u> The VHRA prohibits discrimination based on disability in places of public accommodation, which includes transportation services.

<u>Private right of action:</u> The VHRA provides a private right of action for discrimination in places of public accommodation. French's claims against the ride program would be covered by this statute.

2. The "regarded as" claim

French can allege a claim of "regarded as" discrimination, which asserts that the program treated her as if you had an impairment that substantially limited a major life activity, regardless of whether you actually did. Elena's discriminatory remark ("not part of the population they serve") directly supports this claim

3. Proving discriminatory intent

Evidence showing intentional discrimination can include:

<u>Fabricated reasons:</u> The program's use of fabricated reasons to justify French's dismissal is

14

strong evidence of intentional discrimination.

<u>Discriminatory remarks:</u> Elena's explicit discriminatory remark provides direct evidence of bias.

<u>Pattern of harassment</u>: The malicious and harassing behavior by multiple staff suggests a coordinated effort rather than an isolated incident.

<u>Fraudulent conduct</u>: The use of a fraudulent notarized letter to formalize French's dismissal is powerful evidence of malicious intent.

4. Suing the program and the individuals

_____

11-Conspiracy;

French can bring a civil conspiracy claim in Virginia, even if the staff are all part of the same public entity.

Elements of a civil conspiracy claim in Virginia;

To establish a claim for civil conspiracy, the rider would need to prove the following elements based on the common law:

<u>A combination of two or more persons:</u> The documented interactions involve multiple staff: the scheduler Tony, the person in charge who was listening Selmetria, Jeff, Emily, and Elena. Their concerted actions and communications (speakerphone calls, text message, notarized letter) suggest a combination to achieve an objective.

<u>To accomplish by some concerted action</u>: The staff worked together through these various communications and actions to wrongfully dismiss French and conceal the true reason.

<u>An unlawful purpose or a lawful purpose by an unlawful means:</u> This element is met by the underlying torts and the malicious conduct. The purpose was to unlawfully and intentionally harm a disabled person, French, which the staff pursued through unlawful means, such as fraudulent misrepresentation and malicious misconduct.

<u>Resultant damage</u>: French suffered damages as a result of the conspiracy, including emotional distress, loss of transportation, and the harm from the program's malicious actions.

Addressing the "intracorporate immunity" doctrine

Under Virginia law, the "intracorporate immunity" doctrine generally holds that a corporation cannot conspire with its own staff acting within the scope of their employment. However, this

15

doctrine has exceptions that likely apply in this case:

Acts for personal motives:  Where the staff were acting out of personal malice or for independent motives, rather than solely to serve the program's interests, the doctrine would not apply.

Acts outside the scope of employment: Malicious and egregious misconduct like gaslighting, invading privacy, and committing fraud goes beyond the normal scope of a transportation staff's duties.

(The intra-corporate immunity doctrine would apply to a public ride service federally funded program, because it applies to both corporations and other government entities, even if it's not a government entity)

Statutory business conspiracy claim

While French's case involves a public service rather than a private business, Virginia law also provides a statutory cause of action for conspiracies that "willfully and maliciously injure another in his/her reputation, trade, business, or profession". The program, N V Rides staff maliciously injured French's reputation by spreading false information to the board. The statute allows for treble damages and attorney's fees.

Evidence for conspiracy claim

The various coordinated acts of the staff provide strong evidence of a conspiracy:

Tony's initial gaslighting and unauthorized speakerphone call.

The "person in charge" Selmetria's, hearing the unauthorized call and failing to intervene.

Jeff's later call, again using a speakerphone without consent, and Elena's participation in the discriminatory conversation.

The false notarized letter submitted to the board.

The consistent stonewalling and refusal to communicate after French was dismissed.

This pattern of behavior from multiple employees suggests they were working in concert to harm French, making a conspiracy claim a powerful tool for seeking redress and punitive damages.

16

*******************************

12-Retaliation;

The program, N V Rides escalating hostile actions towards French after the French complained to its partners forms the basis of a strong retaliation claim under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. Both federal statutes prohibit retaliation against individuals who exercise their rights, oppose discriminatory practices, or participate in investigations.

Here is an analysis of the retaliation claim.

Elements of a federal retaliation claim;

A claim for retaliation under the ADA or Section 504 requires a rider to demonstrate three elements:

Protected Activity:  French engaged in a protected activity.

Adverse Action:  The program, N V Rides took a materially adverse action against French.

Causal Connection:  A causal connection exists between the protected activity and the adverse action.

Application of elements to the case

1. Protected activity

Engaging in a "protected activity" under the ADA and Section 504 includes formally or informally opposing discrimination, complaining about discriminatory practices, or making a request for a reasonable accommodation. In this case, French's case letter to the program's partners, which likely described the initial wrongful dismissal and gaslighting, constitutes a protected activity.

2. Adverse action

An "adverse action" is one that would dissuade a reasonable person from making or supporting a charge of discrimination. The program, N V Rides actions after the French complained clearly meet this standard:

Malicious phone call: The call from Jeff and Elena, in which the French was again put on speakerphone without consent and verbally intimidated ("just move on"), is a prime example of

17

an adverse action.

Discriminatory insinuation: Elena's discriminatory insinuation that the disabled French "was not part of the population they serve" is a direct, adverse action that can have a chilling effect on French and others.

Stonewalling communication: The subsequent refusal by Emily and the program to engage further with French is another adverse action. This denied French's access to a fair process and made it difficult for her to resolve the issue

3. Causal connection

The "causal connection" is often established by showing "temporal proximity" between the protected activity and the adverse action. In this case:

The malicious phone call from Jeff occurred after French had mailed her case to the N V Ride program's partners.

The subsequent refusal of communication from Program came after the French pursued a complaint.

This close timing creates a strong inference that the program's adverse actions were a direct response to French's complaint. The program's use of a pretextual reason for dismissal (the false location) also strengthens the inference of a retaliatory motive, as does the staff's overall malicious misconduct.

Retaliation in federally funded programs

As a federally funded program, the ride service, N V Rides is explicitly prohibited from intimidating, threatening, coercing, or discriminating against any individual for the purpose of interfering with any right secured by Section 504 or Title II of the ADA. The behavior of the staff with French clearly falls under this prohibition.

Legal strategy implications

The retaliation claim is a powerful component of the overall legal case, which also includes ADA discrimination, state torts, and potential conspiracy claims. The EEOC's Right to Sue letter allows French to file a federal lawsuit, encompassing both the federal anti-retaliation claim and related state torts like intentional infliction of emotional distress, which is amplified by the stress of retaliation.

18

**Barb**

The program employee, Barb, who previously granted French permission to obtain prescriptions, is not immune from liability due to her silence. Her inaction is relevant to several of the rider's claims, especially those concerning negligent supervision, ADA violations, and retaliation

**Negligent supervision**

Barb's silence and inaction are evidence that the program, N V Rides is liable for negligent supervision.

Knowledge of French's disability and reliance: Barb was a point of contact for French and was aware of her disability and specific needs, as demonstrated by her granting permission for the prescription pickup. This establishes a baseline knowledge of the French's status and vulnerability.

Failure to intervene: As a staff person who previously interacted with and approved French's request, Barb had a relationship with French. Her failure to respond to French's subsequent requests for communication, especially after French had complained, demonstrates a failure of the program to properly manage and supervise its staff. This inaction, following the initial malicious acts by other staff, points to a systemic failure.

Condoning malicious conduct: Barb's silence in the face of French's documented complaints could be seen as condoning the malicious conduct of the other staff. Her inaction implies that the program's leadership was unwilling to address the abusive and discriminatory behavior.

**ADA violations**

Barb's silence can be framed as a denial of a reasonable accommodation and a form of retaliation, which violate the ADA.

Violation of the interactive process: The ADA requires public entities, like N V Rides, to engage in a good-faith interactive process with individuals like French, to address their concerns and find accommodations. Barb's refusal to respond to French's requests and her subsequent silence is a violation of this process and demonstrates the program's lack of good faith.

Retaliation:  French's complaint to the program's partners is a protected activity under the ADA. Barb's subsequent failure to respond to French's request for communication can be considered

an adverse action designed to discourage French from pursuing her rights

Intentional infliction of emotional distress (IIED)

Barb's silence adds to the cumulative effect of the program, N V Rides outrageous and intolerable conduct.

<u>Emotional distress:</u>  French's emotional distress is compounded by the feeling of being abandoned and ignored by the staff member with whom they had a prior positive relationship. This contributes to the overall hostile and intimidating environment created by the program.

<u>Pattern of malicious behavior:</u> Barb's silence is part of a larger pattern of malicious behavior by the program's staff,  including the gaslighting, unauthorized speakerphone calls, and stonewalling. This pattern demonstrates the N V Ride program's complete disregard for the French's well-being

Summary

The program, N V Rides staff, Barb, who previously had a positive interaction with French, had a duty to at least respond to French's requests, especially given the severity of French's complaints. Her silence, when combined with the other malicious acts of the program's staff, serves as powerful evidence of:

The N V Ride program's systemic failure to properly supervise and manage its employees.

The N V Ride program's malicious intent and bad faith in handling French's complaint.

The N V Ride program's engagement in retaliatory actions against French for complaining about illegal conduct.

The cumulative effect of the N V Ride program's malicious and abusive behavior, which strengthens French's claim for Intentional Infliction of Emotional Distress

Based on Virginia law, N V Rides could potentially be liable for punitive damages, even with Barb's silence. Barb's silence and inaction are not the sole basis for a punitive damages claim against the program, but they serve as powerful evidence of the program's malicious intent, bad faith, and systemic failures.

In Virginia, punitive damages are not favored and require clear and convincing evidence that the

defendant's actions showed "willful and wanton negligence" or malice. A plaintiff seeking punitive damages against an employer must generally prove that the employer either authorized, ratified, or participated in the wrongful acts.

Here is how Barb's silence and other factors could be used to hold the program liable for punitive damages:

When staff signs a notarized letter containing false information to dismiss a disabled person, French,  from a public program, it significantly strengthens the legal case against both the staff and the program. Barb's action was not a passive omission but a direct, malicious act of fraud

Program's liability

Barb's signature substantially increases the N V Ride program's liability, especially regarding punitive damages.

Ratification of Misconduct: By having a manager-level employee like Barb sign the false letter, the N V Rides program can be seen as having ratified and authorized the malicious and fraudulent acts of its other staff. This provides strong evidence for punitive damages.

Piercing Sovereign Immunity: As an act of malicious misconduct, Barb's actions help pierce the veil of sovereign immunity that may protect a government-run program. The N V Rides program is directly responsible for a fraudulent act that goes beyond the normal scope of employment.

Systemic Failure: Barb's signature on the false letter highlights the N V Ride  program's systemic failure to properly train, supervise, and manage its staff. It shows that malicious conduct was not just tolerated but actively endorsed by management.

Vicarious Liability: The N V Rides program remains vicariously liable for Barb's intentional torts, as her malicious actions were performed during her duties, and the N V Rides program is vicariously liable for the actions of its staff.

Summary

Barb's role as the signer of the notarized letter elevates the rider's case significantly. It turns a situation of staff misconduct into a documented conspiracy with management-level approval. This fact is powerful evidence for punitive damages and directly proves malicious intent, fraudulent misrepresentation, and other torts against both Barb and the N V Rides program.

The Baord liability as a whole

21

The board of directors are held liable in Virginia for breaching their fiduciary duties, especially for willful misconduct, and for participating in and ratifying the malicious actions that led to your wrongful dismissal

Breach of fiduciary duties

As directors of a Virginia non-profit, the board members owe three primary fiduciary duties to the organization and its beneficiaries:

Duty of Care: Requires directors to act with the care that an ordinarily prudent person in a similar position would use under similar circumstances. The board's failure to investigate or address the complaints against their staff, especially when presented with a notarized letter containing false information, likely constitutes a breach of this duty.

Duty of Obedience: Requires board members to ensure the organization adheres to all applicable laws and regulations, as well as its own mission and bylaws. By ratifying a discriminatory and retaliatory dismissal of French, based on false information, the board is failing to ensure the organization is operating legally and ethically, breaking this duty.

Duty of Loyalty: Requires directors to act in the best interest of the organization. Allowing staff and volunteers to engage in harmful, illegal, and malicious conduct and then ratifying that conduct does not serve the best interests of the organization.

Willful misconduct or gross negligence

Under Virginia law, the business judgment rule often protects directors from liability for honest mistakes. However, this protection does not extend to cases involving willful misconduct or knowing violations of the law. By approving a dismissal based on a notarized letter containing false information and ignoring French's attempts to communicate (through Barband others), the board engaged in willful misconduct.

Ratification of tortious conduct

The board's action of ratifying French's dismissal based on false information effectively approves the malicious conduct of the individual volunteers and staff. Even if the board members were not directly involved in the initial events, their decision makes the board itself a party to the wrongful dismissal of French, which is a state-level tort (intentional interference with a business expectancy).

The board's actions  have violated several Virginia laws:

22

Virginia's Rights of Persons with Disabilities Act (Code of Virginia § 51.5-44): Prohibits discrimination on the basis of disability in places of public accommodation. By wrongfully dismissing French from their free ride program, the board and the non-profit violated this law.

Tortious Interference with Business Expectancy: This state tort claim is against the board and the organization for intentionally and maliciously interfering with French's right to receive the services of the program, a right granted to French as a program participant. Their acceptance of false statements and ratification of the wrongful dismissal is evidence of their malicious intent.

Virginia's Defamation Law: By accepting a notarized letter filled with false statements as the basis for French's dismissal and for denying French service, the board became part of the defamation against French.

Proving breach of fiduciary duties: The board's failure to properly investigate, review the facts, and supervise their employees and volunteers led to a clear case of discrimination and retaliation.

Overcoming the business judgment rule: Their reliance on demonstrably false information, presented in a notarized letter, demonstrates that their decision was not made in "good faith" and was not "reasonably informed," thereby forfeiting the protection of the business judgment rule.

Focus on the malicious intent: The malicious and retaliatory intent of the individual volunteers can be imputed to the board once they have ratified the actions, opening them up to claims of willful misconduct.

The NV Rides Advisory Council consists of three key members: Jeff Dannick, Executive Director of the Pozez JCC; Amy Brinko, Associate Executive Director of the Pozez JCC; and Shane Rock, Chief Executive Officer of the Jewish Council for the Aging of Greater Washington.

NV Rides Advisory Council Members

Jeff Dannick (Executive Director, Pozez JCC)

Amy Brinko (Associate Executive Director, Pozez JCC)

Shane Rock (Chief Executive

Under Virginia and federal law, the Board of Directors is liable for several reasons, including its

23

fiduciary duties, gross negligence, and willful misconduct. The facts of your case provide a strong basis for arguing that the board's actions—or lack thereof—constitute such breaches

Federal laws

1. Title II of the ADA & Section 504 of the Rehabilitation Act

Liability for discrimination and retaliation: Public entities like this N V Rides program are prohibited from discriminating or retaliating against disabled individuals including French. The board, as the governing body, is ultimately responsible for ensuring compliance with these federal civil rights statutes.

Knowledge of misconduct:   French's complaint letter to the program's partners put the board on notice of the potential misconduct. Their subsequent failure to investigate, remediate the harm, or communicate with French can be seen as condoning the malicious behavior.

Ratification of misconduct: Selmetria 's creation of and Barb's act of signing a fraudulent notarized letter and submitting it to the board constitutes the board's ratification of the malicious conduct. The board's failure to investigate and correct this fraudulent act solidifies its liability.

Systemic failure: The board's failure to properly supervise staff and investigate misconduct creates a systemic failure within the program, which is a violation of the ADA.


2. False Claims Act (FCA)

Misuse of federal funding: The FCA makes it illegal for any person to use a false record to get a false claim paid by the federal government. Selmetria's creation of and Barb's signing and submission of a fraudulent notarized letter to the board, which receives federal funding, constitutes a violation.

Board's responsibility: The board is ultimately responsible for the program's financial and legal compliance. Its failure to investigate and correct this fraudulent activity makes it culpable for the misuse of federal funds.

Whistleblower protection: The board's approval of retaliatory harassment after French complained of misconduct is a violation of the FCA's whistleblower protection provisions.


Virginia state laws

24

1. Breach of fiduciary duty

In Virginia, nonprofit board members are fiduciaries with duties of care, loyalty, and obedience.

Duty of care: The board failed to exercise reasonable care in supervising employees, investigating misconduct, and responding to French's complaint.

Duty of loyalty: The board's failure to act in the program's and its clients' best interests by condoning staff malice constitutes a breach of its duty of loyalty.

Duty of obedience: The board's failure to ensure the program's compliance with federal and state law is a breach of its duty of obedience.


2. Gross negligence and willful misconduct

Virginia law generally limits the liability of nonprofit board members but makes exceptions for gross negligence or willful misconduct.

Gross negligence: The board's failure to investigate and correct fraudulent misconduct is gross negligence.

Willful misconduct: Barb's submission of a fraudulent notarized letter to the board constitutes willful misconduct, which eliminates liability protection


3. Civil conspiracy

The board's tacit approval and subsequent stonewalling, combined with the malicious actions of multiple staff members, is seen as a conspiracy to injure French.

4. Negligent supervision

The board's failure to properly supervise its staff members, leading to the malicious and fraudulent acts against French, is a classic example of negligent supervision.


6. Notarized false statement

The Virginia Code specifies that an employer of a notary can be liable for damages caused by the notary's official misconduct if the employer knew or should have known of the misconduct. Barb's signing of the fraudulent notarized letter, combined with the board's knowledge, makes

it liable.

In summary

The board is liable under several federal and state laws due to its fiduciary duties, gross negligence, willful misconduct, and ratification of the malicious and fraudulent actions of its staff members. French's evidence provides a strong basis for holding the board and its individual members accountable.

---

Applicable federal, state, and other laws for each claim, ALL...

Federal laws

1. Title II of the Americans with Disabilities Act (ADA)

Discrimination: Prohibits discrimination based on disability by public entities, which includes entities receiving federal funds like N V Rides. French's claims of intentional discrimination, inappropriate service, and less favorable treatment fall under this statute.

Retaliation: Prohibits retaliation against individuals including French, who complain about discrimination or otherwise exercise their rights under the ADA.

Privacy: Requires public entities, like N V Rides, to protect the confidentiality of disability-related information.

Wrongful dismissal: For federally funded public programs like N V Rides, wrongful termination based on disability is illegal under the ADA.

2. Section 504 of the Rehabilitation Act

Discrimination: Prohibits discrimination based on disability in any program or activity operated by recipients of federal funds. Like N V Rides.  French's claims of intentional discrimination, inappropriate service, and less favorable treatment fall under this statute.

Retaliation: Incorporates the anti-retaliation provision of Title VI of the Civil Rights Act, which prohibits recipients, like N V Rides, from intimidating, threatening, coercing, or discriminating against anyone who complains or assists in an investigation.

Privacy: Also protects the confidentiality of disability-related information for recipients of federal funds, like N V Rides.

Wrongful dismissal: For federally funded public programs, like N V Rides, wrongful termination

26

based on disability is illegal under Section 504.

### 3. False Claims Act (FCA)

<u>Misuse of federal funding</u>: The FCA makes it illegal for anyone to knowingly submit a false claim or use a false record to get a false claim paid by the federal government. The fraudulent notarized letter, used to conceal discrimination while the N V Rides program receives federal funds, constitutes a violation.

<u>Whistleblower protection</u>: The FCA provides protection for whistleblowers who expose fraud against the government. French's complaint to the program's partners can be seen as an act in furtherance of a qui tam action under the FCA

### Virginia state laws

### 1. Virginia Fraud Against Taxpayer Act (VFATA)

<u>Misuse of state funds</u>: The VFATA mirrors the federal FCA and prohibits presenting a false or fraudulent claim for payment or using a false record to get a false claim paid. This could apply if the N V Rides program also receives state funding.

<u>Whistleblower protection</u>: The VFATA also protects whistleblowers from retaliation.

### 2. Intentional Infliction of Emotional Distress (IIED)

<u>Common law tort</u>: Virginia recognizes the common law tort of IIED, which requires proving that the defendant's, N V RIdes intentional or reckless conduct was outrageous and intolerable and caused the French severe emotional distress

### 3. Fraudulent Misrepresentation

<u>Common law tort</u>: Virginia recognizes the common law tort of fraudulent misrepresentation, which requires proving that a false representation of a material fact was made with the intent to mislead, that French relied on it, and that she suffered damages as a result.

### 4. Civil Conspiracy

<u>Common law tort and business conspiracy statute</u>: Virginia recognizes the common law tort of

27

civil conspiracy, and the Virginia Business Conspiracy Act (§ 18.2-499) provides a civil cause of action for conspiracy to injure French's reputation, trade, business, or profession.

.

## 5. Negligent Supervision

Common law tort: While Virginia has a complex history with negligent supervision claims, a claim is possible in cases involving gross negligence, malicious and fraudulent conduct towards a vulnerable person like French, and management's involvement.

## 6. Privacy Violations (Unlawful Interception of Communications)

State statute: Virginia law provides a civil remedy for the unlawful interception of a communication, such as placing a phone call on speakerphone without French's consent.

## 7. Breach of Contract

Common law and state statutes: French's enrollment in the N V Rides program constitutes an implied-in-fact contract, and the program's malicious and fraudulent conduct constitutes a material breach.

## 8. Notarized False Statement

Criminal statute: While not a civil cause of action, a notarized false statement is a criminal offense in Virginia. This can be used as evidence of the N V Rides program's fraudulent and malicious intent.

## Other Considerations

### 1. Common Carrier Duty

Common law: As a provider of transportation services, N V Rides owes a heightened duty of care as a common carrier. The program's gross negligence and malicious misconduct constitute a breach of this duty.

### 2. Federal Regulations

<u>Department of Transportation (DOT):</u> The DOT has specific regulations for paratransit services under the ADA (49 C.F.R. Section 37), which govern eligibility and service provision. The program's failure to follow these regulations is a basis for French's claim

———————————————

Amended - Prayer for Relief    French cv N V Rides at al (original 1:25 cv 00989)

Prayer for Relief -Against the <u>Non-Profit Organization</u> (ADA and Section 504 Claims)

Declaratory Judgment: A declaration from the court stating that the defendant violated Title II or III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act by discriminating and retaliating against French.

Injunctive Relief:--

An order requiring the non-profit to implement or revise policies regarding disability discrimination, retaliation, and volunteer training.

1- Hire a compliance official to be on staff, to train, evaluate, etc. a permanent position, may have other duties

2-A full internal Financial audit.

3-Contact anyone who has been released from the program in the past 5 years to determine if it was done correctly, if not, offer them reinstatement, if wanted. It can be done by new compliance official

4-That the board and the current volunteers/defendants, will be replaced within a reasonable amount of time, not over 6 months, all defendants will be replaced as able to by the N V Rides program and their placement will be overseen by the complaince officer. Defendants will not train new recruits.

5-That anyone who is replacing them, will not know them, or have any contact with them prior, has not worked with them at N V Rides, clean slate.

5- Yes, revise policies per above statement

6-Any other action the court deems necessary to see that this program is saved and run correctly from now on. It is a vital program to the community. The founder had a vision, and it needs to come back to the original vision. A program that is for the community, providing this essential service for those who need it.

1

Compensatory Damages: An award for damages resulting from the discrimination and retaliation, including:

100,000.00 or per the Judge-Honorable William E. Fitzpatrick or the Court's Decree

Compensation for any out-of-pocket expenses incurred due to the wrongful dismissal.

1-paper, ink, ride fees, <u>will submit if French wins</u>, actual costs, not padded

405.00 court fee

paper/ink/suppleis

rides

Compensation for the severe emotional distress, humiliation, and mental anguish caused by the defendant's actions.

150,000.00 or per the Judge , The Honorable William E Fitzpatrick's / the Court's Decree

Punitive Damages: An award of punitive damages for the defendant's willful and malicious conduct, including its acceptance of false information to justify your dismissal.

50,000.00 or as the judge, or The Honorable William E Fitzpatrick's / the Court's Decree's

Attorney's Fees and Costs: An award to cover all reasonable attorney's fees and costs incurred in prosecuting the lawsuit, as permitted under the ADA.

2

French--Same as out of pocket since French is Pro se,

ride fees, paper, ink, other supplies needed, no padding, --will submit if French wins.

1-court fee- 405.00 for complaint

2-paper/ink/supplies

3-ride fees-

_____

Other Relief: Any other relief the Court deems just and proper.

Other-

French request that a restraining order be attached to all defendants in this case, French has seen their face, has seen their hearts and none of them had any problem harming her. Not one stood up and said , this is wrong. It was a struggle for French to come to terms on the amounts, as she is a compassionate person. However, she gave them multiple chances to change their stance. French did nothing to any one of these people. French does not trust them at all. The length they went to, to harm her. No mean comment, no mean behavior, no mean words, no mean actions against anyone one of them from French. French can not understand why they did it. It makes no sense to her. But for this reason, that French can not see why, that French did nothing to deserve this, that she gave them multiple chances, the law wins over her compassion.

1:25 cv 00989    French v N V Rides at al

Prayer for Relief Against the Individual Volunteers (Virginia State Tort Claims)

In federal court, state-law tort claims related to a public transportation program in Virginia are ruled upon according to Virginia's Tort Claims Act (VTCA), as interpreted and applied by federal judges. For a federal court to hear a state tort claim, it must exercise supplemental jurisdiction, meaning the tort claim is associated with a related federal claim, such as one alleging a violation of the Americans with Disabilities Act (ADA).

This section is filed in a Virginia Circuit Court against the individuals (Tony Wonkovich, Selemtria Quarles, Elena Alergant, Jeff Dannick, Emily Braley, Barbara Gatorian, and the Board (Advisory Council) of N V Rides members). It would demand:

1-Intentional Infliction of Emotional Distress (IIED): A monetary award for the severe emotional distress caused by the malicious and outrageous conduct of Tony Wonkovich  and Selemtria Quarles.

Selmetria Quarles-5000.00

Tony Wonkovich- 5000.00

_____

2-Defamation:

Compensatory damages for harm to your reputation caused by the false statements in the notarized letter and text message.

Selmetria Quarles- 5,000.00

Barbara Gatorian-5000.00

_____

3-Punitive damages to punish the individuals who knowingly made the false statements, as the act was malicious.

Selmetria Quarles-5000.00

Barbara Gatorian- 5000.00

1

―――――――――――――――

4-Invasion of Privacy: A monetary award for the invasion of your privacy caused by Tony Wonkovich and Jeff Dannick placing you on speakerphone without your consent during a confidential conversation.

Tony Wonkovich- 5000.00

Jeff Dannick- 5000.00

―――――――――――――――――

5-Intentional Interference with a Business Expectancy:

An award of damages for the malicious interference by Tony Wonkovich, Selemtria Quarles, and Barbara Gatorian that led to the termination of your service.

Selmetria-5000.00

Tony Wonkovich-5000.00

Barbara Gatorian-5000.00

―――――――――――――――

6-Punitive damages against the individuals for their malicious and willful conduct.

Jeff Dannick-5000.00

Tony Wonkovich-3750.00

Barbara Gatorian-3500.00

Selmetria Quarles-3750.00

Elena Alergant-4000.00

Emily Braley-3750.00

―――――――――――――――

7 Gross Negligence / Willful Misconduct (against individuals and board(Advisory Council):

Jeff Dannick-5000.00

Tony Wonkovich-3750.00

Barbara Gatorian-3500.00

Selmetria Quarles- 3750.00

Elena Alergant-4000.00

Emily Braley-3750.00

Board- 10,000.00

———————————————

8-An award of damages against the individuals whose grossly negligent and malicious conduct caused harm.

Jeff Dannick-5000.00

Tony Wonkovich-3750.00

Barbara Gatorian-3500.00

Selmetria Quarels-3750.00

Elena Alergant-4000.00

Emily Braley-3750.00

———————————————

9-Punitive damages for their reckless or willful disregard for your rights.

Jeff Dannick-5000.00

Elena Alergant-4000.00

Emily Braley-3750.00

Tony Wonkovich- 3750.00

Barbara Gatorian-3500.00

Selmetria Quarels-3750.00

———————————————

10-Breach of Fiduciary Duty (against the board):

3

50,000.00

_____

11-An award of damages for the board's gross negligence and willful misconduct in failing to
properly investigate and ratifying the discriminatory actions.

50,000.00

_____

Attorney's Fees and Costs: An award to cover all reasonable attorney's fees and costs
associated with the state tort claims.

.

00.00

_____

Other Relief: Any other relief the Court deems just and proper

1-Each defendant will resign within 6 months, as new recruits take over, but they will not do the
training of new recruits, unless absolutly necessary, lest the corruption be passed on.

2-Board members will be replaced within 6 months.

3-The compliance official will be hired immediatly, and oversee the training of new
replacements.

As The Judge, The Honroable William E. Fitzpatrick and the Court Decree

_____

Potential False Claims Act (FCA) Relief (Qui Tam)

If you were to file a qui tam action, the prayer for relief would be on behalf of the United States
government and would typically demand:

Treble Damages: Three times the amount of any damages the federal government sustained

4

due to the fraud.

Civil Penalties: Statutory civil penalties for each false claim submitted.

Relator's Share: An award to French, the relator, of a percentage of the government's recovery.

Attorney's Fees and Costs: An award to French for all costs and attorney's fees incurred in the qui tam action.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  10/14/2025

Signature of Plaintiff    Jeanette French
Printed Name of Plaintiff  Jeanette French

### B.    For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing

(1) _Amended Complaint_ Original (1:25- 00989) _____,was mailed

this (2) _____ Day of (3) _____, to (4) _Eastern District Court of Alex. Va._ the Honorable William E. Fitzpatrick _____ at (5) _____

Sending to : Opposing Counsel .

David D. Hudgins
2331 Mill Rd.
Suite 100
Alex. Va. 22314

571-215-3719

_Jeanette French_
(Your Signature)
9001 Giltman Ct.
Springfield Va 22153
widdle9876@gmail.com

**Instructions**

YOU must send a copy of every motion, pleading or document to the defendant(s) or counsel for defendant(s). If you do not send a copy to the defendant(s) or counsel for the defendant(s), the court will not be able to consider your document.

You must prepare and submit one certificate of service for EACH motion, pleading, or document you wish to have considered by the court.

Complete each blank as directed:

(1) Describe the document you are submitting to the court and sending to the defendant(s). (Remember: you should attach a Certificate of Service to each motion, pleading, or document you wish to have considered by the court.)

(2) Day of the month that you give the document to officials for mailing to the defendant(s) or counsel for the defendants(s).

(3) Month and year.

(4) Name of person(s) to whom you are sending a copy of the document. If you send it directly to the defendant(s), list each defendant to whom you send a copy. If you send it to counsel for the defendant(s), list only the name(s) of counsel.

(5) Address(es) that copy is being mailed to.

**NOTE:** YOU MUST SIGN THIS FORM. The court will not accept this form without an original signature.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
_Alexandria_ **DIVISION**

_Jeanette French_
**Plaintiff(s),**

v.

_NV Rides et-al._
**Defendant(s),**

_Amended Complaint_
**Civil Action Number:** _____

## LOCAL RULE 83.1 (N) CERTIFICATION

**I declare under penalty of perjury that:**    _Amended Complaint_

**No attorney has prepared or assisted in the preparation of** _____.
                                                              **(Title of Document)**

_Jeanette French_
Name of *Pro Se* Party (Print or Type)

_Jeanette French_
Signature of *Pro Se* Party

Executed on: _10/14/2025_ (Date)

                              **OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.
                                                                       **(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____(Date)