In The United States District Court

For the Eastern District of Virginia-- ( Alexandria Division)

Pro Se -Jeanette French, 571-215-3719, widdle9876@gmail.com

9001 Giltinan Court, Springfield, Va. 22153

In the United States District Court for the [Eastern/Western] District of Virginia

42 U S C 1983 Civil Rights [Employment Discrimination]

Plaintiff- Jeanette French vs

N V Rides at al, Defendants, and The Board

Case 1:25 cv 00989, Amended Complaint

Plaintiff is submitting a:

"Motion for Leave to File a Surreply" with this Exhibit - "Proposed Sur-reply"

If upon granting permission by the court, plaintiff French is responding to defendant's

" Reply to Plaintiff's Opposition and Response to Motion to Strike Amended Complaint".

Plaintiff French is putting forth this response with the courts permission :

By Plaintiff French-- "Motion for Leave to File a Surreply" attached Exhibit- Proposed Sur-reply

to:

"Respond to Defendants-- -

" Reply to Plaintiff's Opposition and Response to Motion to Strike Amended Complaint" "

In the beginning of the preceding's, French put forth a Motion asking the court to allow her the ability to respond to any counter-claims. It was put forth to soon, but she is now asking for that permission.

1

Where we are now:

Plaintiff, French, files an Amended complaint within the 21-day period, it then supersedes the original complaint, and the previous Motion to Dismiss is rendered moot. The defendant's new obligation is to respond to the amended complaint, and their motion to strike is a response to the amended pleading itself. The plaintiff, French, has already responded to the Motion to Strike, and now the defendant is filing a reply to that opposition.

Response to the amended complaint: The defendant must respond to the new, amended complaint within a new timeframe, as if it were the initial complaint. The specific time to respond to an amended pleading is typically 14 days, though this can vary based on local rules or court orders.

(In the U.S. District Court for the Eastern District of Virginia, the timeframe to respond to an amended complaint is typically 14 days after the amended complaint is served, or the time remaining on the original response deadline, whichever is longer. However, the court can order a different timeframe)

Motion to strike: The defendant's motion to strike the amended complaint is a response to the new pleading, not a continuation of their response to the original.

Plaintiff, French's response to the motion: French has already filed an opposition to the motion to strike, which is a standard part of the legal process.

Defendant's reply: The defendant's final step in this particular sequence is to file a reply to the plaintiff's opposition, a common procedure following the plaintiff's response. With the court's approval (sur-reply) if French has this information correct.

So this is French's response if the court allows it.

*See attached The Exhibit Proposed Sur-reply )

In the defendant's Reply:

French stands by her right to file an Amended complaint that was filed within the 21 day time frame for the Motion to Dismiss, and that it should stand.

If the plaintiff , French, is within the 21-day window to amend the complaint as a matter of course (e.g., within 21 days of serving the original complaint or within 21 days of a motion to dismiss being filed), they can file the actual amended complaint directly without needing court permission or a motion. The 21-day period is the timeframe for the actual filing of the amended complaint in this specific scenario.

The idea that the actual complaint is fine as long as it is filed within 21 days is only true if you

2

are within the initial "matter of course" amendment period. French was.

(Once a motion for leave to amend is required, the actual proposed complaint usually needs to be part of that initial motion filing, or <u>filed shortly after the court grants the motion</u> within the court's specified timeframe (which can be 21 days in some instances))

French filed the completed Amended Complaint within a short time of the intention to file the Amended complaint and it was filed with the 21 days time frame. French went explicitly against her doctors very clear letter, to not do this per her health situation, but she did it anyway, so as not to miss the 21 day deadline. Many of her days were spent working on the original Motion to Dismiss, and that only left her a short time to do the Amended complaint when she realized that is what was needed to be done. Even against her doctors orders and she spent day and night, literally, working on this Amended Complaint to meet the deadline and she suffered badly from ignoring her doctors explicit instructions not to do so. Due to this she relapsed back into the sterile peritonitis, and she realizes this is not anyone's issue except hers, but it shows that this was all done in good faith and nothing was done to slow down, or alter the court proceedings. French did everything in her ability to file within the correct time frame.

Actual Filing vs. Intent: The relevant action is the actual filing and service of the amended complaint, not the "intent to file." The "intent to file" document itself has no formal legal standing and is essentially a courtesy or a notice of future action. The crucial factor is that the actual amended complaint was filed within the 21-day window allowed by the rules.

See A--Attached Doctors letter, and two Cat scans showing bowel paralysis, lasting for over 3 weeks.

The defendant speaks of other situations where a plaintiff would need permission to file an Amended complaint, but since she filed within the 21 day time frame, the courts permission was not needed and the intent to file was that, telling the court and the defendant that she would be filing the Amended complaint, and that was done.

If French made any errors as a Pro Se in her filings, she asks the judge to please advise her and allow her to take corrective actions if any are needed. French believes she made the deadlines and she is correct in her actions, but she is not a lawyer. The attached paperwork from her Hosp. trips, her doctors letter stating not to do this, and her on going health issues. Her issue with deadlines from the post concussive syndrome, are not meant for sympathy. They are facts meant to show that she did all of her filings, work in good faith and did her best to file everything properly. Doing so, and disregarding her doctors instructions has been seriously detrimental to her health.

The statements that French made in the Opposition to the Striking of the Amended Complaint still stand. There is no valid reason to Strike French's Amended Complaint.

All of the claims , as anyone reading the Amended complaint will see. It's better organized, with better information. The claims are stated more clearly with organized exhibits, and the laws they broke are clearly stated as well as which laws they broke, be it Federal, state, Torts. The issues of plausibility, causation, establishing causal links, the adverse events, also with Causes of Actions and the But For Causations. A better more accurate timeline, that is numbered and more organized. The Board, The N V Rides Advisory Council has been added in this Amended complaint, since the Board was a important player in this. The law's effects on the Program and the individual defendants seperatly. The Amended complaint has in many different ways been improved, and its intentions are made much clearer.

That the defendant is focusing on time lines when he should be focusing on the legal aspects of the Amended complaint, feels like delays and distractions to French. Wasting the courts time and resources, and adding more stress and pressure to French, like his improper email.

Since you referenced it-

The email sent to me was improper, no matter how you look at it, no matter how many nice words were included. Demanding a deadline by the next day was a threat to me and I stand by all I said in the original reporting of this email. I believe anyone reading it can see the motive behind it, and I do not need to point those out again. Coming from a lawyer, with a law degree, the intent was obvious. Since you reference it, I respond to that reference. This email is now for the judge to decide what to do with it. The email was improper and I outlined how and why it was improper. And that when French tried to send an additional response, this email was then blocked, blocking any further ability for any further communication, and a barrier to any further communications. If it had not been improper, why was it then blocked ?

When French filed for an extension of time, she did so in good faith, and would have liked for that to happen due to her ongoing health issues, but because of the courts busy schedule, it was impossible to know the court's response to the extension of time, adding in French's lack of experience with this type of preceding, therefore French went back to the original 21 day time frame as her guide even though it caused her sigificant harm.

French filed the Amended complaint with the court on Oct. 14 th, within the 21 day time frame. There are no changes in the complaint that were outside of what was allowed. The original claims are still there, French is allowed to add other defendants, and all is in order. The deficiencies that Opposing council brought up in the Motion to Dismiss were corrected to the

best of French's abilities, and time alloted, which was allowed and was the purpose of amending the complaint. To fix any deficiencies , to correct any issues with it. For instance:

[[[[ A plaintiff is generally allowed to fix a wide range of issues in an amended complaint, provided the amendments are made within the procedural rules (such as Federal Rule of Civil Procedure 15, or equivalent state rules). These changes can include:

Correcting Errors: Fixing mistakes in facts, names of parties (including a misnomer of a defendant), dates, or locations.

Adding New Claims: Including additional legal claims or theories of recovery that may have been overlooked or discovered later, often if they arise from the same conduct, transaction, or occurrence as the original claims.

Adding or Removing Parties: Adding new plaintiffs or defendants to the lawsuit, or dismissing existing ones.

Clarifying Inadequate Claims: Providing more detailed facts or legal arguments to clear up claims that were initially unclear or failed to meet pleading standards (e.g., in response to a motion to dismiss).

Updating Requests for Relief: Modifying the requested damages or types of relief sought.

Addressing Post-Filing Events (Supplemental Pleadings): While technically a "supplemental pleading" rather than an amended one, new events or transactions that occur after the original filing can be added with court permission. ]]]]

French did all of this per the guidelines of Amending a complaint.

The original motion to dismiss is now moot, the defendant can refile another motion to dismiss on the Amended complaint.

The Supplement that was filed to the Amended complaint on the 22 of Oct, was letting the court know that part of the set of documents had been picked back up by French by mistake at the clerks desk, and both supplements had already been sent and included in the copies of the Amended complaint, already sent to the opposing council and the board. It was just giving the copy to the court that she mistakenly picked back up. I am sorry if this was confusing.

Your statement saying that there was no substantial changes to the Amended complaint is false. That is was untimely is false, and that it was filed without the court permission, is false. Permission, if I am correct, was not needed to file a first Amended complaint within 21 days of a defendants filing of a Motion to Dismiss. And that Motion to Dismiss is now moot. Above I list many substantial changes made in the Amended complaint. In fact they were so substantial that they were brought up in the Motion to Dismiss, and I do not think that if they were not

substantial, they would not have been brought to French's attention.

It is impossible to strike the Oct 22 supplement doctor document , a copy that was picked up by accident from the clerks desk, since it had already been sent to opposing council and the board in the copies of the Amended complaint, per the note on their copy that said
"You already have this" on the copy sent to them, ...and with the Amended complaint filed, the previous Motion to Dismiss is moot and can not be used here for anything.

The Amended complaint fixed the issues that you raised in the Motion to Dismiss, but now you are stating that they are futile. I used the Amended complaint, again, to fix the issues that you raised in the Original Motion to Dismiss, even though it is now moot, the issues you raised were relavant, and saying they are now futile does not make them so. So to go over again what was fixed in the Amended complaint were the same as what was listed above:

[[[[ A plaintiff is generally allowed to fix a wide range of issues in an amended complaint, provided the amendments are made within the procedural rules (such as Federal Rule of Civil Procedure 15, or equivalent state rules). These changes can include:

That the Original complaint filed by French had many deficiencies in it and many were corrected.

Correcting Errors: Fixing mistakes in facts, names of parties (including a misnomer of a defendant), dates, or locations.---- (( French fixed many errors since she wrote this complaint in a 3 week time period when she realized that not one lawyer was willing to help her since the amount of money involved would not be enough for their time...so she had to do this herself or not at all. Hence for the many mistakes that were made in the Amended complaint, this gave her a chance to fix many of these as well as those that the opposing council raised as well.....

Adding New Claims: Including additional legal claims or theories of recovery that may have been overlooked or discovered later, often if they arise from the same conduct, transaction, or occurrence as the original claims. ---(( French was able to add an additional claim(s), including conspiracy and to add an additional defendant, The Baord, and also to state more clearly the claim details, specific laws broken, making these claims more properly pled.

There were many changes, but all were changes that were allowed. It is confusing that the changes she made were the ones that opposing council said needed to be made, but is now calling them futile.

Adding or Removing Parties: Adding new plaintiffs or defendants to the lawsuit, or dismissing existing ones. --(( French -- Many more details were included in the Amended complaint, and French tried to cover all that might be needed rather then leave anything out. She is sorry if it is longer then it should be, but without a law degree she needs to know that she has it covered, and without having any way to correct it if it is wrong. A new party was added, that should have

6

been added from the beginning.

Clarifying Inadequate Claims: Providing more detailed facts or legal arguments to clear up claims that were initially unclear or failed to meet pleading standards (e.g., in response to a motion to dismiss). --(( French- provided more information on the claims- showed their causal inks and how they all cascaded down for the main adverse event. Showing which laws they broke, which laws they were under, and stating claims in a more detailed presentation and stating nesessary elements for each claim.

--((--French needed to tidy up and clarify a couple claims like the Negligent Supervision one, others that should be under different laws, and also to make the claims more clearly stated, more organized legal arguments and laws. Also to make and present a better "Prayer for Relief " which was not in the original complaint.

Updating Requests for Relief: Modifying the requested damages or types of relief sought.

---(( French--spent a good deal of time, organizing the Prayer for Relief and that it was a difficult document to decide on. Laying it out this way gave more details. Seperating the Program and the Defendants, and The Board. Making requested relief more precise and legally sound.

Addressing Post-Filing Events (Supplemental Pleadings): While technically a "supplemental pleading" rather than an amended one, new events or transactions that occur after the original filing can be added with court permission. ]]]]


And that the Amended complaint-- puts forth multiple stated claims upon which relief can be granted, and that French has 12 strong viable claims to bring actions against N V Rides, Defendants and the Board. French has definitive proof to back up her claims.

Per the Plaintiff  French's filing of the Amended complaint within the 21 day deadline after the Motion to Dismiss was filed, that the Amended complaint should stand and is rightfully filed per the court guidelines. Please refer to the previous response to the original Motion to strike and French's responses that she feels that she did and obeyed the courts guildeines for the time frame to file the Amended complaint. That this Amended complaint was written by the standards allowed for an Amended complaint, and that the supplements she filed were adding into the Amended Complaint documents for her doctors, which she saw on Oct 16 and Oct 17, the earliest appt. she was able to get, for the documents that the opposing council had requested on her disability status. That even without them, her status as being disabled is still in good standing per the " regarded as disabled" standard. (Prong)

Even without the disability paperwork, French was still regarded as having a disability,

therefore discrimination was done:

A federally funded ride program wrongfully dismissed a disabled person, French, it was meant to serve, primarily involves violations of the Americans with Disabilities Act (ADA) Title II and Section 504 of the Rehabilitation Act of 1973.

Applicable Laws and Legal Concepts

Section 504 of the Rehabilitation Act: This law prohibits discrimination on the basis of disability in any program or activity that receives federal financial assistance. Since the ride program receives federal funding, it is bound by this law.

ADA Title II: This law prohibits discrimination by state and local government entities, regardless of whether they receive federal funds. This would apply to most publicly funded ride programs (often called paratransit services).

Potential "Prongs" in a Discrimination Case

A person challenging their dismissal under these laws would need to satisfy specific legal elements, or "prongs," to establish a prima facie case of discrimination:

The individual has a disability: The ADA defines a disability using a three-pronged test:

A physical or mental impairment that substantially limits one or more major life activities (the "actual disability" prong).

A record of such an impairment (the "record of" prong).--**French has such a record, her SS disabilty paperwork, and other medical records to support her multiple diagnosis.

Being regarded as having such an impairment (the "regarded as" prong). ** French was regarded as having a disability by many of the people at the N V rides program as she spoke freely to them about her disabiities that they had to to know about to see if she met the guidelines of the N V RIdes program.

The individual would need to demonstrate they meet one of these definitions.

The individual, French, is "otherwise qualified": French must show she met the essential eligibility requirements for the service, with or without reasonable modifications. ** (( French met the eligibility requirements of the N V rides program

The individual was subjected to discrimination/wrongfully dismissed: French must demonstrate she was excluded from the program, denied benefits, or otherwise treated differently solely because of her disability. *** (( French was denied services by the program, and a false reason was given for her dismissal...

The program receives federal financial assistance (for Section 504 claims): – **((This is a given, yes, they do

Legal Implications of Wrongful Dismissal

French, the disabled rider, was wrongfully dismissed, the program faces significant legal consequences:

Injunctive Relief: A court could order the program to reinstate the individual into the service and cease discriminatory practices. ( Not happening now- Ever)

Monetary Damages: French can sue for damages, including attorney fees, to compensate for the harm caused by the discrimination.

Federal Enforcement Action: The federal agencies that provide the funding (such as the Department of Transportation or Department of Health and Human Services) can investigate the complaint and potentially withhold funding or take other enforcement actions.

**So whether you allow the supplement paperwork or not, the disability discrimination still stands. French is asking the Court's permission to allow the supplemental paperwork she submitted. She did not think there was a deadline issue since the Amended complaint had already been filed and this set of documents had already been sent to the defendants opposing council and the Board.  If this needs to be set up as a formal request to the court, please advice, as I am not sure of that answer. Thank you.

That French's Amended complaint  cures previous deficiencies and causes no undue prejudice to the opposing party.

Federal Rule of Civil Procedure 15(a) (and most state equivalents) mandates that leave to amend "shall be freely given when justice so requires." Courts prefer to decide cases on their merits, rather than on technical pleading errors. That for the defendant should be focusing on the merits of the Amended complaint rather then technical errors.

That French acted against her own doctors instructions to get the Amended complaint in on

9

time, causing detrimental harm to her health by doing so. Which she is still struggling with the relapsing into the acute phase, the added stress having physical / mental effects, lack of rest / sleep from a higher level of anxiety.

The primary purpose of an amendment in this context is to address the specific issues raised in the the motion to dismiss. By fixing those deficiencies, French has ensured the case can proceed on a proper legal and factual foundation, which serves the efficient administration of justice.

Absence of Undue Prejudice: The other party must demonstrate that they would suffer undue prejudice if the amendment is allowed. Arguments against prejudice include:

The opposing party was already on notice of the general facts.

The new allegations are based on facts already known to the defendants or within their possession.

The amended complaint is considered "futile" only if the amended complaint would still fail to state a claim upon which relief could be granted as a matter of law, or if it would be barred by something like the statute of limitations. By successfully fixing the issues and adding a valid claim(s), this directly undermines the argument of futility. The new claim(s) / facts are now properly alleged, making them legally sufficient to withstand a motion to dismiss

The new defendants and claim(s) added, the "relation back" doctrine can apply since they involve the same core facts and circumstances as the original complaint, especially since the new defendants knew they might be involved in the suit .

French acted promptly to amend after the deficiencies were identified, she argues there was no undue delay or "bad faith or dilatory motive" on her part, which are common reasons courts deny leave to amend.

French has a strong position because she has used the amendment process to correct the record and facilitate a decision on the merits, which aligns with the spirit of civil procedure rules.

French requests allowing her Amended complaint to stand, and is "Just and Fair ".

Sincerly, Jeanette French, Pro Se

9001 Giltinan Court

Springfiled, Va. 22153

widdle9876@gmail.com

**Received by French on Oct.31 st, and it says in the electroic email (3 days ago)**

**But French is only seeing this on Oct 31 st, Friday evening. per the clerks emails.**

**Jeanette French respectfully asks the court to let her know what actions need to be taken after this has been filed, she is unsure and the clerks are not able to tell her this information.  thanks**

Privia - BURK - Burke Family Practice • 9409B Old Burke Lake Rd, BURKE VA 22015-3127

FRENCH, Jeanette (id #[redacted], dob: [redacted])



**Burke Family Practice**
9409B Old Burke Lake Rd
BURKE, VA 22015-3127
Phone: (703) 978-4200, Fax: (703) 503-8263

Date: 09/08/2025

RE: Jeanette French, DOB: [redacted], PT ID #[redacted]

To Whom it May Concern,

This letter is to certify that Ms. Jeanette French has multiple chronic and severe medical diagnoses, persistent and functionally debilitating, currently flaring, keeping her homebound and preventing her from being able to attend to any legal matters or respond to counterclaims at this time. Please accordingly allow her extensions on these matters, she requests 15 additional days due to medical need.

Sincerely,

Electronically Signed by: LINDSAY KILLICK, NP

09/08/2025 11:51 AM



Why this happens with FMF

Familial Mediterranean Fever is an inflammatory disease that can lead to gastrointestinal problems, including:

Inflammatory attacks (peritonitis): About 95% of FMF patients experience episodes of abdominal pain caused by inflammation of the peritoneum (the lining of the abdomen). This inflammation can slow or temporarily paralyze bowel movements, a condition known as paralytic or adynamic ileus.

Intestinal pseudo-obstruction: In a paralytic ileus, muscle or nerve problems cause the intestines' wave-like contractions (peristalsis) to stop, mimicking a physical blockage when none is present.

For someone with familial Mediterranean fever (FMF), inflammation around the abdomen, including the mesentery, is a common and characteristic feature known as peritonitis or serositis. During an FMF attack, the mesentery—the tissue that connects the intestines to the abdominal wall—can swell and cause severe abdominal pain ✓

This mesenteric inflammation, known as peritonitis, is a hallmark symptom of FMF attacks. In rare cases, chronic inflammation can lead to complications such as mesenteric panniculitis or vasculitis.

Fecal impaction: When the bowels become paralyzed, food and waste are no longer moved through the digestive tract. The retained stool can become dry and hard, leading to a severe buildup known as fecal impaction. *(paralytic ileus)*

Symptoms of a paralyzed bowel:

If you or someone you know has FMF and is experiencing severe abdominal issues, be on the lookout for symptoms of a paralytic ileus, which include:

Severe constipation or inability to pass gas

Abdominal distention (swelling) and bloating

Abdominal pain and cramping

Nausea and vomiting

Loss of appetite

1

rest. Fluids and electrolytes may be administered through an IV.

Manual disimpaction: A doctor may use a gloved finger to manually break up and remove the stool in the rectum.

Enemas and bowel irrigation: Enemas use fluid to soften the stool and stimulate a bowel movement. Water irrigation can also be used to flush out the area.

Oral or nasogastric solutions: In some cases, a polyethylene glycol solution may be given orally or through a tube inserted into the stomach to help clear the colon.

Surgery: If complications like a perforation are suspected, surgery may be necessary.

Medication management: In less severe cases, a doctor might prescribe stimulant or osmotic laxatives to restart bowel function.

Warning: Do not attempt to self-treat

Given the complexity and potential danger of a paralyzed bowel in the context of FMF, attempting to self-treat a trapped stool is extremely risky. Laxatives and other home remedies for simple constipation are not designed for this type of paralysis and could cause further complications.

2

~~~~~~~~~~, "trapped poop in fmf paralyzed bowel" refers to a severe and potentially serious condition where a person with Familial Mediterranean Fever (FMF) develops a paralytic ileus, leading to fecal impaction.

This situation requires immediate medical attention, especially since the abdominal symptoms of FMF can be very similar to a bowel obstruction. A paralyzed bowel is not a condition that can be safely or effectively treated at home.

Why this happens with FMF

Familial Mediterranean Fever is an inflammatory disease that can lead to gastrointestinal problems, including:

Inflammatory attacks (peritonitis): About 95% of FMF patients experience episodes of abdominal pain caused by inflammation of the peritoneum (the lining of the abdomen). This inflammation can slow or temporarily paralyze bowel movements, a condition known as paralytic or adynamic ileus.

Intestinal pseudo-obstruction: In a paralytic ileus, muscle or nerve problems cause the intestines' wave-like contractions (peristalsis) to stop, mimicking a physical blockage when none is present.

Fecal impaction: When the bowels become paralyzed, food and waste are no longer moved through the digestive tract. The retained stool can become dry and hard, leading to a severe buildup known as fecal impaction.

Symptoms of a paralyzed bowel

If you or someone you know has FMF and is experiencing severe abdominal issues, be on the lookout for symptoms of a paralytic ileus, which include:

Severe constipation or inability to pass gas

Abdominal distention (swelling) and bloating

Abdominal pain and cramping

Nausea and vomiting

Loss of appetite

What a doctor will do

A healthcare provider will need to confirm the diagnosis and treat the impaction safely.

In-hospital treatment: For severe cases, a hospital stay may be necessary to allow the bowels to

1

## Imaging Results (continued)

HISTORY: Intermittent abdominal pain, nausea, distention.

COMPARISON: 8/17/2025.

TECHNIQUE: CT abdomen and pelvis WITH intravenous contrast. The following dose reduction techniques were utilized: Automated exposure control and/or adjustment of the mA and/or kV according to patient size, and the use of iterative reconstruction technique.

CONTRAST: iodixanol (VISIPAQUE) 320 MG/ML injection 100 mL.

FINDINGS:

LINES/TUBES: None.

LOWER THORAX: Unremarkable.

LIVER/BILIARY TREE: Mild intrahepatic biliary dilatation status post cholecystectomy. Gallbladder is surgically absent. Common bile duct is dilated measuring up to 1 cm status post cholecystectomy which can be normal.
SPLEEN: No splenomegaly.
PANCREAS: No pancreatic mass or duct dilatation.

KIDNEYS/URETERS: No hydronephrosis, stones or solid mass lesions.
ADRENALS: No adrenal mass.
PELVIC ORGANS/BLADDER: Urinary bladder is distended with urine. Uterus is present.

PERITONEUM/RETROPERITONEUM: No free air or fluid. Unchanged mild haziness of the central mesenteric fat.
LYMPH NODES: No lymphadenopathy.
VESSELS: No aortic aneurysm. Scattered atheromatous calcified plaque of the aorta.

GI TRACT: Stomach is incompletely distended. No bowel obstruction. Duodenal diverticulum is noted. Appendix appears within normal limits. Moderate amount of stool in the colon. — *paralyzed Bowel — 12 days prior* [handwritten annotation]

BONES AND SOFT TISSUES: Small fat-containing umbilical hernia. No acute osseous abnormality. Degenerative changes of the visualized spine.

### Chest AP Portable (Final result)

Final result by Ho, Stephen V, MD (08/29/25 04:00:11)

Result time 08/29/25 04:00:11

Impression:

No acute cardiopulmonary abnormality.

Stephen Ho, MD
8/29/2025 4:00 AM
Narrative:

## Imaging Results (continued)

Narrative:
HISTORY: Generalized tenderness, guarding and distention.

COMPARISON: None available.

TECHNIQUE: CT of the abdomen and pelvis performed with intravenous contrast. The following dose reduction techniques were utilized: automated exposure control and/or adjustment of the mA and/or KV according to patient size, and the use of an iterative reconstruction technique.

CONTRAST: iohexol (OMNIPAQUE) 350 MG/ML injection 100 mL

FINDINGS:
The common bile duct measures 12 mm. A small duodenal diverticulum is noted near the region of the head of the pancreas. Atherosclerotic calcific aeration of the aorta is noted. The patient is status post cholecystectomy. Mild intrahepatic biliary ductal dilatation is noted. The spleen, adrenals, kidneys, and pancreas are unremarkable appearing. A moderate amount of stool is noted within the patient's colon. A normal-appearing appendix identified. The uterus is present. No adnexal masses are seen. Anterolateral osteophytes are noted within the spine. A small fat-containing umbilical hernia is present. Mild haziness of the central mesenteric fat is noted, a nonspecific finding which can be seen in setting of mesenteric panniculitis.

### US Venous Dopp Right Lower Extrem (Final result)
Final result by Overdeck, Daniel L, MD (08/17/25 13:11:31)

Result time 08/17/25 13:11:31

Impression:

No sonographic evidence for right lower extremity deep venous thrombosis.

Daniel Overdeck, MD
8/17/2025 1:11 PM
Narrative:

---

Handwritten annotations:
- Sev. types of white Blood cells
- Need to evaluate cause
- paralyzed Bowel, 12 days prior
- Allergy - w/ inflam + infect components or immune dysregulation = multiple white Blood cells
- detailed Allergy or infection markers
- Chronic Inflam
- Infect
- Auto immune
- Blood disorders (cancer, leukemia)
- Baso: Allergic - inflamm, thyroid parasitic
- ~~slightly low Ab Baso~~
- ~~elev Baso - low Ab baso~~ plus ~~symptoms - B High~~
- Eosin = (parasitic) infect + allergic
- Asthma (yes)
- skin cond (yes)

Jeanette T. French • Printed at 8/17/2025 2:48 PM

Page 15 of 18  Epic