IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| JEANETTE FRENCH | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:25-cv-989-PTG/WEF |
| | ) |
| NV RIDES, et al. | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Tony Wonkovich, Selmetria Quarles and Barbara Gatorian ("Defendants"), by counsel, file their Memorandum in Support of their Motion to Dismiss the Amended Complaint of plaintiff Jeanette French ("French"), and state as follows:

I.      **Introduction**

Defendants are all named in this action as a result their work on behalf of the Shepherd's Center of Annandale/Springfield ("SCAS"), a non-profit organization serving seniors age 50 and older in the Annandale and Springfield areas of Northern Virginia.[1] Funding is obtained from sponsoring congregations, business and civic organizations, donations from individuals and fundraising events. *Id.* Also known as "Seniors Serving Seniors," SCAS provides programs for transportation, socialization and learning for senior adults. Its programs are free, and the majority of the staff are volunteers.[2]

---

[1] https://shepherdscenter-annandale.org/

[2] Defendant Tony Wonkovich is a volunteer who arranged for transportation. French confirms this in Exhibit F to the Amended Complaint, stating "Tony is a long time volunteer of the program." (ECF 26-6). Defendant Barbara

SCAS has guidelines regarding which days rides are available and the purpose of the rides, such as medical appointments, grocery shopping or pharmacy. Recently, the guidelines were amended to limit rides to certain geographic locations, in this case the Annandale/Springfield area.[3]

The gist of the Amended Complaint is essentially that French alleges she was "dismissed" from a free ride service program for no valid reason. As shown below, French has not stated a claim against Defendants, and this case should be dismissed.

## II.    The Amended Complaint

While it is difficult to decipher what specific actions of Defendants are central to her disjointed Amended Complaint, French has set forth a myriad of "wrongs" over what essentially was a canceled free ride to a pharmacy located far from her home and outside the area that SCAS's services are provided. French is a senior citizen, allegedly disabled,[4] who used the free transportation services offered by SCAS and co-defendant NV Rides (Am. Compl., ECF 26). She alleges that she was "dismissed" from receiving further services for "no valid reason" sometime in August, 2025 [sic]. *Id*. French was actually informed of SCAS's change in its ride policy in emails from Tony Wonkovich on July 17 and July 19, 2024, *a month prior* to the call described below that forms the purported basis for this lawsuit (ECF 26-4).[5]

---

Gatorian is also a volunteer, who is currently SCAS's Board Chair; and defendant Selmetia Quarles was formerly the Office Director for SCAS.

[3] The guidelines, referenced in the Amended Complaint and applicable to all users of the Transportation Program, make clear that rides were limited to certain areas, which did not include Manassas (see Exhibit A, attached hereto).

[4] Plaintiff refers to herself as disabled throughout the Amended Complaint, but never describes the nature of her alleged disability, and never disclosed her disability to these defendants.

[5] The July 17 email states '[w]e have recently amended our guidelines to reflect areas in Northern Virginia that we no longer provide rides. One of those areas is Manassas. Unfortunately, we will no longer be able to provide rides to your Manassas pharmacy." The July 19 email confirms "[a]s previously stated to you in a [sic] email, we amended our guidelines. Based on the change, we cannot accept ride requests for areas in Northen Virginia that are affected; and, consequently, drivers are not authorized to drive to those locations as representatives of SCAS" (ECF 26-4).

Regarding defendant Tony Wonkovich, French alleges that his volunteer job was to input ride requests for transportation needed and on one occasion, on August 23, 2024, when French called for a ride, Mr. Wonkovich denied her request (ECF 26, pp. 12, 21). He reminded French that the SCAS office where he worked would no longer be providing rides to Manassas, which is outside its geographic area, and so he would not "enter her ride" *Id*. She alleged that Mr. Wonkovich asked her for medical information, ostensibly to get her prescription transferred from a Manassas pharmacy to one closer to her home in Springfield (ECF 26, pp. 14, 15, 53, 71).[6] It is important to note that Mr. Wonkovich never called her pharmacist or disclosed any medical information, but French's damage claim includes the "many sleepless nights worried that Mr. Wonkovich would contact her pharmacist" (ECF 26, pp. 15, 21, 24).

French names defendant Selmetria Quarles as the "person in charge" for allegedly listening to the conversation with Mr. Wonkovich on a speakerphone and not stopping the conversation that allegedly involved improper medical inquiries. (ECF 26, pp. 13, 14, 15, 18, 20, 23, 43, 66, 67, 68, 96, 104, 109).

Without any factual basis, French accuses defendant Barbara Gatorian of falsifying a notarized letter sent to French on September 9, 2024 that explained SCAS's policies for the free rides it provided to seniors (ECF 26, pp. 14, 15, 21, 23, 50, 51, 61, 69; 26-2).

French attempts to base Federal jurisdiction for her claims on federal questions under the Americans with Disabilities Act (ADA), 28 U.S.C. § 1331; supplemental jurisdiction for state tort claims; diversity jurisdiction (which clearly does not apply here); and other constitutional provisions such as Article III, Section 2 and the 14th Amendment, since the "a lawsuit concerning the ADA is a case 'arising under' the laws of the United States" (ECF 26, p. 5).

---

[6] The Amended Complaint improperly contains defamatory statements that Tony had "mental issues" which should be stricken.

French lists her claims by number as follows: 1 - wrongful dismissal; 2 - breach of contract; 3 - privacy violations; 4 - misuse of federal funds; 5 - "denied services to…"; 6 - negligent supervision; 7 – "less favorable services…"; 8 – "appropriate services"; 9 – "prove discrimination of…"; 10 - notarized false statement; "11-11 -Intentional discrimination of …"; 11 - conspiracy; and 12 – "retaliatory" (ECF 26, p. 16).

The following counts are set forth in the Amended Complaint: Count I – discrimination in violation of the ADA and Section 504 of the Rehabilitation Act; Count II – retaliation in violation of the ADA and Section 504 of the Rehabilitation Act; Count III – Intentional Infliction of Emotional Distress; Count IV – fraudulent misrepresentation; Count V – civil conspiracy; Count VI – negligent supervision; Count VII – privacy violations; Count VIII – breach of contract; Count IX – less favorable treatment (ADA); and Count X – misuse of federal funding (False Claims Act).

## III.   Argument

### A.    Motion to Dismiss Standard

Under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); see also *Williams v. Wilkie*, 320 F. Supp. 3d 191, 196 (D.D.C. 2018), *appeal dismissed,* No. 18-5272, 2019 WL 1150043 (D.C. Cir. Jan. 9, 2019). To be facially plausible, the plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Further, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and

4

plausibility." *Twombly,* 550 U.S. at 545–46; see also *In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F. Supp. 3d 418, 431 (E.D. Va. 2019).

While a court must accept as true factual allegations in a complaint drawing "all reasonable inferences" in the plaintiff's favor, "the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Medical Center, Inc.* 562 F.3d 599, 616 n. 26 (4th Cir. 2009)(quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). The requirement of liberal construction for a plaintiff appearing *pro se* does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a Federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

Although generally courts may not look beyond the four corners of the complaint to evaluate a Rule 12(b)(6) motion, it "may consider documents … attached to the motion to dismiss, as long as they are integral to the complaint and authentic." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

French's shotgun pleading fails to allege any set of facts to properly support her multiple claims, so this Motion to Dismiss the Amended Complaint should be granted. *See Mich. Mut. Ins. Co. v. Smoot, 128 F.Supp.2d 917, 920 (E.D. Va. 2000), citing Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

5

**B.**     **French's ADA and Retaliation Claims Fail.**

The Amended Complaint contains generic allegations related to ADA violations. Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181, et seq. (2012) was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C.§12101(b)(1) & (2).  To state a cause of action under the ADA, a plaintiff must plausibly allege (1) that she has a disability or has been regarded as having a disability; (2) that she is otherwise qualified to receive the benefits provided by a public entity; and (3) that she was denied those benefits or was otherwise discriminated against on the basis of her disability. *Nat'l Fed. Of the Blind v. Va Dept. Corrections*, 2023 U.S. Dist. LEXIS 185768 * (E.D. Va. October 16, 2023); *citing Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018). French has not sufficiently pled any of the requisite elements to support her claims.

In an effort to fall under the ADA definition of disability and to meet her burden to show she is disabled, French attaches as exhibits to the Amended Complaint 1) letters regarding her social security benefits; 2) a handwritten diary of her symptoms from December 2023 to January 2024; 3) "disability standards" and 4) her personal medical records dating back to 2016 (ECF 26-10; 26-11; 26-12; 26-13). Despite this "proof" of her disability, there is no allegation that defendants were aware these documents existed as she did not provide them when requesting a free ride.

French still fails to state a claim, since her qualifications to receive the free ride service were not based on whether she was disabled or not. The ride was declined only due to the travel restrictions in the SCAS guidelines (ECF 26-2; see also Ex. A hereto). The guidelines are

applicable to all individuals seeking the ride service, and do not discriminate against French or any other person. French cannot credibly assert that she was denied service due to an unknown disability.

To establish a *prima facie* retaliation claim under the ADA, French must prove (1) she engaged in protected conduct, (2) she suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action. *Reynolds v. Am. Nat'l Red Cross,* 701 F.3d 143, 145 (4th Cir. 2012) (citing *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011). None of these elements are met here.

As an initial matter, French cannot bring ADA claims against defendants Tony Wonkovich, Selmetria Quarles and Barbara Gatorian, who are individuals and not "covered entities" as defined by the ADA. 42 U.S.C. §12112(a); see also *Anderson v. School Bd*. 2020 U.S. Dist. LEXIS 94645 (E.D. Va. May 29, 2020).[7] Following this rationale, the Fourth Circuit has held that ADA actions against individuals for retaliation for conduct protected by the ADA are also not permitted. *Id., citing Baird v. Rose*, 192 F.3d 462,472 (4th Cir. 1999). *See also Allen v. College of William & Mary,* 245 F.Supp.2d 777, 786 (E.D. Va. 2003)(granting motion to dismiss ADA claim because "individuals are not liable for violations of the ADA"); *Stephens v. Kay Mgt. Co*., 907 F. Supp. 169, 172-74 (E.D. Va. 1995) (holding that "individuals who do not independently meet the ADA's definition of 'employer' cannot be held liable under the ADA"). As such, plaintiff cannot bring claims against the individual Defendants under the ADA.

French's damage claims for ADA violations must also fail. While the Act provides a private right of action for injunctive relief, there is no right of action for monetary relief. 42 U.S.C §12188; *Thomas v. Salvation Army*, 841 F.3d 632, 638 (4th Cir. 2016): *see also Ervine v.*

---

[7] The ADA defines a covered entity as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. §12111(2).

*Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) ("Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief.").

The same analysis applies to French's claims under state discrimination laws. Va. Code Ann. §51.5-40.

For these reasons, all claims related to French's ADA claims, including those for 14th Amendment and Commerce Clause violations, should be dismissed.

### C.    French Has Not Stated a Claim for Privacy Violations.

French's claim that defendants Tony Wonkovich and Selmetria Quarles violated her right to privacy, including under the Health Insurance Portability and Accountability Act of 1996) ("HIPPA"), is entirely misplaced. Her claim is based on one phone conversation where she claims Mr. Wonkovich asked about her prescription information to contact a pharmacy on her behalf, and defendant Selma Quarles was somehow able to overhear this conversation. Even assuming that this conversation actually took place, which Defendants deny, it cannot constitute a privacy violation for either defendant.

HIPPA governs "confidentiality of medical records and regulates how 'covered entities' can use or disclose 'individually identifiable health (medical) information (in whatever form) concerning an individual.'" *Hunt v. Dupree*, 2015 U.S. Dist. LEXIS 167601*3 (D.S.C. Nov 20, 2015)(citations omitted). The HIPPA regulations "do not confer a private right of action on an individual." *Id.*

The Fourth Circuit  declined to find a private right to sue in the nondisclosure provision of HIPPA, finding the provision at issue in that case in 42 U.S.C. §1320d-6(a), (b), that punishes "[a] person who knowingly . . . discloses individually identifiable health information to another

person," does not create a private cause of action. *Schilling v. Washburne*, 592 F. Supp. 3d 492, 499 (W.D. Va. 2022), *citing Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021). The court reasoned that HIPPA does not expressly allow for a private right of action, but delegates enforcement authority to the Secretary of the Department of Health and Human Services, "reflecting Congress's intent to forgo creating a private remedy." *Id*.  In any event, SCAS would not be considered a "covered entity" as defined in the Act, as it is not a health plan, or healthcare provider. See 45 CFR §160.103. Therefore, HIPPA does not apply in these circumstances, especially where the pleadings are clear that no information was actually relayed to a third party. French was merely "worried that Tony *would* call," stating, "[i]n summary, while the threat may not break a specific law, the threat is a serious one because it *could* lead to a breach of your confidential health information" (emphasis supplied) (ECF 26, p. 19).

French's claims against Defendants based upon an alleged violation of her privacy rights cannot stand.

### D.        French Has Not Stated a Claim For Breach of Contract.

French cannot legitimately claim that she had a contract with Defendants. The SCAS guidelines referenced in her Amended Complaint were provided to clarify the services provided by the SCAS, and do not amount to a contract entitling French to any services, especially with regard to the individual Defendants. French's misguided claim that she contracted for a free service is implausible.

### E.        French Cannot Maintain a Claim For Misuse of Federal Funding.

French's contention that she is entitled to damages for Defendants' alleged violations of Section 504, Rehabilitation Act of 1973, is entirely misplaced. Title IX and Section 504 provide that no person shall "be excluded from the participation in, be denied the benefits of, or be

9

subject to discrimination under any program or activity receiving Federal financial assistance" due to their sex or disability. 29 U.S.C. § 794(a); *see* 20 U.S.C. § 1681(a); *Thornton v. Chesterfield County School Board*, Civil Action No. 3:24cv859, 2025 U.S. Dist. LEXIS 58630, at *6-7 (E.D. Va. Mar. 27, 2025).

As with the ADA claims, Section 504 does not permit suits against individuals. *Id.* citing *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999) (no "individual liability under § 504"). French's claims against individual Defendants Tony Wonkovich, Selmetria Quarles and Barbara Gatorian must be dismissed.

### F.    French's Claim for Negligent Supervision Fails

The Amended Complaint contains allegations for negligent supervision against defendant Selmetria Quarles for failing to provide proper oversight, failing to provide adequate training and lack of intervention when Tony Wonkovich allegedly mishandled her private information (ECF 26, p. 42). French claims this breach of duty resulted in her "dismissal" from the free ride program. *Id.*

This claim fails as Virginia does not recognize negligent supervision as a cause of action. *Porter v. Woods*, 96 Va. Cir. 280, 282 (Cir. Ct. 2017). Citing *Cleaves-McClellan v. Shah*, 93 Va. Cir. 459, 474-75 (Norfolk 2016), *Porter* stated:

> The viability of a negligent supervision claim in Virginia is unclear despite being addressed by the Supreme Court of Virginia previously. In *Chesapeake & Potomac Telephone Co. v. Dowdy*, the Court held that "[i]n Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees *under these circumstances* and we will not create one here." 235 Va. 55, 61, 365 S.E.2d 751, 754, 4 Va. Law Rep. 1978 (1988) (emphasis added). Despite the apparently limiting language, Virginia circuit courts and federal courts applying Virginia law routinely interpreted *Dowdy* to hold that negligent supervision is not a cause of action in Virginia. *See Lawrence v. Sentara Hosps.-Norfolk*, 90 Va. Cir. 232, 233 (Norfolk 2015).

*See also Parrish v. Am. Airlines, Inc.*, 97 Va. Cir. 271, 2017 WL 9917197, *5 (Norfolk Dec. 12, 2017) ("It has been repeatedly concluded that Virginia Courts do not recognize a claim of negligent supervision . . . . Similarly, this Court is not aware of any authority recognizing negligent training in Virginia and a number of courts have declined to recognize negligent training in cases where the cause of action was proposed."). Since there is no state law cause of action for negligent training and supervision in Virginia, this claim must be dismissed. See *Warner v. Centra Health, Inc.*, 503 F. Supp.3d 479, 500 (W.D. Va. 2020).

Even if negligent supervision were a recognized cause of action, the facts alleged here would not support the claim. Mr. Wonkovich was a volunteer worker taking calls for free rides, and direct company supervision would not be expected. In any event, the individual employees cannot be liable here.

G.      **French Has Not Stated a Claim for Conspiracy**

In Virginia, a civil conspiracy is described as "a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Kissinger-Stankevitz v. Town of Tappahannock*, No. 24-2270, 2025 U.S. App. LEXIS 28559, at *5-6 (4th Cir. Oct. 31, 2025; citing *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 337 S.E.2d 744, 748 (Va. 1985). A claim for civil conspiracy "requires proof that the underlying tort was committed." *William v. AES Corp.*, 28 F. Supp. 3d 553, 574-75 (E.D. Va. 2014); citing *Beasley v. FV-I, Inc.,* No. 1:13cv116, 2013 U.S. Dist. LEXIS 39640, 2013 WL 1192018, at *4 (E.D. Va. Mar. 21, 2013) (citations omitted). Where a plaintiff has no actionable claim for the underlying alleged wrong, an action for conspiracy based on that wrong will not lie. *Id.*

11

French alleges a "conspiracy to defraud" by Defendants arising out of her inability to get a free ride, the underlying false statement being the September 9 letter advising French of the policy changes for free rides, claiming that their actions were illegal and led to her being denied a ride (ECF 26, pp. 38, 49, 115). French generally cites to the elements of a conspiracy claim, but fails to identify any plausible concerted action with the objective of causing her damages, and certainly fails to plead an underlying tort (ECF 26, p. 137). This is especially true where the concerted action was "to wrongfully dismiss French and conceal the true reason." *Id*. She relies on the speakerphone calls, text message, and "notarized letter" as support for this claim. *Id*. French wholly ignores the policy changes in the ride program, explained to her countless times, for the reason no ride was provided to her, and instead relies on wholly manufactured fact related to her alleged disability.

Where French's Amended Complaint contains only vague, conclusory allegations of conspiracy, it fails to withstand Defendants' Motion to Dismiss. She alleges that "their [multiple staff members including Defendants] concerted actions and communications (speakerphone calls, text message, notarized letter) suggest a combination to achieve an objective" (ECF 26, p. 137). French does not identify or detail any agreement between staff members, and she fails to allege a predicate act that independently imposes civil liability on any of the defendants, so that her civil conspiracy claims must be dismissed.

### H.      French's Claim for Intentional Infliction of Emotional Distress Fails

In Virginia, claims for intentional infliction of emotional distress (IIED) are generally disfavored. *Almy v. Grisham*, 273 Va. 68, 81, 639 S.E.2d 182 (2007). Such claims must allege and be proven by clear and convincing evidence that: (1) "the wrongdoer's conduct is intentional or reckless"; (2) "the conduct is outrageous and intolerable"; (3) "the alleged wrongful conduct

12

and emotional distress are causally connected"; and (4) "the distress is severe." *William v. AES*, 28 F. Supp. 3d at 572; citing *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 7 Va. Law Rep. 1253 (1991). Liability for IIED has been found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*, citing *Russo*, 241 Va. at 27. That is certainly not the scenario alleged here.

The grounds stated by French in support of her IIED claim include "Tony's gaslighting, the unauthorized speakerphone calls….and the fraudulent notarized letter" which are described as "intentional or reckless," "outrageous and intolerable, exceeding the bounds of what any reasonable person should endure" (ECF 26, p. 18). French has attached the allegedly offensive letter to her Amended Complaint as Exhibit A, ECF 26-2. The letter speaks for itself. There is nothing outrageous or intolerable about it, except that French was not able to get a free ride to Manassas. She could go to any other pharmacy within the stated area, and the provisions apply to all riders. Liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Gaiters v. Lynn*, 831 F.2d 51, 53 (4th Cir. 1987). It "arises only when the emotional distress is extreme, and where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo*, 241 Va. at 27.

French may not merely parrot the legal standard for IIED without alleging any facts to support such a claim. Her claim also fails because she had not sufficiently alleged the element of intent – she fails to allege any facts supporting a theory that Defendants acted with the specific purpose of causing her emotional distress or that their alleged conduct was intended. As such, French's claim for IIED should be dismissed.

13

I.      **French's Claims Are Barred by Charitable Immunity**

All claims against Defendants should be dismissed on the basis of the doctrine of charitable immunity since SCAS is a charitable institution that operated in conformity with its charitable purpose, and French was a beneficiary of the SCAS's charitable purpose.[8]

The doctrine of charitable immunity "is firmly embedded in the law of this Commonwealth and has become a part of the general public policy of the State." Ola v. YMCA of S. Hampton Rds., Inc., 270 Va. 550, 556, 621 S.E.2d 70, 72 (2005) (quoting Mem'l Hosp., Inc. v. Oakes, 200 Va. 878, 889, 108 S.E.2d 388, 396 (1959)).  The doctrine of charitable immunity is "alive and well" in Virginia.  Moore, Adm'r v. Warren, 34 Va. Cir. 416, 416, 1994 Va. Cir. LEXIS 75, *2 (Richmond Cir. Ct. 1994); Gaines v. Young Men's Christian Assn., 32 Va. Cir. 346, 346, 1994 Va. Cir. LEXIS 838, *2 (Richmond Cir. Ct. 1994).  The Supreme Court of Virginia's prior discussions of charitable immunity have grounded the doctrine in the public policy that the resources of charitable institutions are better used to further the institution's charitable purposes, than to pay tort claims lodged by the charity's beneficiaries.  Ola, 270 Va. at 556, 621 S.E.2d at 72 (quoting Mem'l Hosp., Inc., 200 Va. at 889, 108 S.E.2d at 396).

This immunity extends to volunteers like these Defendants. In *Moore v. Warren*, 250 Va. 421, 425, 463 S.E.2d 459 (1995) the court held, "[f]or the reasons stated, we conclude that under the doctrine of charitable immunity, a volunteer of a charity is immune from liability to the charity's beneficiaries for negligence while the volunteer was engaged in the charity's work."

---

[8] French acknowledges that the ride service is a charitable organization (ECF 26, p. 12).

Since Defendants were all working on behalf of SCAS at all times relevant, they have immunity from all claims alleged in the Amended Complaint, and it should be dismissed.

J.    **Conclusion**

French has failed to allege any factual basis to support her bald conclusion that Defendants declined to provide her with a free ride solely based on her disabilities. She has not stated a claim under any theory against these Defendants, and the Amended Complaint should be dismissed.

WHEREFORE, for the foregoing reasons, defendants Tony Wonkovich, Selmetria Quarles and Barbara Gatorian respectfully move this Court for entry of an Order dismissing plaintiff Jeanette French's Amended Complaint against them with prejudice, with an award of their costs, including reasonable attorneys' fees.

**TONY WONKOVICH,
SELMETRIA QUARLES and
BARBARA GATORIAN**

By:    /s/ David D. Hudgins
       Counsel

David D. Hudgins, Esquire; VA Bar No. 20602
HUDGINS LAW FIRM, P.C.
2331 Mill Road, Suite 100
Alexandria, Virginia  22314
(703) 739-3300
dhudgins@hudginslawfirm.com

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of April 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, and mailed, postage prepaid, to:

Jeanette French
9001 Giltinan Court
Springfield, VA 22153
Widdle9876@gmail.com

NV Rides
8900 Little River Turnpike
Fairfax, VA 22031

Jeff Dannick
NV Rides
8900 Little River Turnpike
Fairfax, VA 22031

Elena Alergant
NV Rides
8900 Little River Turnpike
Fairfax, VA 22031

Emily Braley
Pozez JCC
8900 Little River Turnpike
Fairfax, VA 22031

/s/ David D. Hudgins