IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

JEANETTE FRENCH, Plaintiff,

v.  Case No. 1:25-cv-00989

N V RIDES, et al., Defendants.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, Jeanette French, appearing pro se, respectfully submits this Opposition to Defendants' Motion to Dismiss the Amended Complaint.

I. INTRODUCTION

On March 18, 2026, this Honorable Court entered an Order denying the Defendants' previous Motion to Dismiss, finding that French has stated plausible claims for relief. Despite this clear ruling, Defendants have filed a successive Motion to Dismiss that largely repeats the same failed arguments regarding the "plausibility" and "legal sufficiency" of French's claims.

French's Amended Complaint provides a detailed timeline, specific factual allegations, and documented evidence (Exhibits A-D, G, H, K ) that establish a direct causal link between her protected activities—reporting ADA violations and the misuse of federal funding—and the subsequent wrongful dismissal and denial of services. Defendants' attempt to shield themselves under "Charitable Immunity" or to re-characterize the speakerphone incident as a non-discriminatory event fails to address the core legal issues already recognized by this Court. French's claims are not "outrageous"; they are grounded in documented fact and federal law.

---

Begin section 2

II. PROCEDURAL REJECTION UNDER RULE 12(g)(2)

1. Prohibition Against Successive Motions: Under Federal Rule of Civil Procedure 12(g)(2), a party that makes a motion to dismiss must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

2. The Court Already Decided Plausibility: Defendants' current Motion to Dismiss is a "successive motion." On March 18, 2026, this Court already reviewed Plaintiff's claims and

found them plausible. Defendants are attempting to re-litigate the exact same issues of "legal sufficiency" that the Court has already settled.

3. Waiver of Defenses: By failing to raise these specific "Failure to State a Claim" arguments effectively in their first motion, and because the Court has already ruled on the merits of the Amended Complaint, Defendants have effectively waived the right to bring a second pre-answer motion to dismiss. This is an unnecessary delay and a waste of judicial resources..

end section 2

---

Begin section 3

III. REBUTTAL TO CHARITABLE IMMUNITY DEFENSE

1. Federal Law Supersedes State Immunity: As recipients of federal financial assistance, the Defendants are bound by Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA). These federal civil rights statutes do not recognize state-law charitable immunity as a valid defense against claims of disability discrimination or retaliation. Federal funding is conditioned on compliance with these laws.

2. Immunity Does Not Cover Intentional or Malicious Acts: Charitable immunity is typically limited to cases of "simple negligence" (accidents). It does not protect organizations from intentional wrongdoing, malicious privacy breaches, or retaliatory dismissal. French has alleged—and provided documentation for—intentional and malicious acts by the Defendants that fall entirely outside the protections of charitable immunity.

3. "Law of the Case" and Successive Motions: Under the Law of the Case doctrine, this Court's March 18th Order already established that French has stated plausible claims. The Defendants' charitable status was known at that time, and their attempt to raise it now in a successive motion is procedurally improper under Rule 12(g)(2).

and section 3

---

Begin section 4

IV. DEFENDANTS' FACTUAL MISSTATEMENTS AS EVIDENCE OF PRETEXT

French addresses the following inaccuracies in Defendants' Memorandum. These are not mere errors; they are calculated misstatements designed to hide illegal retaliation and provide a pretext for the discriminatory denial of services.

2

1. The "Manassas" Red Herring and the Alexandria Fact: Defendants repeatedly claim the August 23, 2024, call involved a request for a ride to Manassas. This is factually false. The requested destination was Alexandria, VA, which was (and remains) a covered service area. Tony Wonkovich never spoke of the location during the call; he engaged in a bizarre, gaslighting dialogue designed to prevent the ride from being entered. The Manassas location is a "red herring" used to mislead the Court. (See Exhibit C: Ride Request Receipt for Alexandria).

2. Documentary Proof of Pretext (The Sept. 2024 Letter and Text; Exhibit A-B):The September 9, 2024, letter (signed by Defendant Barbara Gatorian and notarized by Defendant Selmetria Quarles) and the September 25 text message from Defendant Selmetria Quarles both explicitly claim the dismissal was due to a policy change regarding Manassas. Because French's receipts prove the ride was for Alexandria, these documents are physical evidence of a civil conspiracy to memorialize a lie.

3. Admission of Improper Medical Inquiries: Defendants admit Tony Wonkovich made inquiries about French's prescriptions.

The "Transfer" Pretext: Tony Wonkovich claimed he wanted to "transfer" a prescription. As a patient, French knows this is legally impossible for a controlled substance, which requires a new physician's order, not a volunteer's "transfer."

Privacy Breach: Any information requested was disclosed via unauthorized speakerphone to anyone in the office, violating French's reasonable expectation of privacy.

4. Federal Funding Mandates Compliance: In their letter, Defendants assert: "As a non-profit we set our own rules." This is legally incorrect. As recipients of federal financial assistance (FTA grants), Defendants are legally bound by the ADA and Section 504. Their internal "rules" do not grant them a license to ignore federal civil rights mandates or retaliate against disabled riders.

5. Clarification of Date and Timeline: Defendants state the dismissal occurred in August 2025. Fact: The dismissal occurred in August 2024. This one-year "error" is a bad-faith attempt to break the causal link between French's reports of ADA violations and her immediate removal from the program.

6. Evidence of Organizational Conspiracy (The Board Vote): Defendants' formal dismissal letter explicitly states that the decision to terminate French's services was "voted by the whole SCAS Board of Directors." By their own admission, the Board ratified a retaliatory dismissal based entirely on the documented falsehood regarding the ride location (Manassas vs. Alexandria). This collective action by the leadership proves that the retaliation was not an isolated incident, but a coordinated effort by the entire organization to ignore federal ADA mandates and silence a disabled rider.

end section 4

_____

Begin section 5

V. FEDERAL QUESTION JURISDICTION IS PROPERLY ESTABLISHED

1. Jurisdiction Arises Under Federal Law (28 U.S.C. § 1331): Defendants' assertion that French merely "attempts" to base jurisdiction on federal questions is legally incorrect. Jurisdiction is firmly established because French's claims for discrimination and retaliation arise directly under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. Under 28 U.S.C. § 1331, federal district courts have original jurisdiction over all civil actions arising under the laws of the United States.

2. The Purpose of the Jurisdictional Questions: As a pro se litigant, French utilized the court-provided Pro Se Complaint form, which requires answering specific questions to identify the federal basis of the lawsuit. French's detailed answers—the basis of her jurisdictional statement—clearly identified the federal statutes at issue. The well-pleaded complaint rule is satisfied because the federal question is presented on the face of the Amended Complaint.

3. Supplemental Jurisdiction (28 U.S.C. § 1367): Because this Court has original jurisdiction over the federal ADA and Rehabilitation Act claims, it possesses supplemental jurisdiction over all related state law claims (e.g., Breach of Contract, Privacy Violations) as they form part of the same case or controversy.

end section 5

_____

Begin section 6

VI. REBUTTAL: BREACH OF CONTRACT AND NEGLIGENT SUPERVISION

1. Implied Contract through Two Years of Consistent Service: Defendants argue there was no contract. However, French was a qualified recipient of disability-specific transportation services for two years. This long-term relationship, governed by the Defendants' own service manuals and federal compliance guidelines, created an implied contract. Defendants breached this agreement by wrongfully dismissing Plaintiff and denying a ride to a covered service area (Alexandria) without "just cause." This implied contract is further evidenced by a two-year consistent history of service, documented by Plaintiff's Phone Logs: (Exhibit H), showing regular, successful communication and service fulfillment from 10/10/2023 until the sudden, retaliatory denial in August 2024."

2. Negligent Supervision of Staff and Systems: French's Amended Complaint establishes that the failure to enter her ride was a direct result of Negligent Supervision. Defendants Selmetria Quarles admitted to "listening in" on the call, yet failed to properly oversee Tony Wonkovich as he engaged in a "bizarre, gaslighting dialogue" and improper medical inquiries. Their failure to intervene allowed the situation to escalate into a malicious privacy breach.

3. Malice Defeats Charitable Immunity: As noted throughout this Opposition, Defendants' conduct was not a simple administrative error; it was a malicious and intentional effort to harass a disabled individual. Because the actions were willful and malicious, any claim of Charitable Immunity regarding these contract and supervision issues must fail.

end section 6

_____

Begin section 7

## VII. REBUTTAL TO DEFENDANTS' AFFIRMATIVE DEFENSES

1. Rebuttal to First Defense (Failure to State a Claim):

This argument has already been adjudicated. On March 18, 2026, this Court specifically found Plaintiff's claims to be plausible. Under the Law of the Case doctrine, this issue is settled. Defendants' attempt to "incorporate" their failed motion is a procedurally improper attempt to re-litigate a settled matter under Rule 12(g)(2).

2. Rebuttal to Second Defense (Statute of Limitations):

This action is timely. French received her EEOC Notice of Right to Sue: (Exhibit G) on March 31, 2025, and filed her original complaint on June 11, 2025—just 72 days later, well within the mandatory 90-day federal window. All state claims fall within Virginia's two-to-three-year windows from the August 2024 incident. Under FRCP 15(c), new claims like Civil Conspiracy relate back to the original filing date as they arise from the same conduct.

3. Rebuttal to Third Defense (Charitable Immunity):

As recipients of federal financial assistance, Defendants are prohibited from discrimination and retaliation under the ADA and Section 504, which supersede state-law immunity. Furthermore, Virginia law does not extend charitable immunity to intentional, willful, or malicious acts

4. Rebuttal to Fourth Defense (Volunteer Immunity):

The federal Volunteer Protection Act (42 U.S.C. § 14503) and Virginia law explicitly state that immunity does not apply to harm caused by willful misconduct, gross negligence, or a

conscious, flagrant indifference to the rights of others.

5. Rebuttal to Fifth Defense (Contributory Negligence):

Contributory negligence is not a valid defense to intentional discrimination, retaliation, or malicious privacy breaches. Defendant Selmetria Quarles' statement that French "caused this herself" is a direct admission of retaliatory intent triggered by French's protected complaints

6. Rebuttal to Sixth Defense (Lack of Causation):

But for the Defendants' malicious gaslighting and wrongful dismissal, French would not have suffered the loss of essential transportation. The causal link is the Defendants' intentional act of removing her from the program.

7. Rebuttal to Seventh Defense (Lack of Proximate Cause):

The harm was entirely foreseeable. Subjecting a disabled individual to a non-consensual speakerphone broadcast of medical info and then terminating their only means of transport is the proximate cause of the resulting distress and loss of service.

8. Rebuttal to Eighth Defense (Punitive Damages): Defendants assert that their acts do not support a claim for punitive damages. This is a factual issue that cannot be dismissed at this stage, as Plaintiff has provided evidence of actual malice, willful misconduct, and a civil conspiracy:

Coordinated Malice and the Board's Role: The dismissal letter specifically states that the decision to terminate Plaintiff was "voted by the whole SCAS Board of Directors." This proves that the retaliatory dismissal was not the act of one "rogue volunteer," but a coordinated, intentional effort by the entire leadership to injure Plaintiff's status.

The "Move On" and Exclusionary Statements (The Conspiracy): Personnel such as Jeff Dannick's and Elena Alergant's evidenced this concerted plan by telling French to "move on" and asserting she was "not part of the population we serve." These statements prove the dismissal was a discriminatory effort to exclude a disabled individual who exercised her protected rights.

The Notarized Falsehood (The Sept. 9 Letter): Creating, notarizing, and mailing a letter (signed by Defendant Barbara Gatorian and notarized by Defendant Selmetria Quarles) that contains a proven factual lie about the ride location (Manassas vs. Alexandria; Exhibit C) is the definition of actual malice.

Admitted Retaliatory Intent (The Sept. 25 Text): Defendant Selmetria Quarles explicitly told Plaintiff French: "you caused this yourself." This victim-blaming confirms the dismissal was a punitive reaction to Plaintiff's ADA complaints.

6

Conscious Disregard for Federal Law: Defendants' written assertion that they "set our own rules"—despite receiving federal financial assistance—demonstrates a willful and conscious disregard for federal civil rights statutes, justifying punitive awards to deter such egregious conduct.

9. Rebuttal to Ninth Defense (Failure to Mitigate):

French attempted to resolve the matter through numerous complaints and escalations to organizational partners. Defendants' collective choice to ignore these reports, issue a "closed matter" letter, and explicitly command French to "stop the call us" (Sept. 25 Text) intentionally prevented any further mitigation of harm.

10. Rebuttal to Tenth Defense (Good Faith):Defendants cannot claim "good faith" while relying on a proven factual lie regarding the ride location (Alexandria vs. Manassas). Using a notarized document to memorialize a falsehood is the definition of bad faith.

end section 7

-----------------------------------------------

Begin Conclusion IX VIII qf.

IX. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' successive Motion to Dismiss in its entirety.

As established in this Opposition, the Court has already determined that Plaintiffs claims are plausible. Furthermore, the documented evidence—including the Alexandria ride receipt (Exhibit C)—proves that Defendants' arguments are based on factual misstatements and retaliatory pretext.

Plaintiff further requests, in light of her documented disabilities and the Defendants' own Waiver of Oral Argument, that this Court decide the Motion on the written submissions ("on the papers") without a hearing.

Justice requires that this matter proceed to discovery so that the truth of Defendants' discriminatory and retaliatory conduct may be fully brought to light.

Respectfully submitted,

Jeanette French, Pro Se

9001 Giltinan Court

Springfield, Va. 22153

571-215-3719

widdle9876@gmail.com

Dated: April 16, 2026

Jeanette French